**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:25-cv-25893-BLOOM/Elfenbein**

STEVEN D. MILLER,

      Plaintiff,

vs.

BAUSCH HEALTH COMPANIES, INC.;
BAUSCH + LOMB CORPORATION;
THOMAS ROSS; CHRISTINA ACKERMANN;
GAOXIANG HU; ICAHN ENTERPRISES L.P.;
ICAHN ENTERPRISES G.P. INC.;
ICAHN CAPITAL LP; CARL ICAHN;
BRETT ICAHN,

      Defendants.

_____

**THE ICAHN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 3

    a.   Plaintiff Negotiates The EA .............................................................................. 3

    b.   Plaintiff Signs The EA ....................................................................................... 4

    c.   Plaintiff Proposes the Bausch Health Investment to Icahn Capital ............................ 5

    d.   Mr. Icahn's Pledges of Depository Units in IEP ....................................................... 7

    e.   The Hindenburg Report .......................................................................................... 7

    f.   Icahn Capital Exercises Its Sole Discretion to Sell Certain Investments ................... 8

ARGUMENT ....................................................................................................................... 8

  I.   THE DISCRIMINATION CLAIMS AGAINST THE ICAHN DEFENDANTS FAIL
      ......................................................................................................................... 8

    a.   The Section 1981 Claim Against the Icahn Defendants Must Be Dismissed Because
       There Was No Intent to Discriminate .................................................................... 8

    b.   Plaintiff's Claim That Icahn Capital Breached Either His EA or an Implied Covenant
       by Not Appointing Him to the B+L Board Fails ..................................................... 9

       i.   No Contractual Provision in the EA was Breached .................................... 9

       ii.   Plaintiff Fails to State a Claim for Breach of the Implied Covenant Through
          Disparate Treatment ................................................................................ 9

       iii.  Plaintiff's Second Cause of Action is Time-Barred .................................. 11

    c.   The Section 1981 Claim Against Gary Hu Must be Dismissed .............................. 12

  II.  PLAINTIFF'S BREACH OF CONTRACT OR IMPLIED COVENANT CLAIM
      BASED ON ALLEGED FAILURE TO DISCLOSE THE MARGIN LOANS
      FAILS ................................................................................................................ 12

    a.   There Was No Breach of Contract or an Implied Covenant ................................... 12

    b.   Plaintiff Fails to Adequately Plead Damages ....................................................... 13

    c.   The Third Cause of Action is Time-Barred ......................................................... 14

  III.  PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM FAILS ......................... 15

    a.   The Icahn Defendants Had No Duty to Disclose the Margin Loans to Plaintiff ....... 16

    b.   Plaintiff Cannot Establish He Was Harmed by the Alleged Concealment of Mr.
       Icahn's Personal Loans ....................................................................................... 17

  IV.  PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS .............................. 18

    a.   Plaintiff Does Not Allege Any False Statement of Material Fact ............................ 18

    b.   Plaintiff's Reliance on Pre-Contractual Statements is Barred ................................ 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABRY Partners V, L.P. v. F&W Acquisition LLC,*
   891 A.2d 1032 (Del. Ch. Feb. 14, 2006)................................................................................19, 20

*Acme Markets, Inc. v. Oekos Kirkwood, LLC,*
   2025 WL 2172302 (Del. Super. Ct. July 31, 2025) ...................................................................12

*Aprigliano v. Am. Honda Motor Co.,*
   979 F. Supp. 2d 1331 (S.D. Fla. 2013) .....................................................................................15

*AssuredPartners of Virginia, LLC v. Sheehan,*
   2020 WL 2789706 (Del. Super. Ct. May 29, 2020) ..................................................................11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................................18

*Bhatt v. Tech Data Corp.,*
   2018 WL 6504375 (M.D. Fla. Dec. 11, 2018)............................................................................3

*Billington v. Ginn-La Pine Island, Ltd., LLLP,*
   192 So. 3d 77 (Fla. 5th DCA 2016) ..........................................................................................19

*Building Contractors Association, Inc. v. Pennsylvania,*
   458 U.S. 375 (1982)...................................................................................................................9

*Carvelli v. Ocwen Fin. Corp.,*
   934 F.3d 1307 (11th Cir. 2019) ...........................................................................................17, 19

*In re Cendant Corp. Sec. Litig.,*
   181 F. App'x 206 (3d Cir. 2006) .........................................................................................13, 14

*Comcast Corp. v. National Ass'n of African American Owned Media,*
   589 U.S. 327 (2020)................................................................................................................8, 9

*Cont'l Gen. Ins. Co. v. Gardina,*
   773 F. Supp. 3d 1294 (M.D. Fla. 2025)....................................................................................20

*DecisivEdge, LLC v. VNU Grp., LLC,*
   2018 WL 1448755 (Del. Super. Ct. Mar. 19, 2018) .................................................................10

*Domino's Pizza, Inc. v. McDonald,*
   546 U.S. 470 (2006)...................................................................................................................9

*Dunn v. FastMed Urgent Care, P.C.*,
  2019 WL 4131010 (Del. Ch. Aug. 30, 2019) ...........................................................................10

*E.I. DuPont de Nemours & Co. v. Pressman*,
  679 A.2d 436 (Del. 1996) ........................................................................................................10

*Econ-O-check Corp. v. Suncoast Credit Union*,
  2019 WL 12278839 (M.D. Fla. Dec. 19, 2019)........................................................................18

*FPL Food, LLC v. U.S. Dep't of Agric.*,
  671 F. Supp. 2d 1339 (S.D. Ga. 2009)........................................................................................9

*Homan v. Turoczy*,
  2005 WL 2000756 (Del. Ch. Aug. 12, 2005) ...........................................................................11

*Jerome v. Hertz Corp.*,
  15 F. Supp. 3d 1225 (M.D. Fla. 2014)......................................................................................12

*Kuroda v. SPJS Holdings, LLC*,
  971 A.2d 872 (2009) ...........................................................................................................10, 14

*Lamb v. Outback*,
  2014 WL 12689882 (M.D. Fla. Sep. 4, 2014) ..........................................................................11

*Lebanon Cnty. Emps.' Ret. Fund v. Collis*,
  287 A.3d 1160 (Del. Ch. 2022)................................................................................................15

*Lidya Holdings Inc. v. Eksin*,
  2022 WL 274679 (Del. Ch. Jan. 31, 2022)...............................................................................10

*MacPhee v. MiMedx Grp., Inc.*,
  73 F.4th 1220 (11th Cir. 2023) .................................................................................................15

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*,
  761 So. 2d 306 (Fla. 2000).......................................................................................................15

*Midcap Funding X Trust v. Graebel Cos., Inc.*,
  2020 WL 2095899 (Del. Ch. Apr. 30, 2020) ...........................................................................20

*Novak v. Gray*,
  469 F. App'x 811 (11th Cir. 2012)............................................................................................20

*Palmer v. Shearson*,
  622 So. 2d 1085 (Fla. 1st DCA 1993) ......................................................................................16

*Park7 Student Housing, LLC v. PR III/Park7 SH Holdings, LLC*,
  340 A.3d 614 (Del. Ch. 2025)..................................................................................................19

iii

*Prairie Capital III, L.P. v. Double E. Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015)...................................................................................20

*Prentice v. R.J. Reynolds Tobacco Co.*,
338 So. 3d 831 (Fla. 2022).....................................................................................16

*Saunders v. E.I. DuPont de Nemours & Co.*,
2017 WL 679853 (D. Del. Feb. 17, 2017) ..............................................................11

*Simon v. Celebration Co.*,
883 So. 2d 826 (Fla. 5th DCA 2004) ......................................................................17

*Taylor v. Birmingham Airport Auth.*,
2024 WL 4048840 (N.D. Ala. Sep. 4, 2024) .............................................................8

*Temurian v. Piccolo*,
2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) ....................................................16, 17

*TransPetrol, Ltd. v. Radulovic*,
764 So. 2d 878 (Fla. 4th DCA 2000) ......................................................................16

**Other Authorities**

James Halley, *Why Shares of Bausch Health Companies Dropped 54.4% This
Week*, The Motley Fool, (Aug. 1, 2022 10:08 AM),
available at https://www.fool.com/investing/2022/07/28/why-shares-of-
bausch-health-companies-dropped-544/ .....................................................................6

Yahoo! Finance, *IEP Historical Prices*,
https://finance.yahoo.com/quote/IEP/......................................................................7

Defendants Icahn Enterprises L.P. ("IEP"), Icahn Enterprises G.P. Inc., Icahn Capital, LP ("Icahn Capital"), Carl Icahn ("Mr. Icahn"), Brett Icahn, and Gaoxiang Hu ("Gary Hu" or "Hu") (collectively, the "Icahn Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Steven D. Miller's ("Plaintiff") Complaint ("Complaint") with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Complaint contends that he was cheated out of the opportunity to earn hundreds of millions of dollars in compensation due to discrimination on the basis of his white male status and the Icahn Defendants' alleged contractual breaches and fraud.  In the process, Plaintiff rewrites history to blame others for his own poor performance, negligence and dishonesty.  Faced with the reality that his underperformance rendered it impossible for him to receive anything more than his base pay under his Employment Agreement ("EA"), Plaintiff has filed this lawsuit in an attempt to obtain a massive undeserved payout.  These claims fail as a matter of law.

Plaintiff's claims against the Icahn Defendants are based on two factual theories.  *First*, Plaintiff, a white male portfolio manager at Icahn Capital, alleges the Icahn Defendants violated 42 U.S.C. § 1981 and that Icahn Capital breached his EA and/or an implied covenant of good faith and fair dealing by failing, on the basis of his race, to designate him to the Bausch + Lomb ("B+L") Board of Directors.  (Causes of Action I–II).  Plaintiff also alleges that Hu, a now former Icahn Capital portfolio manager of Chinese descent, was unlawfully nominated to the B+L Board in lieu of Plaintiff and was unjustly enriched at Plaintiff's expense.  (Cause of Action VII).

Plaintiff's discrimination-based claims against the Icahn Defendants fail as a matter of law for the reasons set forth in the Defendants' Common Motion to Dismiss the Complaint.  In the alternative, according to Plaintiff's allegations, Icahn Capital's choice not to nominate him to the B+L Board was dictated by B+L's Board Diversity Policy.  Therefore, none of the Icahn

1

Defendants had any intent to discriminate against him, a required element of his claim.  In addition, Plaintiff fails to allege a single fact to suggest Hu was involved in that choice or took any action to intentionally discriminate against Plaintiff.  Moreover, Plaintiff's breach of implied covenant claim, premised on the same allegations as his discrimination claim, fails because courts have consistently precluded attempts to use implied covenant claims to create extracontractual duties, impose terms that conflict with the plain language of the contract, or go beyond statutory remedies.

*Second*, Plaintiff alleges the Icahn Defendants breached the EA and/or the implied covenant of good faith and engaged in fraud by failing to disclose Mr. Icahn's margin loans while negotiating the EA.  (Causes of Action III–V).  But Plaintiff, a sophisticated portfolio manager with years of experience, had an opportunity to consult with counsel of his own choosing, could have negotiated for the inclusion of applicable representations in the EA but declined to do so, and expressly disclaimed any reliance on statements made or materials provided prior to entering into the EA. He also acknowledged that Icahn Capital had the sole and absolute discretion to determine whether to make investments and when to liquidate them, and he agreed he bore the risk his compensation could be negatively affected as a result.  Indeed, his EA expressly provided Icahn Capital could choose to make none of the investments he or any other portfolio manager recommended, in which case he would be eligible for no compensation whatsoever beyond his base pay.  As it turned out, the investments he did recommend resulted in massive losses for Icahn Capital, and he will almost certainly be entitled to no profit-sharing compensation at the end of the EA's term, much less the hundreds of millions in speculative damages he claims.  Finally, his contract claims are time-barred.

2

## FACTUAL BACKGROUND

Mr. Icahn is the founder and Chairman of IEP, a publicly traded company that invests in other companies.  ¶ 46; Ex. J at 35.[1]  Icahn Capital, a subsidiary of IEP, utilizes an "activist investor" business model to acquire large equity stakes in publicly traded companies to, among other things, gain board seats and enact changes to enhance financial performance for the benefit of all shareholders.  ¶¶ 43–45, 54–55.

### a.      Plaintiff Negotiates The EA

In April 2020, Plaintiff was introduced to Brett Icahn, Mr. Icahn's son and a portfolio manager at Icahn Capital.  ¶¶ 36, 52.  Plaintiff alleges that he was interested in joining Icahn Capital because of the historical success of its portfolio managers.  ¶ 72.  In particular, he points to a 2012-2016 deal, New Sargon, in which Brett Icahn and another portfolio manager were each paid $223 million as a result of the dramatic success of certain investments they recommended.  *Id.*

In discussing his potential employment and compensation, Plaintiff requested from Brett Icahn financial information to assess Icahn Capital's and IEP's assets for investment.  ¶ 292.  Brett Icahn directed Plaintiff to IEP's public securities filings and, on April 18, 2020, emailed Plaintiff a "quick preliminary" proposal to show Plaintiff an "oversimplified way to look at the range of comp[ensation]" that was dependent on five factors.  ¶ 292, Ex. I at 47.  Brett Icahn's email attached a model, which provided that $5.8 billion, and up to $8.6 billion, *could* be made available for investment by Icahn Capital.  ¶ 293.  Brett Icahn explained that the calculations were "NOT an official offer, and only for discussion purposes," and "IEP [was] not required to invest in anything."

---

[1] References to ¶ __ and Ex.__ are to the Complaint and its exhibits.  In considering this motion, the Court may consider (i) Plaintiffs' Complaint and attached exhibits; (ii) IEP's public filings with the SEC; and (iii) other documents incorporated by reference in the Complaint.  *See Bhatt v. Tech Data Corp.*, 2018 WL 6504375, at *2, 4 n. 5 (M.D. Fla. Dec. 11, 2018).

Ex. I at 47.  On May 25, 2020, Brett Icahn amended the estimated model to reflect an increase of potential investment funds to $11.0 billion.  Ex. I at 50–51.

Despite the hypothetical nature of Brett Icahn's models and estimates, Plaintiff alleges he sought to verify the numbers by relying on IEP's 2019 Annual Report.  ¶¶ 295, 299.  That Report disclosed Mr. Icahn owned approximately 197 million depository units (which are publicly traded) of IEP as of December 31, 2019, and that those units were worth approximately $6.5 billion.  ¶ 298.  Plaintiff requested but did not receive additional information concerning the "amount and structure of the investment funds and other factors material to the deal."  ¶¶ 300–01, 303.

> **b.**      **Plaintiff Signs The EA**

On October 1, 2020, after five months of negotiations, Plaintiff signed a seven-year EA with Icahn Capital.  ¶ 60; Ex. C.  The EA is governed by Delaware law and provides, among other things, that Plaintiff would receive a base salary and annual bonus tied to the financial performance of investments he recommended.  Ex. C, §§ 5, 11(iii); ¶ 64.  While the EA provided for a term of employment through September 30, 2027, Icahn Capital could terminate Plaintiff's employment at any time for "Cause" or in its "sole and absolute discretion…without Cause."  Ex. C, §§ 4, 6(i).  Upon the September 30, 2027, termination of the EA, Plaintiff stood to receive a one-time profit-sharing payment comprised of 2.0% of any new investment he proposed and an additional .25% of the profits generated by other Icahn Capital portfolio managers.  ¶ 64.  The profit-sharing on his recommended investments would be triggered only if they increased by more than 4.5% and was subject to Icahn Capital's sole and absolute discretion to make, hold and sell investments.  Ex. C, § 11(x).  The EA also provided that Icahn Capital or its affiliates *may* request that Plaintiff act as an officer or director on the board of another entity and in doing so would be entitled to keep any remuneration he received in connection with the role.  *Id*. at § 2(y).

The EA contains a broad "Limitation of Rights" stating that "[a]ny matter, thing, judgment or determination that is to be, or may be, made or determined by [Icahn Capital] under this Agreement, may be made or determined in the **sole and absolute discretion of Icahn Capital…**" *Id*. at § 11(x) (emphasis added), and:

> no provision in this Agreement shall create, or be deemed or construed to create, any claim, right or cause of action against Employer or any Affiliate of Employer arising from **any failure to agree to make any investment,** provide any financing, generate, obtain or charge any fee, **take any profit, or make or Sell any investment, in each case whether for any reason or no reason**.  **Employer and its Affiliates shall have no duty or obligation of any kind or charter to make, hold or continue any investment in the Funds and may liquidate the Funds at any time, for any reason or no reason** . . . **and [Plaintiff] is freely accepting such risk** in entering into this Agreement **and waives and releases any right, claim,** power or privilege that might or could, otherwise arise therefrom **(including any claim of bad faith, unfair dealing, quantum meruit, unjust enrichment, breach of contract** or any other theory in law or equity).

*Id*. (emphasis added).  Moreover, the EA contains the following unambiguous integration clause providing that nothing communicated outside of the agreement constituted a promise to Plaintiff:

> This Agreement represents the entire agreement of the parties and supersedes any and all existing agreements, oral or written, between [Plaintiff] and Employer or any of its Affiliates relating to the subject matter hereof.  **It specifically supersedes any and all term sheets**, letters of intent, **spreadsheets and other materials that may have been shared with [Plaintiff] at any time**, and all subsequent drafts thereof, **which [Plaintiff] understands, acknowledges and agrees are not part of the agreement of the parties and should not be utilized for purposes of interpreting this Agreement or for any other purpose**.

*Id*. at § 11(i) (emphasis added).  Plaintiff was advised to consult with counsel of his own choosing prior to entering into the EA and acknowledged his right to do so.  *Id*. at § 11(xiv).

### c.      Plaintiff Proposes the Bausch Health Investment to Icahn Capital

In or around December 2020, Plaintiff proposed a substantial investment in Bausch Health Companies Inc. ("Bausch Health") that was premised on the idea that Bausch Health would "spin off" its "'crown jewel' asset[,]" B+L, which would then issue an IPO.  ¶¶ 75, 77.  In pitching the investment to Icahn Capital, Plaintiff failed to identify the massive exposure associated with

5

Bausch Health's ongoing patent dispute with Norwich Pharmaceuticals, Inc. ("Norwich").[2] Plaintiff's proposal was approved, and by February 11, 2021, Icahn Capital and IEP acquired a significant position in Bausch Health.  ¶¶ 76, 79.  On March 17, 2021, Brett Icahn and Plaintiff were appointed to the Bausch Health Board.  ¶ 81.

In December 2021, Christina Ackermann, general counsel for B+L, and Icahn Capital began negotiating a post-IPO relationship.  ¶¶ 100, 104.  Under an initial Director Appointment and Nomination Agreement ("DANA"), Icahn Capital was entitled to appoint two directors to the B+L Board after the spin-off was finalized.  ¶¶ 104, 120.  Plaintiff alleges he became concerned B+L's Board Diversity Policy "could be used to exclude him" as an appointee on the basis of race. ¶ 107.  Icahn Capital pushed back by adding a "protective clause" to the draft DANA that would allow his appointment, but B+L rebuffed this addition.  ¶¶ 109–10.

On May 10, 2022, B+L had its IPO and Icahn Capital acquired 3,500,000 shares, but Bausch Health continued to be the majority owner of B+L and therefore the spin-off was not complete.  ¶¶ 130–31.  Because Icahn Capital was disappointed in the IPO, it sought to advance the timeline for appointing its directors to the B+L Board.  ¶ 140.  The parties entered into an Amended DANA (Ex. E), allowing Icahn Capital to appoint board members prior to completion of the spin-off, and Brett Icahn and Hu were appointed to the B+L Board.  ¶ 149.

Despite not having been appointed to the B+L Board, from June 2022 to December 2022, Plaintiff worked directly with B+L's management team to execute on Icahn Capital's activist

---

[2] Norwich developed a generic drug that would directly compete with Bausch Health's blockbuster drug, Xifaxan.  Plaintiff ignored the threat posed by Norwich until at least February of 2022.  By July 2022, a negative ruling finding some of the Xifaxan patents invalid caused Bausch Health's stock to plummet 54% and trading was halted.  James Halley, *Why Shares of Bausch Health Companies Dropped 54.4% This Week*, The Motley Fool, (Aug. 1, 2022 10:08 AM), available at https://www.fool.com/investing/2022/07/28/why-shares-of-bausch-health-companies-dropped-544/.

strategy.  ¶¶159–60.  By late December 2022, B+L objected to Plaintiff's disruptive contact with B+L's management, and Plaintiff began working through Brett Icahn and Hu on that strategy, including drafting emails for Hu to send to B+L management.  ¶¶ 170–75.

### d.        Mr. Icahn's Pledges of Depository Units in IEP

Mr. Icahn, like many corporate executives who have significant net worth in securities of the companies they control, has at various times obtained margin loans secured by his ownership interest in IEP.  ¶ 255.  On February 23, 2022, IEP filed its annual 10-K report for 2021, which disclosed to investors and the public that, out of the 257,047,260 depositary units beneficially owned by Mr. Icahn, 167,658,659 units had been "pledged as collateral to secure certain personal indebtedness."  ¶ 258; 2021 10-K at 125–26 n.(c).  The publicly traded price of IEP units did not materially change in response to this disclosure.[3]

### e.        The Hindenburg Report

On May 2, 2023, Hindenburg Research, LLC, a well-known short seller that takes short positions in companies and then publishes reports criticizing those companies so that it can profit on its short position, published a report about IEP.  That report, based only on already *publicly available* information about IEP and Mr. Icahn, addressed numerous topics, including Mr. Icahn's margin loans, which IEP had publicly disclosed more than a year earlier.  ¶ 259.  In 2024, without admitting liability, IEP and Mr. Icahn entered into a settlement agreement with the SEC relating to two specific SEC regulations concerning the timing of when the margin loans were disclosed to investors and paid fines totaling $2 million.  ¶¶ 262, 264.

---

[3] *See* Yahoo! Finance, *IEP Historical Prices*, https://finance.yahoo.com/quote/IEP/ (last visited Mar. 6, 2026).

### f.        Icahn Capital Exercises Its Sole Discretion to Sell Certain Investments

From December 2020, well prior to the 2023 Hindenburg report, through September 2025, Icahn Capital exercised its sole discretion to sell various investments.  ¶ 273.  Among them were investments in the Bausch companies, ¶ 276, which had been recommended by Plaintiff, and which proved disastrous—in large part because of Plaintiff's failure to identify the massive exposure posed by Norwich's generic drug.  Overall, Icahn Capital lost more than a billion dollars on its Bausch investments.  During the course of his employment, Icahn Capital has adopted only one other investment recommended by Plaintiff.  That investment lost tens of millions as well.

### ARGUMENT

### I.        THE DISCRIMINATION CLAIMS AGAINST THE ICAHN DEFENDANTS FAIL

### a.        The Section 1981 Claim Against the Icahn Defendants Must Be Dismissed Because There Was No Intent to Discriminate

Under Section 1981, a plaintiff "must show purposeful, intentional discrimination," *Taylor v. Birmingham Airport Auth.*, 2024 WL 4048840, at *4 (N.D. Ala. Sep. 4, 2024) (citations omitted), and that such intentional discrimination was a "but-for" cause of his injury.  *Comcast Corp. v. National Ass'n of African American Owned Media*, 589 U.S. 327, 341 (2020).  Plaintiff cannot meet this burden.

Plaintiff alleges in his First Cause of Action that the Icahn Defendants violated Section 1981 by preventing him from serving on the B+L Board through the application of B+L's Board Diversity Policy, as set forth in the allegedly "discriminatory" Side Letter.  For the reasons set forth in the Defendants' Common Motion to Dismiss the Complaint, Plaintiff's discrimination claim fails.  In the alternative, as Plaintiff concedes, Icahn Capital repeatedly pushed back against B+L's alleged mandate, including by trying to insert a "protective clause" in the DANA (¶¶ 109–113) and other measures (¶ 141), but was unsuccessful.  Accordingly, Plaintiff does not—and cannot—show

purposeful, intentional discrimination by the Icahn Defendants.  To the extent B+L's Board Diversity Policy was somehow improper (it was not), that policy, not the Icahn Defendants, was the but-for cause of Plaintiff's injury.  *Comcast*, 589 U.S. at 341; *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 396 (1982) (declining to impose liability on employers based upon intentional discrimination by a third party because Congress did not intend for Section 1981 to "make [employers] the guarantors of the workers' rights as against third parties who would infringe them"); *FPL Food, LLC v. U.S. Dep't of Agric.*, 671 F. Supp. 2d 1339, 1357 (S.D. Ga. 2009) ("Section 1981 does not require employers to protect its [sic] employees against discrimination by third parties[.]").

### b.  Plaintiff's Claim That Icahn Capital Breached Either His EA or an Implied Covenant by Not Appointing Him to the B+L Board Fails

#### i.  No Contractual Provision in the EA was Breached

To the extent Plaintiff alleges in his Second Cause of Action that Icahn Capital breached his EA by "denying him a seat" on B+L's Board, he fails to identify any contractual provision that was breached.  The EA states that Plaintiff "***may*** . . . be requested by [Icahn Capital or its affiliates] to act as an officer, director, advisor or agent to other entities[.]"  Ex. C, § 2(y) (emphasis added). The permissive "may" creates no right to a board seat.  Thus, no breach occurred and the claim should be dismissed.  *See, e.g.*, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (sole shareholder could not bring a Section 1981 claim against a party that breached its contracts with the corporation because the shareholder himself did not have rights under those agreements).

#### ii.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant Through Disparate Treatment

Plaintiff argues in his Second Cause of Action that the same allegations that support his Section 1981 claim—i.e., Icahn Capital's failure to designate him to the B+L Board—also establish

Icahn Capital breached the implied covenant of good faith and fair dealing in his EA by "subjecting him to disparate treatment in connection with his employment . . . ." ¶ 379. This claim also fails.

Under Delaware law, the implied covenant of good faith and fair dealing is narrowly interpreted in the context of employment agreements to provide limited and discrete exceptions to employment at-will. *See, e.g.*, *Dunn v. FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *6 (Del. Ch. Aug. 30, 2019) ("[T]o constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute an aspect of fraud, deceit or misrepresentation.") (citation omitted). Moreover, the implied covenant cannot be used to create independent duties beyond express contractual terms or to contradict at-will principles of employment. *Id*. at *4–6; *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 440 (Del. 1996). Yet, this is precisely what Plaintiff attempts to do by importing a distinct, extracontractual duty not to discriminate into the EA when an adequate remedy exists under federal civil rights law.

The implied covenant of good faith and fair dealing "is traditionally invoked only where the contract is silent with respect to the issue in dispute." *DecisivEdge, LLC v. VNU Grp., LLC*, 2018 WL 1448755, at *9 (Del. Super. Ct. Mar. 19, 2018) (citation omitted); *see also Lidya Holdings Inc. v. Eksin*, 2022 WL 274679, at *6 (Del. Ch. Jan. 31, 2022) ("The purpose of the implied covenant in Delaware is to serve as a contractual gap-filler."). It is used "conservatively to ensure the parties' reasonable expectations are fulfilled." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009) (internal quotations and citation omitted). Here, there is no contractual gap for the implied covenant to fill because the contract clearly does not confer any right on Plaintiff to a board seat. Ex. C, § 2(y); *see also Dunn*, 2019 WL 4131010, at *5 (dismissing implied covenant claim where plaintiff "agreed to terms that contradict those he wishes to imply"). Moreover, Section 1981 already provides a comprehensive federal remedy for race discrimination.

10

Allowing a breach of contract claim based on the same alleged conduct to support a Section 1981 claim would create redundant remedies, circumvent the specific limitations and procedures Congress built into Section 1981, and transform every statutory violation into a contractual breach. Doing so flouts the rule that "obligations under the covenant of good faith and fair dealing should be implied only in rare instances." *Homan v. Turoczy*, 2005 WL 2000756, at *18 (Del. Ch. Aug. 12, 2005) (collecting cases). Accordingly, Plaintiff is barred from bringing a claim for discrimination in the guise of a breach of the implied covenant of good faith and fair dealing. *See e.g.*, *Saunders v. E.I. DuPont de Nemours & Co.*, 2017 WL 679853, at *9 (D. Del. Feb. 17, 2017) (holding that the Delaware Discrimination in Employment Act is the "'sole remedy' . . . 'to the exclusion of all other remedies'" and dismissing implied covenant claim); *Lamb v. Outback*, 2014 WL 12689882 (M.D. Fla. Sep. 4, 2014) (dismissing good faith and fair dealing claim premised on an implied contractual duty to prevent discrimination and harassment).

### iii.    Plaintiff's Second Cause of Action is Time-Barred

Even if Plaintiff could plausibly assert a breach of the implied covenant of good faith and fair dealing (which he cannot), the claim is time-barred. Delaware's statute of limitations for breach of contract and breach of the implied covenant is three years, and the claims accrue at "the time of [the] breach." *AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706, at *12 (Del. Super. Ct. May 29, 2020) (citations omitted). "Even if tolling applies, the statute of limitations begins to run from the date [] the plaintiff was on inquiry notice." *Id*.

Here, Plaintiff's claim is based on Icahn Capital's failure to appoint him to the B+L board. At the latest, that date is June 23, 2022, when Icahn Capital's designees were appointed and Plaintiff was put on notice. Therefore, the limitations period ran on June 23, 2025. And tolling cannot save Plaintiff's claim. Plaintiff pleads—without any factual support—that the "continuous contract and continuing breach" doctrine applies. ¶ 391. However, "[t]he continuous breach

11

doctrine is narrow and only applied in unusual circumstances." *Acme Markets, Inc. v. Oekos Kirkwood, LLC*, 2025 WL 2172302, at *5 (Del. Super. Ct. July 31, 2025). "[I]f a party is able to allege 'a prima facie case for breach of contract after a single incident, the doctrine does not apply, even if a defendant engages in numerous repeated wrongs of a similar . . . character over an extended period.'" *Id.* (citation omitted). Here, Plaintiff's alleged prima facie case arose upon a single incident—when he was not appointed to the B+L Board.

### c. The Section 1981 Claim Against Gary Hu Must be Dismissed

Plaintiff's Section 1981 claim against Hu in his First Cause of Action also fails as a matter of law. Plaintiff does not—because he cannot—allege that Hu took any action against Plaintiff, let alone intentionally discriminated against him. The only mention of Hu within the First Cause of Action is that others appointed him to the B+L Board instead of Plaintiff because he is diverse. ¶ 343. Even assuming this is true, there is no conceivable basis to hold Hu liable for intentional discrimination. *Jerome v. Hertz Corp.*, 15 F. Supp. 3d 1225, 1234 (M.D. Fla. 2014) ("[P]laintiff cannot bring a cause of action pursuant to Section 1981 against an individual not personally involved."). When Plaintiff describes each actors' alleged misconduct in the First Cause of Action, Hu is conspicuously absent from all of those allegations. ¶¶ 344–365. He simply did not do anything other than follow his employer's direction to join the B+L board. Thus, Plaintiff's Section 1981 claim against Hu must be dismissed.

## II. PLAINTIFF'S BREACH OF CONTRACT OR IMPLIED COVENANT CLAIM BASED ON ALLEGED FAILURE TO DISCLOSE THE MARGIN LOANS FAILS

### a. There Was No Breach of Contract or an Implied Covenant

As an initial matter, to the extent Plaintiff alleges in his Third Cause of Action that Icahn Capital breached his EA by failing to disclose the margin loans in the course of negotiating his employment or by selling its investment in the Bausch companies such that he was not able to earn

12

his hoped-for compensation, he fails to identify any contractual provision that was breached.  The express terms of the EA undermine any such claim.  Plaintiff cannot rely on any statements made prior to entering into the EA because the integration clause explicitly prohibits him from doing so.  Ex. C, § 11(i).  And he waived all claims in connection with Icahn Capital's decision to sell its investments or liquidate its funds.  *Id*. at § 11(x).

Likely because he recognizes he has no claim under the actual contract, Plaintiff asserts Icahn Capital breached an implied covenant of good faith by inducing him to enter into the EA while failing to disclose the margin loans.  This claim fails for multiple reasons.  *First*, the implied covenant is not free-floating and must be expressly tied to the parties' *contractual* relationship, which Plaintiff cannot establish because the contract expressly undermines such a claim.

*Second*, Delaware courts have consistently held that "obligations under the covenant of good faith and fair dealing should be implied only in rare instances" and only to fill gaps where the contract is silent with respect to the issue in dispute.  *Supra* I.b.ii.  This is particularly true in the employment context, where the covenant is applied especially narrowly to avoid undermining the doctrine of at-will employment.  *Id*.  Here, again, there are no contractual gaps to fill because Plaintiff expressly disclaimed reliance on the very statements, discussions, and materials leading up to his decision to sign the EA that he now relies on in bringing this claim.  Ex. C, § 11(i).  And Plaintiff cannot claim he relied on Icahn Capital deploying a certain amount of capital because the contract states that it retains "sole and absolute discretion" to make and sell any investments or to liquidate the investments Plaintiff may have recommended.  *Id*. at § 11(x).

### b.    Plaintiff Fails to Adequately Plead Damages

Plaintiff's breach of contract claim also fails because Plaintiff's alleged damages lack support, are wildly speculative and are based on unknowable future events.  To support a claim for breach of contract or implied contract, Plaintiff must establish that the defendant's breach of a

specific implied contractual obligation resulted in damages. *In re Cendant Corp. Sec. Litig.*, 181 F. App'x 206, 210 (3d Cir. 2006) (proof of damages is an essential element of a breach of contract claim under Delaware law). "The possibility of . . . speculative harm is not sufficient to state a claim for breach of contract." *Kuroda*, 971 A.2d at 884.

Plaintiff claims he is owed a "Make Whole Bonus" of $236 million, which is based on the payout that Brett Icahn received under the New Sargon deal. ¶ 410. But this is a pipe dream, untethered to anything in his EA or reality. Not only did Plaintiff disclaim any right or expectation to receive any particular compensation under the EA (Ex. C § 11(i)), but he cannot plausibly claim his compensation would have been anything near that received in the New Sargon deal, which was based on entirely different and spectacularly successful investments. Any compensation Plaintiff hopes he could have earned is sheer speculation as to investments he *might* have recommended, whether Icahn Capital *might* have accepted his recommendations, how much money Icahn Capital *might* have invested, how any such investments *might* have performed, and myriad other unknowable factors. Indeed, under the 2.0% profit sharing provision in his contract, an investment recommended by Plaintiff would have had to yield $11.8 billion in *profit* for Icahn Capital in order to result in a $236 million payout to Plaintiff. And he alleges these damages and more (up to $500 million) despite the fact that Icahn Capital's investment in the Bausch companies and his only other recommendation that was adopted were massive failures.

### c.   The Third Cause of Action is Time-Barred

Even if Plaintiff's breach of implied covenant claim concerning the margin loans was plausible—which it is not—it is barred by the statute of limitations. The statute of limitations for a breach of contract and breach of implied covenant claim under Delaware law is three years and starts to run at the time the contract is breached. *See supra* I.b.iii. If the statute of limitations is tolled under circumstances such as fraudulent concealment, the limitations period runs from the

14

date the plaintiff was on inquiry notice. *Id.*; *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1214 (Del. Ch. 2022).

Here, Plaintiff claims that the Icahn Defendants breached the implied covenant when they failed to disclose the margin loans during the 2020 negotiations of his employment.  ¶¶ 397–98. Although Plaintiff acknowledges the margin loans were disclosed on February 23, 2022, in IEP's 2021 10-K (¶ 258), Plaintiff somehow claims he did not learn of them until May 2, 2023, when the Hindenburg report was published.  ¶¶ 259, 411.  That report was based on information that was already publicly available, including the 2021 10-K.  *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1246 (11th Cir. 2023) ("[I]f the information relied upon in forming an opinion was previously known to the market, the only thing actually disclosed to the market when the opinion is released is the opinion itself.") (citation modified).  Therefore, Plaintiff was on inquiry notice, the limitations period began on February 23, 2022, and expired on that same date in 2025, well before he filed his claim.

## III.    PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM FAILS

Under Florida law,[4] to state a claim for fraudulent concealment (Fourth Cause of Action), a plaintiff must allege: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew the concealment of or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) there was detrimental reliance on the misinformation. *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013).

---

[4] Plaintiff contends Florida law applies to his fraud claims.  ¶ 413, n.32.  However, where the fraud claims are directly related to a contract that contains a broad choice of law provision, the contract's choice of law provision will govern.  *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000).  Here the contract states Delaware law applies.  Ex. C, §11(iii). Under Delaware law, Plaintiff's fraud claims (Fourth and Fifth Causes of Action) are barred by the three-year statute of limitations (10 Del. C. § 8106) which began to run on February 23, 2022.

a.        **The Icahn Defendants Had No Duty to Disclose the Margin Loans to Plaintiff**

Plaintiff does not plead any facts to support a claim that the Icahn Defendants owed him a duty to disclose the margin loans.  "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000).  "Absent such a duty, a plaintiff is not entitled to infer any communicative content from a defendant's silence or nondisclosure." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 840 (Fla. 2022).  "[A] duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'" *Temurian v. Piccolo*, 2019 WL 1763022, at *6 (S.D. Fla. Apr. 22, 2019) (citation omitted) (Bloom, J.).  In an arms-length transaction, such as here, there is no duty to act for the benefit or protection of the other party and thus no fiduciary or other duty of trust and confidence. *Id*. at *7.

Plaintiff's contention that the "'violation of the statutory reporting requirements are legally sufficient to show the existence of a legal duty owed' to those harmed by the nondisclosure[,]" ¶ 417 (quoting *Palmer v. Shearson*, 622 So. 2d 1085, 1093 (Fla. 1st DCA 1993)), is wrong.  A duty to disclose that is created by statute extends only to the "class designed to be protected by the statute . . . ." *See Palmer*, 622 So. 2d at 1090.  Indeed, "[t]he law is settled that a statute creates a duty of care upon one whose behavior is the subject of the statute to a person who is in the class designed to be protected by the statute, and that such duty will support a finding of liability . . . when the injury suffered by a person in the protected class is that which the statute was designed to prevent." *Id*. (citation omitted).

Plaintiff alleges the Icahn Defendants had a duty to disclose the margin loans because of the regulatory reporting requirements in Item 403(b) of Regulation S-K that applied to IEP and Sections 13(d)(2) of the Securities Exchange Act of 1934 and Rule 13d-2(a) thereunder that

16

applied to Mr. Icahn, both of which were the basis of their settlement with the SEC. ¶¶ 262–63. But on their face these regulations are intended to protect those considering a financial investment in the registered company making the disclosure—here, IEP—or its chairman, Mr. Icahn. Plaintiff, a prospective employee of Icahn Capital, is not within the intended class of persons whom these provisions were designed to protect and, therefore, was owed no duty.

Plaintiff further claims that a duty to disclose was triggered when Brett Icahn provided him with *estimates* of the funds that Icahn Capital had available for investment and then referred Plaintiff to IEP's "deficient" securities filings when he requested additional information. ¶¶ 415, 417. But this position is also unsupported by the facts and law. *Temurian*, 2019 WL 1763022, at *7 (finding an arm's length transaction existed and one party's expressions of opinion did not start to disclose material facts that would require additional disclosure). Even so, Brett Icahn's generalized, optimistic statements are not actionable. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) ("[e]xcessively vague, generalized, and optimistic comments" are "the sorts of statements that constitute puffery" and are not actionable).

### b. Plaintiff Cannot Establish He Was Harmed by the Alleged Concealment of Mr. Icahn's Personal Loans

An action for fraud requires Plaintiff to allege actual damages that directly arose from and are causally connected to the fraudulent conduct. *Simon v. Celebration Co.*, 883 So. 2d 826, 834 (Fla. 5th DCA 2004). Here, Plaintiff claims that the concealment of the margin loans harmed him because Icahn Capital allegedly exercised its sole discretion to liquidate portions of its investment in Bausch Health. ¶ 421. Plaintiff claims this reduced the amount of profits he *could* receive under the profit-sharing provision of his EA. *Id.* But, under his EA, Plaintiff was not entitled to receive any amount of profit, and bore the risk that Icahn Capital might sell any investment at any time to

17

his detriment, Ex. C, § 11(x), including one that had lost massive amounts like the Bausch investments.

Plaintiff further alleges that as a result of the Icahn Defendants' non-disclosure, he gave up an opportunity to work as a portfolio manager elsewhere and that his reputation was damaged by the SEC settlement. ¶ 421. But that is the extent of the allegations. The Complaint lacks any particularized facts, including how his reputation was damaged or the possibility of alternate employment. Such conclusory allegations are wholly inadequate. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a motion to dismiss, complaint must include "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

## IV.     PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM FAILS

To state a claim for fraudulent inducement (Fifth Cause of Action), a plaintiff must allege: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party *justifiably relied* on the false statement to its detriment." *Econ-O-check Corp. v. Suncoast Credit Union*, 2019 WL 12278839, at *2 (M.D. Fla. Dec. 19, 2019) (citations omitted). Here, Plaintiff fails to allege a material false statement or justifiable reliance.

### a.     Plaintiff Does Not Allege Any False Statement of Material Fact

Plaintiff does not plead any facts to support the allegation that the Icahn Defendants made any false statements of material fact. Plaintiff's only relevant allegations are that Brett Icahn sent Plaintiff emails estimating that $5.8 billion (and up to $11.0 billion) might be made available for Icahn Capital to invest and provided hypothetical models to guide the discussion of Plaintiff's potential compensation. ¶¶ 425–26; Ex. I at 47, 50–51. As an initial matter, Plaintiff cannot dispute that the funds Brett Icahn said were available for investment were, in fact, available for

18

and indeed used for, investment by Icahn Capital. The fact that some of those funds were borrowed is completely unsurprising and it would be odd for a sophisticated investor not to use margin. Plaintiff, an experienced investor, knew this. As did the market, which had no reaction in 2022 when the margin loans were disclosed. In addition, Plaintiff ignores Brett Icahn's statements that the models were "oversimplified" and that "**IEP [is] not required to invest in anything**." Ex. I at 47 (emphasis added). Plaintiff also ignores Brett Icahn's statement that the materials were not an offer of employment but for discussion purposes only. *Id.* Any statements about what Icahn Capital would endeavor to do in the future with respect to its investments constitute non-actionable optimistic estimates, not statements of fact. *See Carvelli*, 934 F.3d at 1320.

### b. Plaintiff's Reliance on Pre-Contractual Statements is Barred

A clear and unambiguous integration clause in a contract precludes a claim for fraudulent inducement, particularly where there are no prior false representations in the course of the parties' dealings. *See Park7 Student Housing, LLC v. PR III/Park7 SH Holdings, LLC*, 340 A.3d 614, 618–619 (Del. Ch. 2025) ("[A]n integration clause functions to preclude a fraud claim where the extracontractual misrepresentation directly conflicts with an express term in the contract" therefore a "plaintiff cannot plead justifiable reliance on those conflicting and superseded pre-contract extracontractual statements."); *ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. Feb. 14, 2006) (sophisticated parties may not rely on representations outside the contract if the agreement contains a clear anti-reliance clause); *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. 5th DCA 2016) (same). Plaintiff's claim for fraudulent inducement is barred by the integration clause in his EA contract, which states that the contract "specifically supersedes any and all term sheets, letters of intent, spreadsheets and other materials that may have been shared with [Plaintiff] at any time, and all subsequent drafts thereof, which [Plaintiff] understands, acknowledges and agrees are not part of the agreement of the parties and should not

19

be utilized for purposes of interpreting this Agreement or for any other purpose." Ex. C, § 11(i).[5]

Plaintiff "cannot promise . . . that [he] will not rely on promises and representations outside of the agreement and then shirk [his] own bargain in favor of a 'but [I] did rely on those other representations' fraudulent inducement claim." *ABRY Partners V, L.P.*, 891 A.2d at 1057.[6]

## CONCLUSION

For the foregoing reasons, the Icahn Defendants respectfully request this Court grant their Motion to Dismiss the First through Fifth Causes of Action of the Complaint with prejudice.

---

[5] This same language precludes Plaintiff's fraudulent concealment claim in his Fourth Cause of Action. *Midcap Funding X Trust v. Graebel Cos., Inc.*, 2020 WL 2095899, at *21 (Del. Ch. Apr. 30, 2020); *Prairie Capital III, L.P. v. Double E. Holding Corp.*, 132 A.3d 35, 50–55, 66 (Del. Ch. 2015). In addition, Plaintiff admits that he requested, but did not receive, additional information from Brett Icahn when he could not reconcile the estimates of potential investment funds with public filings and that he nonetheless entered into the EA. ¶¶ 300–03. Plaintiff's own pleadings fatally undermine any claim of justifiable reliance.

[6] Plaintiff's Third through Fifth Causes of Action are based upon the Icahn Defendants' purported failure to disclose the margin loans in negotiating the EA. Where, as here, allegations of fraud are "'inextricably intertwined' with the performance of a contract, there is no cognizable claim sounding in fraud." *Cont'l Gen. Ins. Co. v. Gardina*, 773 F. Supp. 3d 1294, 1300 (M.D. Fla. 2025) (citations omitted). Moreover, Plaintiff's claimed damages from the alleged fraudulent concealment (Count IV) and fraudulent inducement (Count V) are identical to the expectation damages he seeks to recover for the breach of implied contract (Count III) and are thus barred. *Novak v. Gray*, 469 F. App'x 811, 818 (11th Cir. 2012) (plaintiff was barred from recovering damages for a fraud claim where the damages were entirely duplicative of the breach of contract claim). The Fourth and Fifth Causes of Action should be dismissed for these reasons as well.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Icahn Defendants respectfully request that the Court permit oral argument on this motion. The issues presented by this motion are sufficiently numerous and complex that the Icahn Defendants submit oral argument will assist the Court in resolving this motion. The Icahn Defendants submit that 40 minutes will be sufficient oral argument time in connection with this particular motion.

Dated:  March 6, 2026

Respectfully submitted,

/s/ Mark A. Levy
Mark A. Levy
Florida Bar No. 121320
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, Florida  33394
Tel:  954-522-2200
mark.levy@brinkleymorgan.com

Jonathan R. Streeter (*pro hac vice*)
Nicolle L. Jacoby (*pro hac vice*)
Tanya K. Warnke (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel:  212-698-3500
jonathan.streeter@dechert.com
nicolle.jacoby@dechert.com
tanya.warnke@dechert.com

*Counsel for Defendants Icahn Enterprises L.P.,
Icahn Enterprises G.P. Inc., Icahn Capital LP,
Carl Icahn, Brett Icahn and Gaoxiang Hu*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the within document was served on all counsel of record in this case.

Dated: March 6, 2026

/s/ Mark A. Levy
Mark A. Levy