UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| **STEVEN D. MILLER**,<br><br>    *Plaintiff*,<br><br>v.<br><br>**BAUSCH HEALTH COMPANIES INC.;<br>BAUSCH + LOMB CORPORATION;<br>THOMAS ROSS; CHRISTINA<br>ACKERMANN; GAOXIANG HU;<br>ICAHN ENTERPRISES L.P.; ICAHN<br>ENTERPRISES G.P. INC.; ICAHN<br>CAPITAL, LP; CARL ICAHN; BRETT<br>ICAHN**,<br><br>    *Defendants*. | Case No. 1:25-cv-25893-BB |

**DEFENDANTS' COMMON REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
<u>THE COMPLAINT</u>**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

I.      Miller Fails to State a Section 1981 Claim. ........................................................................ 1

      A.      Race Was Not a But-For Cause of Miller's Exclusion from the B+L
              Board. ........................................................................................................................ 2

      B.      It Is Legally Significant When the Side Letter Was Rescinded. ............................. 5

      C.      Miller Fails to Demonstrate a Contractual Relationship That Was
              Impaired. .................................................................................................................. 6

II.     Miller Failed to Allege a Tortious Interference Claim. ....................................................... 7

III.    Miller Fails to Plead Non-Speculative Damages. .............................................................. 10

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahearn v. Mayo Clinic*,
180 So. 3d 165 (Fla. 1st DCA 2015) ..........................................................................................9

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946)...................................................................................................................10

*Busby v. City of Orlando*,
931 F.2d 764 (11th Cir. 1991) .....................................................................................................6

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020).........................................................................................................3, 4, 10

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 ...............................................................................................................................6

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
647 So. 2d 812 (Fla. 1994)...........................................................................................................8

*Fawcett v. Carnival Corp.*,
682 F. Supp. 3d 1106 (S.D. Fla. 2023) ........................................................................................9

*Foster v. Echols Cty. Sch. Dist.*,
169 F.4th 1291 (11th Cir. 2026) ..................................................................................................6

*Fresenius Vascular Care, Inc. v. Oakland Park Med. Props., LLC*,
2022 WL 17260765 (S.D. Fla. Sept. 21, 2022) ........................................................................10

*Furnari v. Nuance Commc'ns, Inc.*,
2012 WL 13102331 (M.D. Fla. Feb. 27, 2012) ...........................................................................9

*Landcastle Acquisition Corp. v. Renasant Bank*,
57 F.4th 1203 (11th Cir. 2023) ...................................................................................................8

*MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*,
965 F.3d 1210 (11th Cir. 2020) ...................................................................................................3

*Robinson v. Orange Cty.*,
2006 WL 1678967 (M.D. Fla. June 16, 2006)..............................................................................6

*Rodriguez v. Procter & Gamble Co.*,
338 F. Supp. 3d 1283 (S.D. Fla. 2018) ........................................................................................4

*Rojas v. Univ. of Fla. Bd. of Trs.*,
    419 So. 3d 593 (Fla. 2025)......................................................................................................8

*Selectica, Inc. v. Novatus, Inc.*,
    2014 WL 12625979 (M.D. Fla. June 17, 2014)......................................................................8

*St. John's River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*,
    784 So. 2d 500 (Fla. 5th DCA 2001)......................................................................................8

*Stein v. Marquis Yachts, LLC*,
    2015 WL 1288146 (S.D. Fla. Mar. 20, 2015)........................................................................1

*Wilson v. Wesley Med. Ctr.*,
    2002 WL 31163590 (D. Kan. Aug. 28, 2002) .......................................................................5

**INTRODUCTION**

Plaintiff Steven Miller was never promised a seat on Bausch + Lomb's ("B+L") Board. His at-will employment—which Icahn Capital could terminate at any time—gave Icahn Capital the discretion to ask Miller (or any of its employees with similar agreements) to serve as a director; it did not guarantee anyone that role. Because someone else was nominated, Miller filed this lawsuit.

Section 1981 is a cornerstone of our civil rights laws. But it was not designed to provide a windfall to an aggrieved employee who, having failed to receive a discretionary appointment under an at-will contract, now seeks to blame that outcome on race in an attempt to extract hundreds of millions of dollars in imaginary damages. Miller's opposition confirms what the Complaint makes clear: he has no contractual entitlement to the board seat, and his theory of but-for causation relies on a misreading of the Board Diversity Policy and Side Letter that plainly did not discriminate on the basis of race—demonstrated by the undisputed fact that those policies would be satisfied by any number of white candidates.

Miller's tortious interference claim rests on the same speculative, non-contractual expectation of a board seat. The Court should dismiss Counts I, VI, and VII[1] with prejudice.

**I.  MILLER FAILS TO STATE A SECTION 1981 CLAIM.**

Miller's Section 1981 claim fails for three independent reasons. First, Miller's race was not the cause of his non-appointment to the B+L Board; as alleged, both the Side Letter and the Diversity Policy would be satisfied by the appointment of a white candidate. Second, Miller fails

---

[1]   Notwithstanding Miller's intent, Opp. Br., ECF No. 83, at 2 n.2, he has yet to file a Rule 41 dismissal or a Rule 15 amendment. This Court can *sua sponte* dismiss Gary Hu and Count VII. *See, e.g., Stein v. Marquis Yachts, LLC*, 2015 WL 1288146, at *1 n.1 (S.D. Fla. Mar. 20, 2015) (dismissing claims where Plaintiff represented in his opposition that he would voluntarily dismiss but had yet to do so).

to show how the Side Letter—which was not in effect at the time Gary Hu was nominated—could have been a but-for cause of his alleged injury.  Third, Miller did not show that any contractual right was impaired, which is fatal to his claim.  Count I should be dismissed with prejudice.

### A.    Race Was Not a But-For Cause of Miller's Exclusion from the B+L Board.

Miller's Section 1981 claim turns on his contention that he would have received the B+L board seat but for the allegedly "racially discriminatory Side Letter." *See, e.g.*, ¶¶128, 180.[2]  Miller pleads that the Side Letter, which (at least when in force) bound Icahn Capital LP ("Icahn Capital") to the Diversity Policy, is what allegedly caused his exclusion from the Board.  *See* Opp. at 14.  Miller's arguments that he would have been appointed but for the Side Letter fail because they ignore the plain language of the documents.

*First*, Miller identifies no support—other than the Side Letter—for the allegation that race was a but-for cause of Miller not being appointed to the B+L Board.  But the Diversity Policy, incorporated by reference in the Side Letter, does not condition Board membership on race: it states that "[d]iversity includes gender, sexual preference, disability, age, ethnicity, religion, business experience, functional expertise, culture and geography."  MTD Ex. 1.  There are many ways for diverse individuals to satisfy the policy, including white people.  Because the Diversity Policy permits candidates of any race to be nominated, the policy cannot be a "facially discriminatory policy requiring adverse treatment based on" whiteness, as Miller contends.  Opp. at 16.  Rather than identify any allegations in the Complaint that would support Miller's twisted reading of the Diversity Policy, Miller only speculates that B+L would not have accepted a white appointee with non-racial "diverse" characteristics.  Opp. at 13-14.  This conclusory argument

---

[2]    Unless otherwise noted, citations marked by "¶" refer to Miller's Complaint, ECF No. 1; "Opp." refers to Miller's Opposition Brief, ECF No. 83; and "MTD" refers to Defendants Common Motion to Dismiss, ECF No. 81.

ignores the plain text of the Side Letter, which unambiguously permitted appointment of white candidates to the B+L Board.

Miller also argues that because there were no white candidates who were otherwise "diverse," the Side Letter effectively precluded the nomination of any white candidate.[3]  Opp. at 14.  This is a red herring.  Icahn Capital had discretion to appoint whomever it wanted to that seat—Icahn employee or not—who would satisfy the broad definition of "Diverse" under the Diversity Policy.  That Icahn Capital's alleged "longstanding practice" of appointing only its own Portfolio Managers or senior employees allegedly limited the candidates to a handful of people (among whom Gary Hu was the only non-white individual) does not mean that the Side Letter required racial discrimination, and Miller cites no cases that suggest otherwise.  And even if the pool of candidates were limited to Icahn Capital's "own Portfolio Managers and other senior employees," ¶117, the Complaint does not plead whether any Icahn Capital senior employee was a white person who met any other Diversity Policy criteria—a point Miller ignores.[4]  MTD at 12.

*Second*, Miller wrongly claims that Defendants' arguments advocate for a nonexistent "sole cause" standard.  Opp. at 14-16.  Defendants agree that multiple but-for causes can exist, but here, race was not *any* cause for Miller not being appointed.

For all his talk of but-for causation, Miller actually advocates for the "motivating factor" test that was flatly rejected in *Comcast* as inapplicable to Section 1981 claims: Miller argues that, so long as race could have played some role in the consideration under the Diversity Policy, he

---

[3]  Miller impermissibly asks the Court to consider extrinsic evidence in view of a clear and unambiguous agreement, *see* Opp. at 13-14 (discussing correspondence allegedly defining the meaning of the Diversity Policy), which the Court may not do.  *See* MTD at 11-12 (citing *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1218 (11th Cir. 2020)).

[4]  Miller also fails to respond to Defendants' point that the November 2022 Canadian ISS guidelines that supposedly introduced a racial quota were not in effect when Hu was appointed, *see* MTD at 11, so are not evidence that the Diversity Policy was a racial quota.

can survive dismissal.  *See* Opp. at 14-16.  *Comcast* demands more.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332–33, 341 (2020).

Miller poses what he frames as the dispositive question: "what would have happened if the plaintiff had been of a different race."  Opp. at 14 (citing *Comcast*, 589 U.S. at 333).  But the question this Court should be asking is whether the alleged but-for cause (the Side Letter) caused Defendants to take race-based actions.  That answer is no.  Consider the scenario where, instead of Gary Hu, Icahn Capital appointed a white woman.  In that scenario, Miller has no Section 1981 claim; he would claim he was discriminated against because he was a man, which is not actionable under the statute.  That his claim turns entirely on the fortuity of how Icahn Capital responded to the Side Letter—if the board seat went to a non-white male, he claims racial discrimination, but if it went to a non-male white, he cannot—makes clear that race was not a but-for cause.  Miller's alleged injury does not flow from the Side Letter or the Diversity Policy because its presence does not determine whether he even has a theoretically actionable claim.

Miller's reliance on *Rodriguez v. Procter & Gamble Co.*, 338 F. Supp. 3d 1283 (S.D. Fla. 2018), is similarly misplaced.  *Rodriguez* stands for the position that a "plaintiff need not allege discrimination against the whole class to establish a section 1981 claim."  *Id.* at 1287.  But unlike the defendant in *Rodriguez*, Defendants do not argue that the Side Letter is nondiscriminatory merely because B+L has appointed *other* white people to fill *other* seats on its Board.  *See id.* at 1286.  Defendants instead argue that the Side Letter did not require race discrimination against Miller.  Even according to the Complaint, *Miller's own seat* could have been filled by a white person. *Rodriguez* (and the Opposition) have nothing to say on that question.

4

**B.      It Is Legally Significant When the Side Letter Was Rescinded.**

Miller does not dispute that the Side Letter was not in effect when Gary Hu was appointed. But he claims it is irrelevant when it was extinguished since it was done after the discriminatory act was a "*fait accompli*." Opp. at 17.  Not so.

The Side Letter is the linchpin of Miller's Section 1981 claim. *See, e.g.*, ¶¶1, 128, 180, 344, 365.  But the Side Letter was not operative when Hu was nominated, and a contract that is no longer in effect cannot serve as the basis for—much less the but-for cause of—Miller's alleged injury. *See Wilson v. Wesley Med. Ctr.*, 2002 WL 31163590, at *4 (D. Kan. Aug. 28, 2002) ("If the contract is void . . . it cannot form the basis of a cognizable § 1981 claim.").

This timing point is dispositive for an independent reason.  Prior to Hu's nomination—which occurred with the execution of the Amended DANA—Icahn Capital had no legal authority to nominate anyone to the B+L Board.  ¶¶140, 149.  The Side Letter could not have deprived Miller of a right to a board seat that Icahn Capital did not even have.  Any alleged conversations that preceded Icahn Capital securing the right—at which point the Side Letter no longer imposed any obligations—lacked legal effect; Miller's continued reliance on them is misplaced.

Miller tries to salvage his claim by pointing to "other facts showing discrimination independent of the Side Letter." Opp. at 17.  But these other facts all derive from or relate to the Side Letter.  For example, ¶112 explicitly refers to the Side Letter, and ¶113 and ¶117 refer to the effect the Side Letter was allegedly imposing on Icahn Capital.  These allegations do not give rise to a Section 1981 claim independent of the Side Letter, and they likewise cannot save Miller's claim given that the Side Letter was extinguished before Gary Hu was appointed.

C.      **Miller Fails to Demonstrate a Contractual Relationship That Was Impaired.**

1.      The Icahn Employment Agreement Did Not Give Miller a Contractual Right to a Board Seat.

Miller insists he had a "reasonable expectation" to be appointed to the B+L Board simply because he was eligible for the seat. Opp at 19. Miller cites no cases to support this position. This is fatal to his Section 1981 claim because "plaintiff himself must have rights under the contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476. At most, Icahn—not Miller—had a discretionary right to *request* that Miller serve on boards in the course of his employment, but Miller himself had no such right.

Miller's cases are inapposite. The contract in *Foster* "required [defendants] to take certain actions" that "they chose not to take" because of plaintiff's race. *Foster v. Echols Cty. Sch. Dist.*, 169 F.4th 1291, 1298 (11th Cir. 2026). But here, Miller does not even purport to allege that his Icahn Capital Employment Agreement required Miller be appointed to any particular board; rather, all parties acknowledge that Icahn Capital "may" do so, at its discretion. Opp. at 20; *see* ¶382. Miller's reliance on *Robinson* is also misplaced. Defendants never claim, as Miller suggests, that an employer can mask discrimination by claiming a plaintiff is unqualified. *See* Opp. at 19. At best, *Robinson* stands for the mere fact that a plaintiff has not been promoted does not mean she has been discriminated against. *See Robinson v. Orange Cty.*, 2006 WL 1678967, at *9 (M.D. Fla. June 16, 2006). So too here; just because Miller was not appointed does not mean he was subject to race discrimination.

2.      The Complaint Does Not Support a "Refusal to Contract" Theory.

Miller cites several cases for the uncontroversial proposition that Section 1981 prohibits the "refusal to enter into a contract because of race." *Busby v. City of Orlando*, 931 F.2d 764, 771

6

n.6 (11th Cir. 1991). But Miller has not pleaded a "refusal to contract" claim here simply by alleging that he did not get what he wanted—a board seat he was not entitled to.

Miller concedes that Section 1981 claims that are "too speculative" are barred, but insists his appointment to the B+L Board was not speculative. Opp. at 21-22. He claims that "once Icahn Capital selected Plaintiff to serve on the Bausch + Lomb board, his appointment became more than a speculative business opportunity." Opp. at 22. But the Complaint does not support this, because: (i) at the time of Miller's supposed selection, Icahn Capital had no board appointment rights (*see supra* Section I.B); (ii) Icahn accordingly did not initially seek immediate representation on the B+L Board, and any supposed desire to seat Miller bore out of seeking greater board representation rights to manage its investment (not out of a desire to seat Miller); (iii) Miller was an at-will employee who could be terminated without cause; and, as discussed above, (iv) Icahn Capital retained discretion over whom to designate. *See* ¶¶100-03, 152; Compl. Ex. C. Thus, Miller has not alleged a "nonspeculative" contractual relationship with ***B+L*** arising from any internal Icahn Capital "understanding," with which Defendants could have interfered.

## II.    MILLER FAILED TO ALLEGE A TORTIOUS INTERFERENCE CLAIM.

Miller claims that Bausch Health, B+L, Ross, and Ackermann (the "Bausch Defendants") interfered with his Icahn Capital Employment Contract and purportedly forthcoming director contract with the B+L Board, and that the Bausch Defendants' arguments for dismissal only raise factual issues for a jury. Opp. at 27. Miller is incorrect and Count VI should be dismissed.[5]

Miller does not—and cannot—dispute that his employment agreement conferred no right to a seat on any board, let alone the B+L Board. Miller nevertheless contends that he can state a

---

[5]    To the extent Miller has even a plead a tortious interference with the prospective B+L contract claim, Miller failed to respond to Defendants' arguments and has therefore conceded it.

tortious interference claim by alleging only that "an understanding between the parties would have been completed had the defendant not interfered." Opp. at 27 (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). This argument fails. A business understanding, even a prospective one, must entail "legal or contractual rights." *See id.* ("[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights."). A "business understanding" sufficient to support a claim for tortious interference must therefore rest on, or be likely to lead to, some cognizable legal interest. And it is black letter law that contracts require mutual consideration. *Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1233 (11th Cir. 2023) ("Mutual assent and consideration are required elements for contract formation."). Here, the only alleged "understanding" is one that Miller agreed to in his existing employment contract, which provided Icahn Capital with the option of asking Miller to serve on the boards of some (or no) Icahn portfolio companies, if it chose to do so. *Cf. Rojas v. Univ. of Fla. Bd. of Trs.*, 419 So. 3d 593, 599 (Fla. 2025) ("Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract . . . .") (citations omitted). Miller's agreement to do work he already contracted to perform cannot give rise to the new contractual right with which Miller claims Defendants interfered. Because Miller pleads no additional consideration in exchange for a guaranteed board appointment, no legally cognizable right could have been forthcoming from the supposed "understanding between the parties" that the Bausch Defendants could have disrupted.

But even if Miller's potential appointment to the board rested on a cognizable forthcoming business understanding, tortious interference claims only protect "present relationship[s]," not "prospective" ones. *Selectica, Inc. v. Novatus, Inc.*, 2014 WL 12625979, at *1 (M.D. Fla. June 17, 2014) (citations omitted); *St. John's River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*,

8

784 So. 2d 500, 505 (Fla. 5th DCA 2001) ("The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship."). As discussed, *supra* Section I.C.2, Miller's spot on the B+L Board was purely speculative.[6]

Additionally, and importantly, the Representations and Warranties in the Side Letter say that the agreement will not violate any other agreements or contracts already entered into by the parties. *See* MTD at 18-19 (citing Ex. 2 § 2). Neither B+L nor any of its employees are parties to Icahn Capital's employment agreements. *See Furnari v. Nuance Commc'ns, Inc.*, 2012 WL 13102331, at *5 (M.D. Fla. Feb. 27, 2012) ("[A]s [Defendant] was not a party, it cannot be expected to be familiar with the . . . agreement."). Contrary to Miller's speculation about what certain Defendants might have learned or "knew generally," *see* ¶¶437-38, none of this changes or supersedes what Icahn Capital represented and warranted in the Side Letter.[7]

Moreover, the specific allegations about the Bausch Defendants' alleged knowledge of Miller's employment agreement say nothing about any right to—or even expectation of—a board seat. *See* Opp. at 28. Miller disclosed his "compensation may be affected by the performance of the Icahn entities' investment in Bausch," and that "activist-defense bankers and law firms" were aware of "the profit-based terms of Plaintiff's employment," but these disclosures speak only to the financial upside Miller stood to gain if the investment did well. None of these allegations addresses the permissive provision allowing Icahn Capital, in its sole discretion, to request that

---

[6] Defendants also did not interfere with any other alleged contractual rights. *See* Opp. at 27. First, the "duty of good faith . . . is not an abstract and independent term of a contract" that Defendants could interfere with. *See Ahearn v. Mayo Clinic*, 180 So. 3d 165, 170 (Fla. 1st DCA 2015). Second, Miller had no contractual rights to the compensation or B+L Board seat, *see supra* I.B, II, so the Bausch Defendants could not have interfered with such terms.

[7] Miller also failed to respond to the Bausch Defendants' argument that they lacked the requisite intent to interfere with any purported contractual right between Icahn Capital and Miller. *See* MTD at 19 n.11. Miller thus concedes the point, and his tortious interference claim must be dismissed. *See Fawcett v. Carnival Corp.*, 682 F. Supp. 3d 1106, 1112 (S.D. Fla. 2023).

Miller serve on any corporate board. These allegations simply show that Miller's compensation was tied to fund performance—a financial interest existed separate and apart from the board appointment. Miller's tortious interference claim should be dismissed with prejudice.

### III.   MILLER FAILS TO PLEAD NON-SPECULATIVE DAMAGES.

Miller argues that he has alleged several harms "that directly result from Defendants' section 1981 violation," and that the so-called "wrongdoer rule" rescues his wildly speculative damages claim for hundreds of millions of dollars. Opp. at 24-26. Not so. Instead of plausibly alleging a causal connection between the purported discrimination and any harm he suffered, he asserts a made-up tabulation of fees he might have received, bonuses he might have earned, and compensation he might have been paid had myriad variables aligned a certain way and had he been extraordinarily successful in the performance of his job. Moreover, the "wrongdoer rule" addresses uncertainty in the *calculation* of a harm that has already been established, *see Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946), it does not supply the threshold causal link between the alleged discriminatory act and the claimed injury. *Comcast*, 589 U.S. at 341. It is well settled that damages cannot be based on "speculation, conjecture or guesswork," *Fresenius Vascular Care, Inc. v. Oakland Park Med. Props., LLC*, 2022 WL 17260765, at *14 (S.D. Fla. Sept. 21, 2022), and nothing more is alleged here.[8]

**CONCLUSION**

For these reasons, the Complaint should be dismissed in its entirety, with prejudice.

Dated: May 8, 2026                                      Respectfully submitted,

---

[8]   Miller also argues that a civil rights violation under Section 1981 is at least "entitled as a matter of law to an award of nominal damages." Opp. at 26. However, none of the cases he cites are controlling in this circuit. More importantly, none changes the analysis with respect to the impermissibly speculative nature of the damages alleged.

/s/ *Jonathan R. Streeter*

Mark A. Levy
Florida Bar No. 121320
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, FL 33394
Phone: 954-522-2200
mark.levy@brinkleymorgan.com

Jonathan R. Streeter
Nicolle L. Jacoby
Tanya Warnke
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: 212-698-3500
jonathan.streeter@dechert.com
nicolle.jacoby@dechert.com
tanya.warnke@dechert.com

*Counsel for Defendants Icahn Enterprises
L.P., Icahn Enterprises G.P. Inc., Icahn
Capital LP, Carl Icahn, Brett Icahn, and
Gaoxiang Hu*

/s/ *Brandon S. Floch*

Jeffrey A. Neiman
Florida Bar No. 544469
Brandon S. Floch
Florida Bar No. 125218
Christopher D. Joyce
Florida Bar No. 1020006
NEIMAN MAYS FLOCH & ALMEIDA, PLLC
550 S. Andrews Avenue, Suite 720
Fort Lauderdale, FL 33301
Phone: (954) 462-1200
jneiman@nmfalawfirm.com
bfloch@nmfalawfirm.com
cjoyce@nmfalawfirm.com

Jay P. Lefkowitz, P.C. (*pro hac vice*)
Gilad Bendheim (*pro hac vice*)
Joseph Resnick (*pro hac vice*)
Alexander Rabinowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Phone: (212) 446-4800
lefkowitz@kirkland.com
gilad.bendheim@kirkland.com
joey.resnick@kirkland.com
alexander.rabinowitz@kirkland.com

*Counsel for Defendants Bausch + Lomb
Corporation, Thomas Ross, and Christina
Ackermann*

/s/ *Samuel A. Danon*

Samuel A. Danon
HUNTON ANDREWS KURTH LLP

11

333 SE 2nd Avenue, Suite 2400
Miami, FL 33131
Phone: (305) 810-2500
sdanon@hunton.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Ann-Elizabeth Ostrager (*pro hac vice*)
William S. Wolfe (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Phone: 212-558-4000
guiffrar@sullcrom.com
ostragerae@sullcrom.com
wolfew@sullcrom.com

Brandon T. Wallace (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Floor 21
Los Angeles, CA 90067
Phone: 310-712-6694
wallaceb@sullcrom.com

*Counsel for Defendant*
*Bausch Health Companies Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the within document was served on all counsel of record in this case.

Dated: May 8, 2026

/s/ *Brandon S. Floch*
*Brandon S. Floch*

*Counsel for Defendants Bausch + Lomb Corporation, Thomas Ross, and Christina Ackermann*