## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| STEVEN D. MILLER,<br><br>    *Plaintiff*,<br><br>v.<br><br>BAUSCH HEALTH COMPANIES INC.;<br>BAUSCH + LOMB CORPORATION;<br>THOMAS ROSS; CHRISTINA<br>ACKERMANN; GAOXIANG HU; ICAHN<br>ENTERPRISES L.P.; ICAHN ENTERPRISES<br>G.P. INC.; ICAHN CAPITAL LP; CARL<br>ICAHN; BRETT ICAHN,<br><br>    *Defendants*. | Case No. 1:25-cv-25893-BB |

### THE ICAHN DEFENDANTS' REPLY IN SUPPORT OF
### THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Icahn Enterprises L.P. ("IEP"), Icahn Enterprises G.P. Inc., Icahn Capital, LP ("Icahn Capital"), Carl Icahn ("Mr. Icahn"), and Brett Icahn (collectively, the "Icahn Defendants") respectfully submit this reply in further support of their Motion to Dismiss Plaintiff's Complaint.

## ARGUMENT

Plaintiff's Opposition ("Opp.") wholly fails to rebut the Icahn Defendants' showing that his Section 1981 claim is deficient, that the Employment Agreement ("EA") he signed forecloses every theory he advances, and that his contract and fraud claims are time-barred.

## I.      Plaintiff's Section 1981 Claim Against the Icahn Defendants Must Be Dismissed

Plaintiff's Section 1981 claim fails for the reasons set forth in the Common Brief filed on behalf of all defendants: the B+L Diversity Policy and Side Letter did not discriminate on the basis of race.  Alternatively, his claim fails because the Icahn Defendants were simply following the Diversity Policy mandated by B+L, and therefore they engaged in no purposeful, intentional discrimination.  *See Zatta v. SCI Tech. Inc.*, 2023 WL 11199375, at *5 (N.D. Ala. Apr. 26, 2023) (employer "bears liability only for the discriminatory action within its control"); *Watson v. Adecco Emp. Servs., Inc.*, 252 F. Supp. 2d 1347, 1358 (M.D. Fla. 2003).  The case cited by Plaintiff, *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468 (11th Cir. 1999) (Opp. at 23), does not hold otherwise.  Unlike the defendant in *Ferrill*—a telemarketing firm that admitted to a practice of "race[] match[ing]" with respect to its employees tasked with cold calls, *id.* at 471–72—the Icahn Defendants are not alleged to have maintained any race-based policy whatsoever.  Plaintiff's discrimination claims against the Icahn Defendants should therefore be dismissed.

## II.     Plaintiff Fails to Allege Breach of the Implied Covenant Based on Discrimination

Plaintiff argues that *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825 (Del. 2005), expressly recognized a claim for breach of the implied covenant based on intentional race discrimination in employment and that the same allegations supporting his Section 1981 claim also establish a

breach of the covenant (Count II).  Opp. at 44.  Plaintiff is wrong.  His claim is impermissibly duplicative; the implied covenant is a "limited and extraordinary legal remedy[,]" *Lidya Holdings Inc. v. Eksin*, 2022 WL 274679, at \*6 (Del. Ch. Jan. 31, 2022), invoked *only* to fill *contractual gaps*, and not to replicate statutory causes of action.  Indeed, Plaintiff concedes that the EA uses permissive language with respect to Icahn Capital's right to request that Plaintiff *may* serve as a director on a board.  Opp. at 20.  Because the contract directly addresses Plaintiff's lack of a right to be appointed to any board, there is no gap for the covenant to fill, and *Rizzitiello* does not override express contractual language granting Icahn Capital the sole discretion on this issue.[1]

The authority cited by Plaintiff (Opp. at 44) does not support his position.  For example, in *OC Tint Shop, Inc., v. CPFilms, Inc.*, 2018 WL 4658211, at \*5 (D. Del. Sep. 27, 2018), the court held that the plaintiff could bring a tort claim grounded in an independent pre-existing duty alongside a contract claim.  In *OC Tint Shop*, the court *dismissed* plaintiff's implied covenant claim because, as here, "the contract specifically addresse[d] the conduct that Plaintiff has alleged as Defendant's breach of the duty of good faith and fair dealing."  *Id*. at \*5.

## III.   Plaintiff Fails to Allege Breach of the Implied Covenant Based on the Margin Loans

Plaintiff's implied covenant claim based on an alleged failure to disclose the margin loans (Count III) similarly fails.  Under the EA, Plaintiff expressly disclaimed reliance on the very statements, discussions, "spreadsheets and other materials that may have been shared with [him] at any time" leading up to his decision to sign the EA (Ex. C, § 11(i)).  Moreover, the EA grants Icahn Capital "sole and absolute discretion" to make and sell any investments or to liquidate the

---

[1] There is ample authority to suggest that *Rizzitiello* has been superseded by statute, and that implied covenant claims based on discrimination in employment are foreclosed.  *See, e.g.*, *Saunders v. E.I. DuPont de Nemours & Co.*, 2017 WL 679853, at \*9 (D. Del. Feb. 17, 2017); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007).

investments Plaintiff may have recommended.  *Id.* at § 11(x).  Because the EA expressly addresses these issues, the implied covenant does not apply.  *Cf. Sands v. Homestar Remodeling, LLC*, 2025 WL 2924494, at *12 (Del. Super. Ct. Oct. 14, 2025) (dismissing implied covenant claim based on alleged false representations intending to induce plaintiff to work for defendants because the contract expressly covers the terms of employment).[2]

### IV.   Plaintiff's Implied Covenant Claims are Time Barred

Even if Plaintiff's implied covenant claims were adequately pled—they are not—they are barred by Delaware's three-year statute of limitations.  *Acme Markets, Inc. v. Oekos Kirkwood, LLC*, 2025 WL 2172302, at *3–5 (Del. Super. July 31, 2025).

As to Count II, which is premised on a discrete act of discrimination, the limitations period ran by at least June 23, 2025—three years after the date Gary Hu was appointed to the B+L Board instead of Plaintiff.  Plaintiff cannot refute this.  *See* Opp. at 47–52.  Nor does the "continuous breach" doctrine save this claim, because there is no factual dispute that Plaintiff could have "allege[d] 'a prima facie case for breach of contract after a single incident'"—when the Icahn Designees were appointed to the B+L Board on June 23, 2022.  *Acme*, 2025 WL 2172302, at *5 (citation omitted).  Plaintiff argues that "the statute of limitations has not even begun to run[,]" Opp. at 50, on his contract claims (and related implied covenant claims) because his contract does not expire until 2027.  This argument proves far too much because it would mean not only that his claim is not yet ripe, but also that the statute of limitations never starts running on a contract that

---

[2]  *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 101 (Del. 1992) is inapposite.  There, the court held that an employer breached the implied covenant when it induced an employee to enter a contract through deception that was "material to the contract[,]" i.e., the employer's secret intention to terminate the employee after inducing him to take the job.  *Id.*  But *Merrill* has no application where, as here, the EA expressly allocated investment and liquidity risk entirely to Plaintiff, foreclosing any argument that margin loan information was "material to the contract."

has no expiration date. *See In re Cellnet Data Sys., Inc.*, 313 B.R. 604, 610 (Bankr. D. Del. 2004) (collecting cases) ("Courts have uniformly rejected attempts to characterize alleged breaches of contract accruing at fixed points in time as 'continuing' breaches" because to hold otherwise would obliterate the statutes of limitations). Moreover, even "if there is a continuing injury for which the damages cannot be determined until the alleged wrong ceases, the statute of limitations begins to run on the last date of the alleged wrong." *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *14 (Del. Super. Ct. Dec. 4, 2019), *aff'd*, 247 A.3d 674 (Del. 2021). Here, the alleged wrong ceased on June 23, 2022 (Gary Hu's appointment to the B+L Board), and, as discussed below, on February 23, 2022 (IEP's Form 10-K disclosure of the margin loans). Plaintiff knew the facts giving rise to his Count II claim when he did not get the B+L board seat in 2022. He sat on that claim until after the statute of limitations ran and it should be dismissed.

As to Count III, Plaintiff's implied covenant claim based on alleged non-disclosure of margin loans, the limitations period ran by at least February 23, 2025—three years after IEP filed its 2021 Form 10-K disclosing the margin loans. By Plaintiff's own admission, "the limitations period begins when the Plaintiff learns 'of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which if pursued, would lead to the discovery of the injury.'" Opp. at 51 (citation omitted). Plaintiff argues that did not occur until the Hindenburg Report was published on May 2, 2023. *Id.* at 50. In his discussion of this issue, it is Plaintiff who engages in an "outlandish characterization of the facts." *Id.* at 38. Thus, he claims that the amount of the margin was not disclosed in the 10-K or that "key information" was only disclosed later in the Hindenburg Report. *Id.* at 38, 50–51. These assertions are demonstrably false based on the documents he cites in his Complaint, and which this Court can therefore consider in evaluating this Motion. First, in the 10-K he cites, IEP disclosed on February 23, 2022, that "167,658,659" of Carl Icahn's

"257,047,260" depositary units—in other words, more than 65%— were "pledged as collateral to secure certain personal indebtedness."  Compl. ¶ 258; IEP, Annual Report (2021 Form 10-K) (Feb. 23, 2022) at 125–26.  The simple math of multiplying the pledged units by the then-share price of $54.70[3] therefore showed that Mr. Icahn had more than $9.17 billion pledged on margin on that date—a calculation well within the capacity of Plaintiff, who analyzes public companies for a living.  Second, Plaintiff grossly mischaracterizes the Hindenburg Report to which he cites.  In truth, that Report did not reveal a single new fact about Mr. Icahn's margin loans or about the "'loan to value (LTV), maintenance thresholds, principal amount, [and] interest rates.'"  Opp. at 51.  Instead, it cited only the facts in IEP's prior public disclosures that Plaintiff seeks to minimize.[4]  Third, Plaintiff completely mischaracterizes the facts in claiming that IEP's unit price dropped 57% in response to a "disclosure" in the Hindenburg Report about the margin loans.  Opp. at 38, 50–52.  In fact, the Hindenburg Report mentioned the margin loans only passingly in a lengthy report that focused almost entirely on numerous other issues, and clearly the price dropped because of those other issues, Hindenburg Report at 3, not mention of margin loans that IEP had disclosed more than a year earlier.  Plaintiff sat on his alleged margin loan claim until after the statute of limitations had run and therefore it should be dismissed.

**V.      Plaintiff's Fraud Claims Fail as a Matter of Law**

> **A.      Plaintiff's Fraud Claims Are Barred by the Statute of Limitations**

For the exact same reason Plaintiff's contract/covenant claims based on the alleged failure to disclose the margin loans are barred by the statute of limitations, so are his fraud claims.

---

[3] *See Yahoo! Finance*, Historical Data, Icahn Enterprises L.P. (IEP) February 23, 2022, https://finance.yahoo.com/quote/IEP/history/?period1=1645574400&period2=1645660800.

[4] *See* HINDENBURG RESEARCH, Icahn Enterprises: The Corporate Raider Throwing Stones From His Own Glass House, May 2, 2023, at 3, 23, available at https://hindenburgresearch.com/icahn/.

Contrary to Plaintiff's argument, where fraud claims are directly related to a contract that contains a broad choice of law provision, the contract's choice of law provision will govern.  *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000).  Here, Plaintiff's fraud claims are inextricably bound up with his contract—indeed he claims the alleged fraud caused him to enter into the contract and is denying him the huge payout he hoped to get under that contract.  Therefore, the contract's choice of Delaware law controls, including its three-year limitations period for fraud claims.  10 Del. C. § 8106.  That period ran three years after IEP's February 2022 disclosure of the margin loans.

Plaintiff tries to avoid this and to claim that Florida's four-year statute of limitations applies, thereby narrowly saving his fraud claims.  Opp. at 35–36.  But the case he cites, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003), does not support his argument.  Rather, that case establishes that when tort claims (here fraud) are barred by a contract, and require interpretation of the contract, the contract's choice of law provision will control.  *Id.* at 1300–01.  For the reasons set forth below, Plaintiff's fraud claims are bound up in and barred by his contract, Delaware law applies, and its three-year statute of limitations ran in February 2025.

### B. Plaintiff's Fraud Claims Are Barred By His Contract

Delaware and Florida law make clear that "an integration clause functions to preclude a fraud claim where the extracontractual misrepresentation directly conflicts with an express term in the contract."  *Park7 Student Housing, LLC v. PR III/Park7 SH Holdings, LLC*, 340 A.3d 614, 618 (Del. Ch. June 20, 2025); *ABRY Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006); *see also Billington v. Ginn-La Pine Island, Ltd., LLP*, 192 So. 3d 77, 84 (Fla. Dist. Ct. App. 2016).  Further, as Plaintiff concedes, even absent specific anti-reliance language, a contract can bar a claim for fraud if it "contain[s] language that, when read together,

can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." Opp. at 42 (citing *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004)).

That is precisely the case here. The EA contains two specific provisions that preclude any justifiable reliance. *See* Ex. C at § 11(i), 11(x). Plaintiff expressly agreed that the EA's terms would supersede any statements, financial models, "spreadsheets and other materials that may have been shared with [Plaintiff] at any time" prior to his signing the agreement. *Id*. at § 11(i). Plaintiff further agreed that Icahn Capital had the sole discretion not to invest anything into the fund or to liquidate the fund entirely, for any reason, and that his compensation would be impacted by those decisions. *Id*. at § 11(x).

In response, Plaintiff cites to *Kronenberg*, 872 A.2d at 593. In that case, the court held that a standard integration clause alone was insufficient to bar fraud claims. *Id.* at 593. That principle has no application here, where the EA contained specific language beyond a general integration clause and precluded Plaintiff's reliance on the very documents he now cites to make his claim. Ex. C at § 11(i). Moreover, when that language is "read together" with the unambiguous language in his EA that Icahn Capital has sole discretion whether and how much to invest in any company Plaintiff recommended, and that his compensation would thereby be affected, both provisions undeniably "add up to a clear anti-reliance clause." *Kronenberg*, 872 A.2d at 593. Plaintiff cannot agree in his contract not to rely on specific information and then bring a suit claiming reliance on that information. *See ABRY Partners V, L.P.*, 891 A.2d at 1059.

### C. The Icahn Defendants Had No Duty to Disclose the Margin Loans

As an initial matter, Plaintiff does not allege that the statements Brett Icahn made about the funds available for investment were false. This is because those statements were true: Carl Icahn had in fact placed those funds in Icahn Capital, and they were available, and indeed were used for,

8

investment by Icahn Capital.  Rather, what Plaintiff alleges is that Brett Icahn omitted to disclose that some of those funds were subject to margin.  But the notion that a sophisticated investor like Carl Icahn uses margin in his investing is totally unsurprising, and this was demonstrated when the market had no reaction to its disclosure in an IEP 10-K in February of 2022.  Mot. at 7, 19.

Moreover, the Icahn Defendants did not have a duty to disclose the margin loans.  "[A] duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'"  *Temurian v. Piccolo*, 2019 WL 1763022, at *6 (S.D. Fla. Apr. 22, 2019) (Bloom, J.) (citations omitted).  No such relationship existed here, where the parties were negotiating a contract.  And a knowing concealment or non-disclosure of a material fact "may only support [a claim] for fraud where there is a duty to disclose."  *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000).  In addition, "revealing one fact" about a topic does not require the revelation of all other information regarding that topic.  *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011).  "[I]n an arms-length transaction, [] there is no duty imposed on either party to act for the benefit or protection of the other party[.]"  *Temurian*, 2019 WL 1763022, at *7 (citations omitted).

Brett Icahn did the opposite of promising Plaintiff that he was revealing every fact about the funds available for investment.  Rather, he sent Plaintiff a "quick preliminary" analysis to show Plaintiff an "oversimplified way to look at the range of comp" that was "flawed", *see* Ex. I at 47, and clearly was "not to be taken seriously."  *Temurian*, 2019 WL 1763022, at *5.  Brett Icahn even made it clearer, stating it was "NOT an official offer, and only for discussion purposes", and that "IEP [was] not required to invest in anything."  Ex. I at 47.  It is inconceivable that anyone would

subjectively rely on such statements or conclude they were getting complete information with such caveats, let alone someone in Plaintiff's position.

### D. Plaintiff Fails to Allege a False Statement of Material Fact

As this Court has made clear, "[a] plaintiff may not maintain an action for fraud based on misrepresentations that were in the form of opinions and not statements of existing, material facts." *Temurian*, 2019 WL 1763022, at \*5 (citations omitted); *Carvelli v. Ocwen Financial Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019). In response, Plaintiff claims that Brett Icahn's statements were "concrete, specific, and quantifiable representations about the funds available for investment" that went beyond opinions. Opp. at 36–37. This argument is belied by all of the caveats described above. And these statements cannot be material facts given they are the very "spreadsheets and accounting figures," *id*., that Plaintiff agreed in his contract were not material. Ex. C at § 11(i).

Further, the size (and existence) of the margin loans cannot be a material fact affecting whether Plaintiff decided to become an employee of Icahn Capital given the plain terms of his EA. The EA makes clear that Icahn Capital "shall have no duty or obligation of any kind . . . to make, hold or continue any investment in the Funds and may liquidate the Funds at any time, for any reason or no reason, thereby eliminating any further opportunity for [Plaintiff] to obtain the Final Employee Amount." *Id.* at § 11(x). This provision renders the funds available for investment immaterial to his decision to join or stay at Icahn Capital. Thus, Plaintiff's fraud claims (Counts IV–V) must be dismissed.

### CONCLUSION

For the reasons above, and the reasons in the Icahn Defendants' Motion, the Icahn Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated:  May 8, 2026

Respectfully submitted,

*/s/  Mark A. Levy*                               _
Mark A. Levy
Florida Bar No. 121320
BRINKLEY MORGAN
100 SE Third Avenue, 23rd Floor
Fort Lauderdale, Florida  33394
Tel:  954-522-2200
mark.levy@brinkleymorgan.com

Jonathan R. Streeter (*pro hac vice*)
Nicolle L. Jacoby (*pro hac vice*)
Tanya K. Warnke (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel:  212-698-3500
jonathan.streeter@dechert.com
nicolle.jacoby@dechert.com
tanya.warnke@dechert.com

*Counsel for Defendants Icahn Enterprises L.P.,
Icahn Enterprises G.P. Inc., Icahn Capital LP,
Carl Icahn, and Brett Icahn*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the within document was served on all counsel of record in this case.


Dated: May 8, 2026                          */s/  Mark A. Levy*                          _
                                            Mark A. Levy