# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-25893-BLOOM/Elfenbein

**STEVEN D. MILLER**,

     Plaintiff,

v.

**BAUSCH HEALTH**
**COMPANIES INC.**, *et al*,

     Defendants.

  _____/

## ORDER SETTING DISCOVERY PROCEDURES

**THIS CAUSE** is before the Court following the referral of this action to the undersigned Magistrate Judge for all pre-trial discovery matters. To facilitate the speedy and inexpensive resolution of this action pursuant to Federal Rule of Civil Procedure 1, it is hereby **ORDERED and ADJUDGED** that the following discovery procedures will apply:

### MEET AND CONFER

Before requesting a discovery hearing, the parties must first confer in a good-faith effort to resolve the dispute in compliance with Local Rule 7.1(a)(3). Under this Local Rule, counsel must certify that they made good-faith efforts to confer. An adequate certificate of conference requires at least one personal communication (in person, by videoconference, or by telephone), if not more, between counsel. The Court cautions counsel that sending an email demanding a response or position on the same day is insufficient to satisfy the conferral obligations under this Local Rule. The Court expects all parties to engage in reasonable compromise to facilitate the resolution of discovery disputes. As part of their conferral, the parties should specifically discuss each discovery request and objection at issue before seeking Court intervention. If counsel refuses to

participate in a conversation, then the party seeking the hearing ("the moving party") shall state so and outline the efforts made to confer with opposing counsel in the Notice of Hearing, which is explained in paragraph four below.

## DISCOVERY HEARING PROCEDURES

1.      **Timing:** Parties must timely raise discovery disputes as required by Local Rule 26.1(g)(2).  The Court strictly enforces the Local Rule and interprets the 28-day window as the time during which the parties must make good-faith resolution efforts, subject to the seven-day extension permitted by the Local Rule.  Thus, the moving party must seek relief within the period prescribed in Local Rule 26.1(g)(2) by contacting Magistrate Judge Elfenbein's chambers, as explained in paragraph three below.  The parties should take note that the Court strictly enforces Local Rule 26.1(d), which requires that all discovery, including resolution of discovery disputes, be fully completed prior to the expiration of the discovery cutoff.

2.      **No Discovery Motions:** Except as authorized by the Court, the parties shall not raise any discovery disputes by filing written discovery motions.[1]  The Court will strike any motions filed in contravention of these procedures.

3.      **Scheduling a Discovery Hearing:** If, after conferring, the parties are unable to resolve their discovery disputes without Court intervention, the moving party must send an email to Elfenbein@flsd.uscourts.gov, copying all opposing counsel, with the following information: a brief description of the nature of the dispute, at least three dates **within the next fourteen (14) days** when all counsel are available for **an in-person** hearing on the discovery issue (noting availability on each date as morning, afternoon, or all day), and the amount of time the parties need

---

[1] The restriction on filing discovery motions does not apply to motions to stay discovery or to motions seeking to modify any discovery deadlines.  The parties should file those motions on the docket for the District Judge's consideration.

for the hearing. The parties shall refrain from including any argument or background about the discovery dispute in the email to chambers.

4. **No Virtual Discovery Hearings:** As a default practice, the Court does not allow counsel, parties, or interested non-parties to participate in discovery hearings through remote applications like Zoom. For that reason, all necessary participants must be available to appear at discovery hearings in person. If a necessary participant desires to appear at a discovery hearing using Zoom, the participant must get the Court's permission in advance. The Court will not grant requests to appear by Zoom unless the participant can show good cause for the Court to depart from its default procedure.

5. **Notice of Hearing:** Within one business day of the Court confirming the date and time for the hearing, the moving party shall file a Notice of Hearing that outlines the discovery matters to be heard. For example, "the parties dispute the appropriate timeframe for Request for Production Nos. 1-3." The moving party shall not include any argument in the Notice of Hearing. In addition, the moving party shall include a Certificate of Conference that complies with Local Rule 7.1(a)(3). If more than one party seeks to enforce a discovery obligation during the same hearing, each party shall file its own individual Notice of Hearing. Attached to the Notice of Hearing, the moving party shall provide the Court with the following:

A. **Exhibit A:** A short, proposed order on the issues raised in the Notice of Hearing, setting forth the specific relief requested. The proposed order shall not contain any legal argument or analysis.

B. **Exhibit B:** A copy of all source materials relevant to the discovery dispute. For example, if the dispute involves answers to interrogatories, the moving party shall provide the interrogatories and answers to interrogatories.

3

C.    **Exhibit C:** Any documents either party (moving and non-moving) intends to rely on at the hearing.

D.    **Exhibit D:** A list of citations for any legal authorities either party intends to rely on at the hearing, along with a copy of those authorities.  The parties must **highlight all relevant portions** of their relied-upon legal authorities and must also **provide parentheticals** in the list of citations.  Exhibit D shall not, however, contain any legal argument.

6.    **Modification or Cancellation of Hearing:** If the parties wish to add any discovery issues after they have filed the Notice of Hearing, they must get the Court's permission to do so.  To obtain the Court's permission, the parties must email chambers at Elfenbein@flsd.uscourts.gov with a brief description of the issues they seek to add and the amount of time they estimate those issues will add to the already-scheduled hearing.  As with the original hearing request, the parties must refrain from including any argument or background about the discovery dispute in the email to chambers.

If the parties resolve all the disputed discovery issues before the hearing date, the parties must email chambers as soon as is practicable to notify the Court that the hearing is no longer needed and must file a Notice of Cancellation.  If the parties resolve some, but not all, of the disputed discovery issues before the hearing date, the parties must email chambers as soon as is practicable with a description of the specific discovery issues that no longer require Court action.

7.    **Agreed Orders:** When the parties have stipulated to the entry of an agreed-upon discovery order, such as a standard confidentiality-type of protective order, the parties shall file a joint motion for entry of the stipulated order and attach a copy of the proposed stipulated order as Exhibit A.  Immediately after the parties file the motion, the parties shall email a Word version of the proposed stipulated order to Elfenbein@flsd.uscourts.gov.  The Court does not enter agreed

4

orders extending the due date for discovery responses. Nor does the Court enter orders memorializing discovery agreements between the parties on issues that were not argued to the Court during a hearing.

8. **Sanctions:** The Court may impose sanctions, monetary or any other type, if it determines discovery is being improperly sought or is being withheld in bad faith or without substantial justification. *See* Fed. R. Civ. P. 37.

9. **Encouraging Participation by Less-Experienced Lawyers:** Ordinarily, only one lawyer for each party may argue at the discovery hearing. Nevertheless, the Court has a strong commitment to supporting the development of our next generation of lawyers. The Court encourages parties and senior attorneys to allow less-experienced practitioners the opportunity to argue in court. If a lawyer of five (5) or fewer years of experience will be arguing the matter, a party should advise the Court prior to the beginning of the hearing. In that event, the Court will allow multiple lawyers to argue on behalf of that party.

**GENERAL DISCOVERY PRINCIPLES**

The Court strictly enforces the guidelines on discovery objections set forth below, together with the provisions of the Federal Rules of Civil Procedure addressing discovery matters (Rules 26 through 37), and Local Rule 26.1:

**Duty to Comply with Discovery Obligations while Motion to Stay is Pending:** If a Motion to Stay Discovery is filed, Parties must continue to comply with their discovery obligations unless and until the Motion to Stay Discovery is granted. Parties may not ignore discovery requests while a Motion to Stay is pending. *See, e.g.*, *Mad Room, LLC v. City of Miami*, No. 21-23485-CV, 2021 WL 10395434, at *1 (S.D. Fla. Dec. 14, 2021) ("[Plaintiffs'] Motion to Stay Discovery did not toll the discovery deadlines. Defendant was required to respond to Plaintiffs' discovery requests in a

timely fashion."); *Monks v. Diamond Resorts Int'l, Inc.*, No. 17-14307-CIV, 2018 WL 4208330, at \*2–3 (S.D. Fla. May 11, 2018) (noting that a party cannot "engage[] in unilateral 'self-help' by filing [a] motion for a protective order and then refusing to respond to any discovery while [the] motion is pending and the clock runs out" because discovery "may not be stayed absent an order from the District Court"); *Romacorp, Inc. v. Prescient, Inc.*, No. 10-22872-CIV, 2011 WL 2312563, at \*2 (S.D. Fla. June 8, 2011) (explaining that a party may not "stop complying with its discovery obligations when it files a motion to stay" or "simply ignore its discovery obligations while a motion to stay is pending").

**Relevance and Proportionality:** Rule 26(b)(1), as amended on December 1, 2015, defines the scope of permissible discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). An objection based on relevance or proportionality must include a specific explanation describing why the requested discovery is not relevant and/or why the requested discovery is disproportionate in light of the factors listed in Rule 26(b)(1).

**"Vague, Overly Broad, and Unduly Burdensome":** Parties shall not make conclusory, boilerplate objections. Blanket, unsupported objections that a discovery request is "vague, overly broad, and unduly burdensome" are, by themselves, meaningless, and the Court will disregard them. A party objecting on these bases must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ. P. 34(b)(2)(B)

6

("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."). If a party believes that a request is vague, the party shall attempt to obtain clarification prior to objecting on this ground. Sworn testimony or evidence may be necessary to show that a particular request is, in fact, burdensome. If the Court will hear argument on this objection during the hearing, counsel must be prepared to address why the production would be burdensome with specificity.

**Objections Based on Scope:** If there is an objection based on an overly broad scope, such as timeframe or geographic location, discovery should be provided as to those matters within the scope that are not disputed. For example, if discovery is sought nationwide for a ten-year period and the responding party objects on the grounds that appropriate discovery encompasses only activities in Florida over a five-year period, the responding party shall provide responsive discovery falling within the five-year period of activity in Florida.

**Formulaic Objections Followed by an Answer:** Parties should avoid reciting a formulaic or "General objections" followed by an answer to the request. It has become common practice for a party to object and then state that "notwithstanding the above," the party will respond to the discovery request subject to or without waiving such objection. Such an objection and answer preserves nothing and constitutes only a waste of effort and resources of both the parties and the Court. Further, such a practice leaves the requesting party uncertain as to whether the question has been fully answered or only a portion of it has been answered. Rule 34(b)(2)(C) specifically requires an objection to state whether any responsive materials are being withheld. As a result, counsel shall include in the answer a clear statement that all responsive documents or information

identified have, in fact, been produced or provided or otherwise describe the category of documents or information that has been withheld based on the objection.

**Objections Based on Privilege:** Generalized objections asserting attorney-client privilege or work-product doctrine do not comply with Local Rule 26.1(e)(2)(B), which requires that objections based upon privilege identify the specific nature of the privilege being asserted, the nature and general subject matter of the communication at issue, the sender and receiver of the communication, and their relationship to each other, among other requirements. Parties are instructed to review this Local Rule carefully and refrain from objecting in the form of: "Objection. This information is protected by attorney-client and/or work-product privilege." If a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived. Further, the production of nonprivileged materials should not be delayed while a party is preparing a privilege log. Note that the party with the burden of persuasion on a privilege claim has the obligation to present to the Court sworn evidence, if necessary, to satisfy that burden. To that end, if a discovery dispute involves a claim of privilege, **any necessary sworn evidence supporting the claim of privilege shall be filed with the Notice of Hearing as Exhibit C.** The Court may deem the failure to timely present such sworn evidence as a waiver of the privilege, absent a showing of good cause.

**Objections to Scope of Rule 30(b)(6) Notices for Depositions:** Corporations are not entitled to review of anticipatory relevance objections prior to the taking of a corporate representative's deposition. Objections to the scope of a deposition notice shall be timely served (not filed) in advance of the deposition. *See King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995); *New World Network Ltd. v. M/V Norwegian Sea*, No. 05-22916-CV, 2007 WL 1068124, at

CASE NO. 25-CV-25893-BLOOM/Elfenbein

*2-3 (S.D. Fla. Apr. 6, 2007).  Accordingly, the Court will adjudicate any objections to the scope of a Rule 30(b)(6) deposition only after the completion of the deposition.

**Sequencing and Timing of Discovery:** The parties are reminded to comply with Rule 26(d)(3) that grants all parties the right to sequence their own discovery, which means that one party's discovery does not require any other party to delay its discovery.  Relatedly, the parties shall not wait until the end of the discovery period to begin taking any depositions.  The failure to complete depositions before the discovery cutoff does not constitute good cause to extend the discovery period.

**DONE and ORDERED** in Chambers in Miami, Florida on January 30, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

9

249 F.R.D. 399
United States District Court,
S.D. Florida,
Miami Division.

Jorge GUZMAN, Plaintiff,

v.

IRMADAN, INC. d/b/a Dansco
Enterprises, et al., Defendants.

No. 07-23289-CIV.
|
April 10, 2008.

**Synopsis**
**Background:** Employee brought suit against employer alleging violation of the overtime provisions of the Fair Labor Standards Act (FLSA).

**Holdings:** The District Court, Stephen T. Brown, United States Magistrate Judge, held that:

[1] nonspecific, boilerplate objections do not comply with local rule;

[2] general objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are improper; and

[3] generalized objections asserting "confidentiality," attorney-client privilege or work product doctrine do not comply with local rule.

So ordered.

West Headnotes (5)

**[1]** **Federal Civil Procedure** 🔑 Objections and grounds for refusal
**Federal Civil Procedure** 🔑 Objections and Grounds for Refusal

Nonspecific, boilerplate objections do not comply with local rule requiring that objection to interrogatory or document request state all grounds with specificity. U.S.Dist.Ct.Rules S.D.Fla., Local Rule 26.1(G)(3)(a) .

26 Cases that cite this headnote

**[2]** **Federal Civil Procedure** 🔑 Grounds and Objections

Objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are without merit; a party objecting on such bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. Fed.Rules Civ.Proc.Rule 33(b)(4), 28 U.S.C.A.; U.S.Dist.Ct.Rules S.D.Fla., Local Rule 26.1(G)(3)(a) .

45 Cases that cite this headnote

**[3]** **Federal Civil Procedure** 🔑 Grounds and Objections

An objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why the request lacks relevance, and why the information sought will not reasonably lead to admissible evidence. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.; U.S.Dist.Ct.Rules S.D.Fla., Local Rule 26.1(G)(3)(a) .

6 Cases that cite this headnote

**[4]** **Federal Civil Procedure** 🔑 Grounds and Objections

Formulaic objection to a discovery request followed by an answer to the request stating that "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection, is improper; such objection and answer preserves nothing, and constitutes only a waste of effort and the resources of both the parties and the court, while leaving the requesting party uncertain as to whether the question has actually been fully answered, or only a portion of it has been answered. U.S.Dist.Ct.Rules S.D.Fla., Local Rule 26.1(G)(3)(a).

**[5]** **Federal Civil Procedure** ☞ Objections and Grounds for Refusal

**Privileged Communications and Confidentiality** ☞ Objections; claim of privilege

Generalized objections asserting "confidentiality," attorney-client privilege or work product doctrine do not comply with local rule which requires that objections based upon privilege identify the specific nature of the privilege being asserted, as well as identifying such things as the nature and subject matter of the communication at issue, the sender and receiver of the communication and their relationship to each other, among others. U.S.Dist.Ct.Rules S.D.Fla., Local Rule 26.1(G)(3)(b).

12 Cases that cite this headnote

**Attorneys and Law Firms**

**\*400** Jamie H. Zidell, Daniel T. Feld and K. David Kelly, J.H. Zidell, P.A., Miami Beach, FL, for Plaintiff.

Chris Kleppin of Glasser, Boreth & Kleppin, Plantation, FL, for Defendants.

---

### *ORDER ON DISCOVERY*

STEPHEN T. BROWN, United States Magistrate Judge.

**THIS MATTER** came before the Court *sua sponte.* In order to efficiently resolve this matter, the Parties are instructed as follows.

The following rules apply to discovery objections before this Court:

### I. Vague, Overly Broad and Unduly Burdensome:

**[1] [2]** Parties shall not make nonspecific, boilerplate objections. Such objections do not comply with Local Rule 26.1 G 3(a) which provides "Where an objection is made to any interrogatory or sub-part thereof or to

27 Cases that cite this headnote

any document request under Fed.R.Civ.P. 34, the objection shall state with specificity all grounds." Objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit by this Court. A party objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. *See* Fed.R.Civ.P. 33(b)(4); *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir.1982)("the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive **\*401** and irrelevant' is not adequate to voice a successful objection to an interrogatory.").

### II. Irrelevant and Not Reasonably Calculated to Lead to Admissible Evidence:

**[3]** As with the previous objection, an objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why the request lacks relevance, and why the information sought will not reasonably lead to admissible evidence. Parties are reminded that the Federal Rules allow for broad discovery, which does not need to be admissible at trial. *See* Fed.R.Civ.P. 26(b)(1); *see Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 345, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *see also* Local Rule 26.1 G 3(a).

### III. Formula Objections Followed by an Answer:

**[4]** Parties shall not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons, and then state that "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such objection and answer preserves nothing, and constitutes only a waste of effort and the resources of both the parties and the court. Further, such practice leaves the requesting party uncertain as to whether the question has actually been fully answered, or only a portion of it has been answered. Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18; *see also* Local Rule 26.1 G 3(a).

### IV. Objections Based upon Privilege:

**[5]** Generalized objections asserting "confidentiality," attorney-client privilege or work product doctrine also do not comply with local rules. Local Rule 26.1 G 3(b) requires that objections based upon privilege identify the specific nature of the privilege being asserted, as well as identifying such things

as the nature and subject matter of the communication at issue, the sender and receiver of the communication and their relationship to each other, among others. Parties are instructed to review Local Rule 26.1 G 3(b) carefully, and refrain from objections in the form of: "Objection. This information is protected by attorney/client and/or work product privilege." If such an objection is made without a *proper* privilege log attached, it shall be deemed a nullity.

**V. Pre-filing Conferences**

*COUNSEL SHALL COMPLY WITH LOCAL RULE 7.1.A.3 PRIOR TO FILING ANY DISCOVERY MOTION.*

**All Citations**

249 F.R.D. 399

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Henderson v. Holiday CVS, L.L.C., 269 F.R.D. 682 (2010)**

🚩 KeyCite Yellow Flag
Distinguished by S.E.C. v. Merkin, S.D.Fla., June 29, 2012

269 F.R.D. 682
United States District Court, S.D. Florida.

Kristy HENDERSON, individually and on behalf of persons similarly situated, Plaintiff,

v.

HOLIDAY CVS, L.L.C., a Florida limited liability company, et al., Defendants.

No. 09–80909–CIV
|
Aug. 9, 2010.

**Synopsis**

**Background:** Former employee filed class action against employer alleging violations of Fair Labor Standards Act's (FLSA) overtime provision. Employee moved to compel better responses to her request for production.

**Holdings:** The District Court, Linnea R. Johnson, United States Magistrate Judge, held that:

[1] employer had to conduct independent, good faith review of each document before asserting privilege;

[2] documents relating to guidelines used by employer to determine when assistant store manager position was added were discoverable; and

[3] documents relating to employer's training program for assistant store managers were discoverable.

Motion granted in part and denied in part.

West Headnotes (23)

**[1]** **Federal Civil Procedure** 🗝 Scope

Information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Fed.Rules Civ.Proc.Rule 26(b), 28 U.S.C.A.

50 Cases that cite this headnote

**[2]** **Federal Civil Procedure** 🗝 Proceedings to obtain

Party resisting discovery has heavy burden of showing why requested discovery should not be permitted. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

61 Cases that cite this headnote

**[3]** **Federal Civil Procedure** 🗝 Grounds and Objections

Objection to requested discovery must show specifically how discovery request is overly broad, burdensome, or oppressive, by submitting evidence or offering evidence that reveals nature of burden.

63 Cases that cite this headnote

**[4]** **Privileged Communications and Confidentiality** 🗝 Privilege logs

Defendant did not waive privilege as result of its failure to file timely privilege log, where defendant, with plaintiff's tacit approval, submitted untimely privilege log.

3 Cases that cite this headnote
More cases on this issue

**[5]** **Federal Civil Procedure** 🗝 Work Product Privilege; Trial Preparation Materials

**Privileged Communications and Confidentiality** 🗝 Objections; claim of privilege

**Privileged Communications and Confidentiality** 🗝 Self critical analysis

Before asserting that documents sought in discovery in former employee's action alleging FLSA violations were protected by attorney-client privilege, work product doctrine, and self-critical analysis privilege, employer was required to conduct independent, good faith review of

each document, where it was not apparent that asserted privileges could possibly apply to protect documents. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

1 Case that cites this headnote
More cases on this issue

**[6]** **Privileged Communications and Confidentiality** 🔑 Attorney-Client Privilege

Material involving confidential communications between attorney and client that fall within purview of attorney-client privilege are rendered immune from discovery.

1 Case that cites this headnote

**[7]** **Privileged Communications and Confidentiality** 🔑 Elements in general; definition

To successfully invoke attorney-client privilege, claimant must establish that: (1) asserted holder of privilege is or sought to become client; (2) person to whom communication was made is member of bar of court, or his subordinate and in connection with communication is acting as lawyer; (3) communication relates to fact of which attorney was informed by his client without presence of strangers for purpose of securing primarily either opinion on law of legal services or assistance in some legal proceeding, and not for purpose of committing crime or tort; and (4) privilege has been claimed and not waived by client.

3 Cases that cite this headnote

**[8]** **Attorneys and Legal Services** 🔑 Performance or breach

Attorney-client privilege ordinarily attaches only to content of communications, not to matters concerning identity or procedure.

1 Case that cites this headnote

**[9]** **Privileged Communications and Confidentiality** 🔑 Waiver of privilege

Voluntary disclosure of facts in question constitutes waiver of attorney-client privilege.

1 Case that cites this headnote

**[10]** **Privileged Communications and Confidentiality** 🔑 Presumptions and burden of proof

Burden is on party invoking attorney-client privilege to establish existence of attorney-client relationship and confidential nature of information sought.

3 Cases that cite this headnote
More cases on this issue

**[11]** **Privileged Communications and Confidentiality** 🔑 Presumptions and burden of proof

When asserting attorney-client privilege, it is incumbent upon proponent to specifically and factually support his claim.

2 Cases that cite this headnote

**[12]** **Federal Civil Procedure** 🔑 Work Product Privilege; Trial Preparation Materials

Work product doctrine applies only to documents party has assembled and not to facts learned from those documents. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

7 Cases that cite this headnote

**[13]** **Federal Civil Procedure** 🔑 Work Product Privilege; Trial Preparation Materials

Work product doctrine cannot be used as shield against discovery of facts that have been learned, identity of persons who learned such facts, or existence or non-existence of documents, even though documents themselves may not be subject to discovery. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

4 Cases that cite this headnote

**[14]     Federal Civil Procedure** 🔑 Work Product
Privilege;  Trial Preparation Materials

Work product protection is not afforded to
documents prepared in ordinary course of
business. Fed.Rules Civ.Proc.Rule 26(b)(3), 28
U.S.C.A.

1 Case that cites this headnote

**[15]     Federal Civil Procedure** 🔑 Work Product
Privilege;  Trial Preparation Materials

To obtain work product protection, documents
must have been prepared in anticipation of
some likely litigation or as integral preparation
for trial. Fed.Rules Civ.Proc.Rule 26(b)(3), 28
U.S.C.A.

1 Case that cites this headnote

**[16]     Federal Civil Procedure** 🔑 Work Product
Privilege;  Trial Preparation Materials

Party invoking work product doctrine must
specify those documents affected and state
grounds justifying their protection. Fed.Rules
Civ.Proc.Rule 26(b)(5), 28 U.S.C.A.

2 Cases that cite this headnote

**[17]     Federal Civil Procedure** 🔑 Work Product
Privilege;  Trial Preparation Materials

Factual work product is only entitled to qualified
immunity, and party may obtain such documents
in discovery, but only upon showing of both
substantial need and undue hardship. Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

2 Cases that cite this headnote

**[18]     Federal Civil Procedure** 🔑 Work Product
Privilege;  Trial Preparation Materials

Opinion work product reflecting attorney's
mental impressions, conclusions, opinions, or
legal theories enjoys nearly absolute immunity
and can be discovered only in very rare
and extraordinary circumstances. Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[19]     Federal Civil Procedure** 🔑 Employment,
records of

Documents relating to guidelines used by
employer to determine when assistant store
manager position was added in state were
relevant to former assistant store manager's claim
that position was improperly exempted from
FLSA's overtime protections, and thus were
discoverable in class action against employer
alleging FLSA violations, where class was
limited to one state, and request was limited to
five year period prior to filing of complaint. Fair
Labor Standards Act of 1938, § 1 et seq., 29
U.S.C.A. § 201 et seq.

More cases on this issue

**[20]     Federal Civil Procedure** 🔑 Employment,
records of

Documents relating to employer's evaluations
and reviews of its assistant store managers
were relevant to former assistant store manager's
claim that position was improperly exempted
from FLSA's overtime protections, and thus
were discoverable in class action alleging FLSA
violations, where class and discovery sought
were limited to employer's stores within state,
and request was limited to five year period prior
to filing of complaint. Fair Labor Standards Act
of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

2 Cases that cite this headnote
More cases on this issue

**[21]     Federal Civil Procedure** 🔑 Employment,
records of

Documents relating to persons holding position
of "shift manager," "shift supervisor," or "shift
leader" with employer were relevant to former
assistant store manager's claim that her position
was improperly exempted from FLSA's overtime
protections, and thus were discoverable in
class action against employer alleging FLSA
violations, where documents were needed in
order to distinguish between work performed by
assistant store managers and other employees,

and request was limited to one state and to five year period prior to filing of complaint. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

More cases on this issue

**[22]    Federal Civil Procedure** 🔑 Employment, records of

Documents relating to employer's training program for assistant store managers were relevant to former assistant store manager's claim that position was improperly exempted from FLSA's overtime protections, and thus documents relating to past versions of program for period of five years prior to filing of complaint were discoverable in class action against employer alleging FLSA violations. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

3 Cases that cite this headnote
More cases on this issue

**[23]    Federal Civil Procedure** 🔑 Employment, records of

Documents relating to salary or pay guidelines for assistant store manager position, screening policies or minimum standards for hiring assistant store managers, and job postings or advertisements for position of assistant store manager were relevant to former assistant store manager's claim that position was improperly exempted from FLSA's overtime protections, and thus were discoverable in class action against employer alleging FLSA violations, where class was limited to one state, and request was limited to five year period prior to filing of complaint. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

More cases on this issue

**Attorneys and Law Firms**

**\*685**  Gregg I. Shavitz, Hal B. Anderson, Shavitz Law Group, Boca Raton, FL, for Plaintiff.

Christopher Patrick Hammon, David M. Demaio, Ogletree Deakins Nash Smoak & Stewart PC, Miami, FL, James J. Swartz, Jr., Nancy E. Rafuse, Ashe Rafuse & Hill LLP, Atlanta, GA, for Defendants.

*ORDER*

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel Better Responses to Plaintiff's' Fourth Request for Production (D.E.# 59). For the following reasons said Motion is granted in part and denied in part in accordance with the terms hereof.

This is a class-action lawsuit brought by Plaintiff, Kristy Henderson, on behalf of herself and others similarly situated, against Defendants, Holiday CVS L.L.C., CVS Caremark Corporation, and CVS Pharmacy, Inc., and their respective divisions, subsidiaries, and affiliates, under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiff was an employee of Defendants who worked as a salaried assistant manager for approximately eight months. Plaintiff alleges that she was mis-classified by Defendants as being exempt from the overtime protections of the FLSA because her primary duties as an assistant manager were of a non-exempt nature. Accordingly, Plaintiff alleges that Defendants intentionally and willfully failed to properly pay Plaintiff and similarly situated persons throughout the United States for all overtime hours worked in excess of forty (40) hours within a workweek, in violation of the FLSA.

 **[1]**    At issue is the validity of certain objections raised by Defendant, Holiday CVS, to Plaintiff's August 5, 2009 Production Requests. Rule 34 of the Federal Rules of Civil Procedure allows any party to serve on any other party requests to produce, inspect and copy, test or sample any documents or tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure. The scope of discovery under Rule 26(b) is broad: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; see also Hickman v. Taylor,* 329 U.S. 495, 507–508, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Farnsworth v. Procter and Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985)

(the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"); *Canal Authority v. Froehlke,* 81 F.R.D. 609, 611 (M.D.Fla.1979). Thus, under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." *Id.* at 352, 98 S.Ct. 2380. In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States,* 502 F.2d 506 (5th Cir.1974).

While the scope of discovery is broad, it is not without limits. *Washington v. Brown & Williamson Tobacco,* 959 F.2d 1566, 1570 (11th Cir.1992). Indeed the 2000 Amendment to Rule 26 has effectively limited the scope of discoverable information to those matters which are relevant to a claim or defense in the lawsuit. **\*686** *Dellacasa, LLC v. John Moriarty & Ass. of Florida, Inc.,* 2007 WL 4117261 at \*3 (S.D.Fla.2007). Courts have long held that "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.' " *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union,* 103 F.3d 1007, 1012–13 (C.A.D.C.1997)(quoting *Broadway and Ninety–Sixth Street Realty Co. v. Loew's Inc.,* 21 F.R.D. 347, 352 (S.D.N.Y.1958)); *Donahay v. Palm Beach Tours & Transp., Inc.,* 2007 WL 1119206 at \*1 (S.D.Fla.2007).

 **[2]**  **[3]**  Under Fed.R.Civ.P. 26(b)(1) a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit. *Id.* The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted. *Rossbach v. Rundle,* 128 F.Supp.2d 1348, 1354 (S.D.Fla.2000) ( "The onus is on the party resisting discovery to demonstrate specifically how the objected-to information is unnecessary, unreasonable or otherwise unduly burdensome."); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 2001 WL 34079319 (S.D.Fla.2001) ("the burden of showing that the requested information is not relevant to

the issues in the case is on the party resisting discovery") (citation omitted); *Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D.Fla.2000) ("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information"). To meet this burden, the party resisting discovery must demonstrate specifically how the objected-to request is unreasonable or otherwise unduly burdensome. *See* Fed.R.Civ.P. 33(b)(4); *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir.1985); *Rossbach,* 128 F.Supp.2d at 1353. Thus, to even merit consideration, "an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D.Ala.1998). Once the resisting party meets its burden, the burden shifts to the moving party to show the information is relevant and necessary. *Gober,* 197 F.R.D. at 521; *see also Hunter's Ridge Golf Co. Inc. v. Georgia–Pacific Corp.,* 233 F.R.D. 678, 680 (M.D.Fla.2006).

 **[4]**  As a preliminary matter and before undertaking an analysis of the particular requests and responses/objections thereto, the Court shall address Defendant's privilege objections. First, the Court agrees with Defendants that finding a waiver under the circumstances presented, where Defendant with the tacit approval of Plaintiffs, submitted an untimely privilege log, is an extreme sanction, too harsh under the circumstances. *Tyne v. Time Warner Entertainment Co., L.P.,* 212 F.R.D. 596, 597 (M.D.Fla.2002)(declining to find waiver of privilege where Defendants served an incomplete privilege log eight months late and three days before the close of discovery); *Knights Armament Co. v. Optical Sys. Technology, Inc.,* 2009 WL 331608, \*6–7 (M.D.Fla. Feb.10, 2009)(refusing to find assertions of privileges waived where defendant delayed six months before producing a privilege log, and then produced an incomplete log).

 **[5]**  Notwithstanding the foregoing, the Court hereby denies Defendant's objections on the basis of the attorney-client privilege, the work product doctrine and the self-critical analysis privilege, without prejudice and with leave to re-assert such privileges, if appropriate, after defense counsel's thorough and comprehensive review of the documents claimed protected. Based on the terminology used throughout Defendants' Response brief regarding a "potential" privilege, and the documents "may" be subject to a privilege, the Court has grave doubts whether CVS has conducted an independent, good faith review of the documents it claims are subject

to protection. Adding to these doubts is the fact that CVS has failed to adequately explain, and frankly this Court is unable to imagine, how most if not all of the **\*687** asserted privileges could possibly apply to protect such documents as guidelines CVS utilizes in determining whether and when to add assistant store manager positions and evaluations of those individuals employed as assistant store managers.

In this regard, counsel for Defendants are ordered to independently review each document claimed subject to a privilege against the applicable law to determine whether, in fact, a good faith claim of privilege may be asserted. Defense counsel shall have twenty (20) days from the date hereof within which to conduct such review and re-submit to Plaintiff any privilege log in good faith deemed applicable. Any documents deemed by defense counsel after such review to be not covered by any privilege, shall be produced to Plaintiff during that same twenty (20) day time period.

**[6]** **[7]** In conducting such review, defense counsel should be instructed by the following principles. The attorney-client privilege protects confidential communications between a lawyer and his client for the purpose of obtaining legal advice. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *U.S. v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991); *In re Grand Jury Subpoena (Bierman),* 788 F.2d 1511, 1512 (11th Cir.1986). Thus, material involving confidential communications between the attorney and the client which fall within the purview of the privilege are rendered immune from discovery. *Fisher,* 425 U.S. at 403, 96 S.Ct. 1569. To successfully invoke the privilege, the claimant must establish the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law of (ii) legal

services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Noriega,* 917 F.2d 1543, 1550 (11th Cir.1990) (quoting *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978) quoting *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 670 (5th Cir.1975)).

**[8]** **[9]** **[10]** Ordinarily, the attorney-client privilege attaches only to the content of communications, not to matters concerning identity or procedure. *In re Grand Jury Proceedings (Twist),* 689 F.2d 1351, 1352 (11th Cir.1982). Further, voluntary disclosure of the facts in question constitutes a waiver of the privilege. *United States v. Woodall,* 438 F.2d 1317, 1324 (5th Cir.1970), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971). Finally, the burden is on the party invoking the privilege to establish the existence of an attorney-client relationship and the confidential nature of the information sought. *In re Grand Jury Subpoena (Bierman),* 788 F.2d at 1511–1512; *In re Grand Jury Proceedings,* 73 F.R.D. 647, 651 (N.D.Fla.1977).

**[11]** Thus, when asserting the privilege, it is incumbent upon the proponent to specifically and factually support his claim. *In re Grand Jury Subpoena (Lipnak),* 831 F.2d 225, 227 (11th Cir.1987). A blanket claim of privilege is improper. "The privilege must be specifically asserted with respect to particular documents." *Id.* at 227 (quoting *United States v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984)). *Accord Martinez v. Provident Life and Accident Ins. Co.,* 174 F.R.D. 502 (S.D.Fla.1997)(privilege log should be provided along with the objections); *Hoglund v. Limbach Constructors, Inc.,* 1998 WL 307457 (S.D.Fla. March 30, 1998)(same). *See also* Fed.R.Civ.P. 26(b)(5); S.D. Fla. L.R. 26(1)(G)(6).

**[12]** **[13]** The work product doctrine protects from disclosure documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's **\*688** attorney acting for his client. Fed.R.Civ.P. 26(b)(3) [1]; *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979). The doctrine applies only to documents a party has assembled and not to facts learned from those documents. *Hickman,* 329 U.S. 495, 67 S.Ct. 385; *United*

States v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 697 (S.D.Fla.1990)(citing in re Alexander Grant & Co. Litigation, 110 F.R.D. 545, 548 (S.D.Fla.1986)). Accord Smith v. Insurance Co. of No. America, 30 F.R.D. 534, 538 (M.D.Tenn.1962); Cedolia v. C.S. Hill Saw Mills, Inc., 41 F.R.D. 524, 527 (M.D.N.C.1967). Thus, the doctrine cannot be used as a shield against discovery of the facts that have been learned, the identity of the persons who learned such facts, or the existence or non-existence of documents, even though the documents themselves may not be subject to discovery. Pepper's Steel, 132 F.R.D. at 697; Cedolia, 41 F.R.D. at 527; Smith, 30 F.R.D. at 538.

[14] [15] [16] In accordance with the doctrine's purpose—to safeguard the fruits of an attorney's trial preparation materials from discovery by the opposing party—protection is not afforded to documents prepared in the ordinary course of business. See FDIC v. Cherry, Bekaert & Holland, 131 F.R.D. 596, 600, 605 (M.D.Fla.1990). Rather to obtain work product protection, the documents must have been prepared in anticipation of some likely litigation or as integral preparation for trial. Kent Corp. v. NLRB, 530 F.2d 612 (5th Cir.1976), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). In re Grand Jury Proceedings, 73 F.R.D. 647, 652 (M.D.Fla.1977). As with the attorney-client privilege, the party invoking the work product doctrine must specify those documents affected and state the grounds justifying their protection. Fed.R.Civ.P. 26(b)(5); S.D. Fla. L.R. 26(1)(G)(6); Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 201–202 (M.D.Fla.1990); Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir.1984); Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F.Supp. 1429, 1439 (D.Del.1989).

[17] [18] Once work product protection attaches, the doctrine is divided into two categories enjoying different degrees of protection. First is factual work product, to which is only applied a qualified immunity. A party may obtain such documents, but only upon a showing of both substantial need and undue hardship. Castle v. Sangamo Weston, Inc., 744 F.2d 1464, 1467 (11th Cir.1984). Second is opinion work product reflecting the mental impressions, conclusions, opinions, or legal theories of an attorney. "Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir.1994). See Upjohn Co. v. United States, 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). [2]

*Production Request No. 1*

[19] Request No. 1 seeks all documents that relate to the guidelines used to determine when an Assistant Store Manager position is added. Defendant objects, arguing the request as framed is overly broad and not relevant to the action to the extent it seeks information and documents outside the FLSA time period and unrelated to the work of the opt-in Plaintiffs Chaudhry and Henderson's work as assistant store managers. Defendants further object on the basis the request is vague and ambiguous insofar as it requests "budget models" "standards" and "guidelines." Except as hereinafter stated, Defendant's objections are rejected and Plaintiffs' Motion as it relates to this request is granted.

Defendant's objections on the basis of relevancy/overbreadth are to some extent well-taken. Defendant contends the subject request is overbroad in that it does not contain a reasonable temporal or geographic limitation given that it requests information outside the FLSA time period and is not limited **\*689** to the stores at which opt-in plaintiffs' Chaudhry and Henderson work. In some respects the Court agrees. Since the filing of the Motion the District Court ruled on Plaintiff's Motion Authorizing Notice to Potential Class Members (D.E.# 104). In that Order the District Court has defined the class as "all misclassified, salaried assistant manager employees of CVS, who worked in the capacity of an assistant manager, however variously titled, at the location of every division, subsidiary, or affiliate of CVS throughout Florida, in excess of forty (40) hours per workweek in one or more workweeks within the previous three years ..." Id. With Florida now having been established as the appropriate geographical scope, the Court agrees with Plaintiffs that discovery should not be limited to the stores in which the named Plaintiffs worked, as Defendants wish, but should instead be statewide. To the extent Plaintiff seeks nationwide discovery such request is denied. The Court agrees with Defendants that Plaintiffs have not shown the existence of any particular facts or circumstances which would permit Plaintiff to obtain nationwide discovery in this case when she does not seek nationwide certification. The Court recognizes there are exceptions to this general rule, see, e.g., Planner v. Bennett Auto Supply, Inc., 2006 U.S. Dist. Lexis 96952 (S.D.Fla.2006), there simply has not been any evidence presented here which would justify such overarching discovery.

Temporally the scope of discovery shall be five (5) years prior to the institution of these proceedings. Plaintiffs' contention that Because the requests seek to discover facts relevant to Defendant's affirmative defense of good faith, "*any* responsive documents upon which Defendant is relying in this case are discoverable, regardless of the date of the documents or location from which such documents originate" is rejected as unreasonable. *See Long v. Landvest Corp.,* 2006 WL 897612, *7–8 (D.Kan. March 31, 2006)(limiting temporal scope in FLSA action to the three-year statute of limitations). Meanwhile, the Court believes that a time period of five (5) years prior to the case being filed is the most reasonable time period under the facts and circumstances presented in this case.

Defendant's objection on the basis of vagueness/ambiguity is denied. The terms "budget models" "standards" and "guidelines" are clear and easily ascertainable. To the extent Defendant is uncertain what is requested by these terms, Defendant shall do its best to supply reasonable definitions and produce documents it believes would be responsive to such newly redefined terms.

### *Production Request No. 2*

[20]   Request No. 2 seeks all documents relating to the evaluations and reviews of those persons with the position of Assistant Store Manager. Defendant's objections to this request are similar to its objections to the last request and fare just as poorly. Defendant argues the request as framed is overly broad and not relevant to this action to the extent it seeks information and documents outside the FLSA time period and from stores other than where Henderson and Chaudhry worked. Defendant also argues the request is vague and ambiguous insofar as it requests "documents relating" to "procedures or standards." Except as hereinafter stated, Defendant's objections are rejected and Plaintiffs' Motion as it relates to this request is granted.

Since the filing of the instant Motion, the District Court has ruled on Plaintiff's Motion Authorizing Notice to Potential Class Members (D.E.# 104). In that Order the District Court has defined the class as "all misclassified, salaried assistant manager employees of CVS, who worked in the capacity of an assistant manager, however variously titled, at the location of every division, subsidiary, or affiliate of CVS throughout Florida, in excess of forty (40) hours per workweek in one or more workweeks within the previous

three years ..." With Florida now having been established as the appropriate geographical scope, the Court agrees with Plaintiffs that discovery should not be limited to the stores in which the named Plaintiffs worked, as Defendants wish, but should instead be statewide. To the extent Plaintiff seeks nationwide discovery such request is denied. The Court agrees with Defendants that Plaintiffs have not shown the existence of any particular facts or circumstances which would permit **\*690** Plaintiff to obtain nationwide discovery in this case when she does not seek nationwide certification. The Court recognizes there are exceptions to this general rule, *see, e.g., Planner v. Bennett Auto Supply, Inc.,* 2006 U.S. Dist. Lexis 96952 (S.D.Fla.2006), there simply has not been any evidence presented here which would justify such overarching discovery.

Temporally the scope of discovery shall be five (5) years prior to the institution of these proceedings. Plaintiffs' contention that Because the requests seek to discover facts relevant to Defendant's affirmative defense of good faith, "*any* responsive documents upon which Defendant is relying in this case are discoverable, regardless of the date of the documents or location from which such documents originate" is rejected as unreasonable. *See Long v. Landvest Corp.,* 2006 WL 897612, *7–8 (D.Kan. March 31, 2006)(limiting temporal scope in FLSA action to the three-year statute of limitations). Meanwhile, the Court believes that a time period of five (5) years prior to the case being filed is the most reasonable time period under the facts and circumstances presented in this case.

The Court rejects Defendant's objections on the basis of vagueness/ambiguity. There is nothing vague or ambiguous about the terms "documents relating to" and "procedures or standards." As for the client confidences Defendant is concerned about disclosing, same shall be covered under the Confidentiality Agreement currently in place. In accordance with the foregoing, Plaintiffs' Motion as it relates to this request is granted. Defendant shall have fourteen (14) days from the date hereof in which to produce the discovery subject to this Order.

### *Production Request Nos. 3, 6, 9, 17 and 19*

Request Nos. 3, 6, 9, 17 and 19 are similar to one another and essentially seek all documents related to persons holding the position of "shift manager," "shift supervisor," or "shift leader." Defendant objects arguing the requests are overly

broad, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous. Further, Defendant asserts that the scope of the request should be limited geographically and temporally as to the stores where Plaintiff and Opt–In Plaintiff worked and to a three (3) year period.

 **[21]**     For the reasons stated earlier, the Court finds the information requested by these requests directly relevant to these proceedings and, albeit with limitations as hereinafter described, discoverable. Once again the Court is hard-pressed to see in what possible way the requests are vague or ambiguous. Documents related to persons holding the position of "shift manager," "shift supervisor," or "shift leader" should be easily ascertainable from the plain meaning of the words supplied. As for relevancy, in order for Plaintiffs to distinguish between the work performed by assistant store managers and other employees, Plaintiffs will naturally require discovery regarding positions other than assistant store managers.

Finally, in accordance with the Court's earlier pronouncements, the geographic scope for all requests shall be limited to stores within the state of Florida. Furthermore, the temporal scope, as stated earlier, shall be limited to five (5) years prior to the institution of these proceedings. The parties have fourteen (14) days from the date hereof within which to produce the discovery subject to this Order.

### Production Request Nos. 3, 6, 9, 17 and 19

Request Nos. 3, 6, 9, 17 and 19 are similar to one another and essentially seek all documents related to persons holding the position of "shift manager," "shift supervisor," or "shift leader." Defendant objects arguing the requests are overly broad, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous. Further, Defendant asserts that the scope of the request should be limited geographically and temporally as to the stores where Plaintiff and Opt–In Plaintiff worked and to a three (3) year period.

For the reasons stated earlier, the Court finds the information requested by these requests directly relevant to these proceedings and, albeit with limitations as hereinafter described, discoverable. Once again the Court is hard-pressed to see in what possible **\*691**  way the requests are vague or ambiguous. Documents related to persons holding the

position of "shift manager," "shift supervisor," or "shift leader" should be easily ascertainable from the plain meaning of the words supplied. As for relevancy, in order for Plaintiffs to distinguish between the work performed by assistant store managers and other employees, Plaintiffs will naturally require discovery regarding positions other than assistant store managers.

Finally, in accordance with the Court's earlier pronouncements, the geographic scope for all requests shall be limited to stores within the state of Florida. Furthermore, the temporal scope, as stated earlier, shall be limited to five (5) years prior to the institution of these proceedings. The parties have fourteen (14) days from the date hereof within which to produce the discovery subject to this Order.

### Production Request No. 4

 **[22]**    Request No. 4 seeks all documents related to the SMD training program. While Defendant raises various general and boilerplate objections to the request, it then goes on to note that it has produced all documents responsive to this request. Accordingly, to the extent Defendants have already produced the documents, the Motion as it relates to these documents, is denied as moot. To the extent Defendants have additional documents responsive to this request, Defendant shall produce same within fourteen (14) days from the date hereof. In this regard, the Court notes Plaintiffs' valid concern they be provided not only documents regarding the most recent SMD training program, but documents involving past versions of then SMD training program as well. The Court agrees and orders Defendants to produce documents involving past versions of then SMD training program for a period of five (5) years prior to the institution of these proceedings. Plaintiffs' Motion as it relates to this request is therefore granted in accordance with the terms herein and Defendants are ordered to produce same within fourteen (14) days from the date hereof.

### Production Request Nos. 5, 7–8 & 15–16

 **[23]**    Request No. 5 seeks all documents regarding the salary or pay guidelines for the Assistant Store Manager position. Request No. 7 asks for all documents dealing with the screening policies or minimum standards for hiring Assistant Store Managers and Request No. 8 seeks all documents related to job postings or advertisements for the position

of Assistant Store Manager. Request Nos. 15 and 16 seek all documents relating to personnel rosters at each store. Except for Defendant's objections regarding the temporal and geographical scope of the requests, which the undersigned has already explained she is want to do, Defendant's objections to the requests are without merit and rejected. Once again Defendant has failed to explain and this Court is at a loss to understand just how it is these requests can reasonably be believed subject to any sort of privilege claims. To the extent Defendants are concerned with employee confidences, said production shall be subject to the confidentiality agreement between the parties already in effect. Finally, in accordance with the Court's earlier pronouncements, the geographic scope for all requests shall be limited to stores within the state of Florida and the temporal scope, as stated earlier, shall be limited to five (5) years prior to the institution of these proceedings. Accordingly, Plaintiffs' Motion as it relates to these requests is granted and Defendants shall have fourteen (14) days from the date hereof in which to provide the discovery responsive to these requests.

*Production Request No. 12B*

Request No. 12B seeks all documents related to benefit plans offered to employees in retail stores or in field management.

Defendant represents it is searching for earlier versions of the Store Salary Administration Guidelines and have agreed to produce other such versions. Accordingly, Plaintiffs' Motion as it relates to this request is granted and Defendant shall have fourteen (14) days from the date hereof within which to produce the discovery subject thereto.

The undersigned notes that nothing in this Order is intended to conflict with an Order **\*692** already entered or to be entered in the future by the District Judge and to the extent there is any order so entered by the District Judge that in any way conflicts with this Order, the District Judge's Order takes precedence. In accordance with the above and foregoing, it is hereby,

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel Better Responses to Plaintiff's Fourth Request for Production (D.E.# 59) is **GRANTED IN PART AND DENIED IN PART IN ACCORDANCE WITH THE TERMS OF THIS ORDER.** Unless otherwise stated, all discovery ordered produced herein shall be produced within fourteen (14) days from the date hereof.

**All Citations**

269 F.R.D. 682

## Footnotes

1    Rule 26(b)(3) was adopted in 1970 to codify the holding in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

2    There is also some doubt whether Defendant can rely on the self-critical analysis privilege at all, as same may not even be recognized by the Eleventh Circuit. *See Berner v. Carnival Corp.,* 2009 U.S. Dist. Lexis, 35768 (S.D.Fla.2009).

**End of Document**                                                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 13174327

2019 WL 13174327
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Jared JOHNSON, on his own behalf, Plaintiff,
v.
MODERN SOURCE, LLC, a Florida
Limited Liability Company, Defendant.

CASE NO. 18-63079-CIV-DIMITROULEAS/SNOW
|
Signed 06/20/2019

**Attorneys and Law Firms**

Kimberly A. Slaven, Jordan Alexander Shaw, Zebersky Payne LLP, Ft. Lauderdale, FL, for Plaintiff.

Modern Source, LLC, Margate, FL, Pro Se.

### ORDER

LURANA S. SNOW, UNITED STATES MAGISTRATE JUDGE

**\*1** THIS CAUSE is before the Court on the Defendant's Motions to Compel (ECF Nos. 20, 21) The Plaintiff filed a response in opposition to the Motions.

### BACKGROUND

This case was filed on December 17, 2018, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA). According to the Plaintiff, the Defendant placed more than fifty auto-dialed calls to the Plaintiff even after the Plaintiff asked that the communications stop. [1] The Defendant claims that the Plaintiff had consented to receiving the calls, and that any violation of the TCPA was not intentional.

On May 6, 2019, the Defendant filed two motions to compel.

### DISCUSSION

Objections to requests for production of documents must be stated with specificity, including the reasons for the objection, and must state whether any responsive materials are being withheld on the basis of that objection and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2); S.D. Fla. L.R. 26.1(e)(2)(A). The discovery respondent bears the burden of establishing a lack of relevancy or some other basis for resisting production. See, e.g., Adelman v. Boy Scouts of Am., 276 F.R.D. 681 (S.D. Fla. 2011) (noting that court could grant motion to compel "solely based on [discovery respondent's] procedurally inadequate objections").

As an initial matter, the Court notes that the Defendant's Motion to Compel further answers to Interrogatories was filed as a 31 page document, 9 pages of which are the motion. (ECF No. 21) The Motion is subject to denial because it exceeds the 5 page limitation on discovery motions, as stated in this Court's General Order on Discovery Objections and Procedures, entered on March 15, 2019. (ECF No. 10) As stated in that Order, "**THE COURT MAY DECLINE TO CONSIDER A MOTION OR RESPONSE WHICH DOES NOT COMPLY WITH THESE PROCEDURES**." (Id., emphasis in original) Further, the Defendants' 31 page filing, which resulted from the Defendant's inclusion of Exhibits A and B with the motion in a single filing, does not comply with Local Rule 5.1(b), which requires documents to be filed "in compliance with the CM/ECF Administrative Procedures." S.D. Fla. L.R. 5.1(b). According to Section 3L(2) of the CM/ECF Administrative Procedures, a party filing an attachment to a document "shall select one of the prescribed attachment categories from the drop-down menu ..., provide an alphabetical or numerical designation ..., and descriptively name each attachment ... in a manner that enables the Court to easily locate and distinguish attachments."

The Defendant's Motion to Compel Production (ECF No. 20) also was filed as a 31 page document, but only 6 pages of the document are the motion. While the motion does not comply with this Court's General Order, the Court has reviewed the motion and makes the following rulings. The Defendant served Requests for Production on March 8, 2019, to which the Plaintiff responded on April 10, 2019. According to the Plaintiff, he produced 356 pages of documents and 54 recordings of phone calls, including records he obtained from his cell phone carrier. Plaintiff's Response to Motions to Compel (ECF No. 28), at 3. Plaintiff's counsel reports that the Plaintiff produced "each and every document and recording he possessed." Id.

Johnson v. Modern Source, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 13174327

**\*2** The Defendant correctly argues that the Plaintiff's statement, repeated in nearly each of its responses, that "[a]ll non-privileged documents and recordings in Plaintiff's care, custody, or control will be produced concurrently herewith," provides little information to the reader. (ECF No. 20) If the Plaintiff has withheld privileged documents, then he should have timely provided a privilege log, pursuant to Local Rule 26.1(e)(2). Having failed to do so the Plaintiff has waived any privilege-based objection. And, of course, discovery production requests are to be responded to only to the extent that the requested documents are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The Defendant argues that the Plaintiff's unspecific response to 49 of the 55 requests left "Defendant guessing as to whether any responsive documents have been produced at all." Motion (ECF No. 20), at 2, 4. By providing an unclear response, the Plaintiff has not met the spirit, and arguably not even the letter, of the demand in Rule 1 of the Federal Rules of Civil Procedure, that the procedural rules be employed "to secure the just, speedy, and inexpensive determination of every action and proceeding."

The Plaintiff argues that he withheld production of a single document and even as to that document, he would be willing to produce it to the Defendant pursuant to an agreement that it remain confidential. Plaintiff's Response to Motions to Compel (ECF No. 28), at 3. It is unfortunate that the parties and their counsel were unable to reach an agreement regarding entry of a confidentiality order. That unfortunate state of the case does not relieve the Plaintiff of its obligation to produce a responsive document, as there is no basis for withholding a document on the basis of confidentiality. Therefore, to the extent that the Plaintiff attempted to assert an objection based on confidentiality as to Requests Nos. 1-5, 7, 27, 51, that objection is overruled.

The Court also notes that as to the only request to which the Plaintiff clearly objected, Request No. 6, the Plaintiff's objection (that the request "calls for documents outside Plaintiff's custody, care, and control") is not properly stated and is, therefore, overruled.

## CONCLUSION

Consistent with the above, it is

ORDERED and ADJUDGED that the Defendant's Motion to Compel Production and Better Responses (ECF No. 20) is GRANTED, in part. The Plaintiff's "confidentiality" or "privilege" based objections are overruled and within five days the Plaintiff shall produce to counsel for the Defendant the "single document" the Plaintiff withheld from production.[2]

Further, the Defendant's Motion to Compel Complete Answers to Interrogatories (ECF No. 21) is DENIED, for the reasons stated above.

DONE and ORDERED at Fort Lauderdale, Florida this 20th day of June, 2019.

## All Citations

Not Reported in Fed. Supp., 2019 WL 13174327

---

### Footnotes

1    The recently filed Amended Complaint corrects the prior pleading's mistaken reference to the calls having been for the purpose of debt collection, and instead alleges that the calls were made "on behalf of telemarketers for insurance products." Amended Complaint (ECF No. 27), at ¶11.

2    On this date counsel for the Defendant filed a Motion to Withdraw (ECF No. 29), citing difficulty in reaching the corporate representative of the Defendant. The filing of the Motion to Withdraw does not alter the Court's conclusion as to the Defendant's Motions to Compel.

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:

,

Plaintiff,

v.

,

Defendants.

_____/

**STANDING DISCOVERY ORDER FOR
MAGISTRATE JUDGE BRUCE REINHART**

The following procedures are designed to accomplish civil discovery without undue delay and unnecessary expense. The Court may impose sanctions for non-compliance with these procedures.

I.     GENERAL DISCOVERY PRINCIPLES

A.  Rule 26(b)(1) – Relevance and Proportionality

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, defines the scope of permissible discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). An objection based on relevance or proportionality must include a specific explanation describing why the request lacks relevance and/or why the requested discovery is disproportionate in light of the factors listed in Rule 26(b)(1).

**B.** Non-Waiver

Discovery is a dynamic process. What is relevant or proportionate or cumulative or unduly burdensome can change as a case moves forward. The Court recognizes that a party may be unwilling to compromise its position on a particular discovery request because of concern that the concession will be deemed to waive a future objection or a future demand for related discovery. To eliminate this concern, the Court evaluates all discovery requests and responses individually. Therefore, by responding, in whole or in part, to a discovery request, a party does not waive any objection to a future request. Likewise, by agreeing to limit a discovery demand, a party does not waive its right to seek additional discovery in the future. Parties need not serve a response or objection that specifically reserves their rights or disavows a waiver.

**II.** DISCOVERY PROCEDURES

**A.** Deposition Scheduling

Parties are expected to confer in good faith to schedule depositions at times convenient for all parties. If the parties cannot agree on a date after reasonable conferral, the requesting party may unilaterally schedule the deposition, with the notice required by Local Rule 26.1(h). The burden then shifts to the deponent to move for a protective order. S.D. Fla. L.R. 26.1(h).

**B.** Rule 26(g) Certification

Federal Rule of Civil Procedure 26(g) requires a lawyer or party requesting discovery, responding to a discovery request, or objecting to a discovery request to sign the relevant pleading. Fed. R. Civ. P. 26(g). The signature "certifies that to the best of the person's knowledge, information, and belief *formed after a reasonable inquiry*" (1) any required disclosures are complete and correct and (2) any request, response, or objection is (i) consistent with the Federal Rules of Civil Procedure (including the proportionality requirement of Rule 26(b)(1)), (ii) not for an improper purpose, such as delay or needless increase in litigation cost, and (iii) not otherwise unreasonable "considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." *Id.*

Rule 26(g) imposes an affirmative duty on counsel to conduct a reasonable inquiry prior to serving discovery or objecting to discovery, and to conform discovery to what is reasonably necessary to the case at hand. For a party responding to a discovery request, "Rule 26(g) does not require a comprehensive search of all possible locations where responsive evidence may be found. Nor does it require a perfect or even optimal search. It requires a 'reasonable' inquiry." *In re Zantac (Ranitidine) Prod. Liab. Litig.,* No. 20-MD-2924, 2021 WL 5299847, at *4 (S.D. Fla. Nov. 15, 2021).

**C.** ESI Searches

The Court does not rule on ESI search disputes in advance. The parties should confer to try to reach agreement on what data will be collected and searched, and the search methodology (including, if appropriate, search terms). If they cannot agree, the Respondent should unilaterally conduct a search using its chosen search

methodology and data sources. The Requester can then challenge whether the Respondent conducted a "reasonable inquiry" that complied with Rule 26(g). The Court may allow limited "discovery on discovery" to inform whether the search complied with Rule 26(g).

**D.** Instructions to the Responding Party

A party propounding discovery cannot unilaterally impose legal obligations on the respondent through Instructions. Any Instruction that purports to impose a duty other than those mandated by the Federal Rules of Civil Procedure or the Local Rules of this Court has no legal effect.

**E.** Production at an Indeterminate Time

It is a common practice to respond to Requests for Production by saying that the party will produce, or make available for inspection, responsive materials at an indeterminate future date. This kind of statement is not an acceptable response. Federal Rule of Civil Procedure 34(b)(2)(B) says that a production must be "completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). Unless all unobjectionable materials are being produced contemporaneously with the written response, the response must specify a date by which production will be completed; the respondent may adopt the date proposed in the request or may propose its own reasonable time, after consultation with opposing counsel.

The Court strongly encourages parties to engage in rolling production of documents. If a rolling production is to occur, the parties shall confer about a

production schedule, including the order in which categories of documents will be produced, and a good faith estimate of the date by which production will be completed. Whether by rolling production or otherwise, a final production date more than 30 days after the response deadline (i.e., generally 60 days after the request is served) is presumptively unreasonable under Rule 34(b)(2)(B). That being said, the parties will be in the best position to assess the timing of discovery in a particular case. Therefore, the parties may agree to a longer period for production, without leave of Court. In the absence of agreement among the parties, if the production will not be completed within 30 days of the response deadline, a motion for enlargement of time should be filed by the responding party. The motion shall include a good cause explanation for why production cannot be completed within that time period, and a proposed schedule for completing the production. The opposing party shall respond within 72 hours.

**F.** Rule 26(c) – Protective Orders

Federal Rule of Civil Procedure 26(c) permits the Court to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A motion seeking relief under Rule 26(c) must include a specific explanation, supported by facts, demonstrating how complying with the discovery request would cause annoyance, embarrassment, oppression, or undue burden or cost. The Court will reject a conclusory unsupported statement that Rule 26(c) relief is warranted. *See* S.D. Fla. L.R. 26.1(g)(3).

**G.** Requests for Sanctions

Any request for sanctions (including fees or costs associated with discovery) must be by separate motion. Leave of court is not required prior to filing a sanctions motion. Any such motion must state the rule or statute that justifies sanctions and the specific remedy being requested.

### III.   DISCOVERY OBJECTIONS

**A.** Identifying Withheld Materials

Objections to Requests for Production must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). When a party asserts a discovery objection, the Court assumes that a Rule 26(g) compliant search has been conducted and that responsive materials exist. **If a party interposes an objection and later asserts that no responsive documents exist, the Court will impose sanctions.** If a party asserts that it would be too burdensome to search for responsive materials, the objection should make clear that no search has been conducted and explain why a search would be unduly burdensome.

**B.** Boilerplate or General Objections

The parties shall not make nonspecific, boilerplate objections. *See, e.g.*, S.D. Fla. L.R. 26.1(e)(2)(A) ("Where an objection is made to any interrogatory or subpart thereof or to any production request under Federal Rule of Civil Procedure 34, the objection shall state with specificity all grounds."). The parties also shall not make general objections that are not tied to a particular discovery request. The Court will strike these general objections.

**C.**  Vague, Overly Broad, and Unduly Burdensome

Objections that state that a discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless, and will be stricken by the Court.

If a party believes that a request or a term is vague, that party must first ask for clarification from opposing counsel prior to objecting on vagueness grounds. If the requesting party does not clarify the request, the responding party should unilaterally define the allegedly-vague term and respond accordingly. For example, "Defendant construes the term '___' to mean '_____.' Consistent with that definition, Defendant is producing _____."

An objection that a discovery request is "overbroad" is ambiguous. If the objecting party asserts that the request seeks materials that are not relevant, the objection should say so. Alternatively, if the objector asserts that the request seeks materials that are relevant but excessive or cumulative, the objection should state that the request is disproportionate.

If a party believes a discovery request seeks irrelevant information, is disproportionate, or is unduly burdensome, that party shall confer in good faith with opposing counsel to narrow the scope of the request before asserting these objections. The objecting party nevertheless shall respond as to those matters for which the scope or burden is not contested. For example, if there is an objection based upon the scope of the request, such as time frame or geographic location, discovery should be provided as to the time period or locations that are not disputed. Thus, if discovery is sought nationwide for a ten-year period, and the responding party objects on the

grounds that only a five-year period limited to activities in the State of Florida is appropriate, the responding party shall provide responsive discovery falling within the five-year period as to the State of Florida.

A party objecting on any of these grounds must explain the specific and particular way in which a request is vague, seeks irrelevant information, is disproportionate, or is unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *see also Dem. Rep. Congo v. Air Capital Grp., LLC*, No. 12-CIV-20607, 2018 WL 324976, at *3 (S.D. Fla. Jan. 8, 2018) (J. Torres) (quoting *Sallah v. Worldwide Clearing LLC,* 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) (J. Rosenbaum)) ("'A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.'").

**D.** Formulaic Objections Followed by an Answer

A party shall not recite a formulaic objection followed by an answer. It has become common practice for a party to object to a discovery request, and then state that "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. **"**Objecting but answering subject to the objection is not one of the allowed choices" under the Federal Rules of Civil Procedure. *Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 12862641, at *4 (S.D. Fla. Apr. 25, 2012) (J. Seltzer) (citation omitted). Such a response improperly leaves the requesting party uncertain as to whether the discovery request (as propounded) has

been fully answered, whether the response relates only to the request as unilaterally narrowed by the responding party, and whether the responding party is withholding any responsive materials. *See Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 WL 4327253, at \*3 (S.D. Fla. Sept. 18, 2008) (J. Simonton).

For a Request for Production, the proper practice is to (1) state whether documents are being provided in response to the request and identify those documents by sequential number or category, and (2) state whether any responsive documents are being withheld, and if so the specific legal basis for that objection. *See* Fed. R. Civ. P. 34(b)(2)(C) (objection must "state whether any responsive materials are being withheld on the basis of that objection"); S.D. Fla. L.R. 26.1(e)(6) ("Each page of any document produced in a non-electronic format must be individually identified by a sequential number that will allow the document to be identified but that does not impair review of the document."). Samples of proper objections include:

> Defendant is providing documents marked as Defense 1–250, as well as a USB drive containing emails for the following custodians in native format: _____. Defendant has identified other documents which are responsive to the request as propounded, but Defendant asserts that those additional documents are irrelevant to the claims and defenses in this matter because \_\_\_\_\_.

> Plaintiff is providing documents marked as Plaintiff 1–100. Plaintiff has identified other documents which are responsive to the request as propounded, but Plaintiff asserts that production of those materials would be disproportionate to the needs of the case because the burden and expense of the proposed discovery outweigh its likely benefit for the following reasons: _____.

For an Interrogatory, stating both an objection and an answer waives the objection. *See, e.g., Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-

CV-537-FTM-29, 2011 WL 1627165, at *4 (M.D. Fla. Apr. 29, 2011) ("[W]henever an answer accompanies an objection, the objection is deemed waived, and the answer, if responsive, stands."); *but see Proflex Prods., Inc. v. Protecto Wrap Co.*, No. 12-21280-CIV, 2013 WL 12064531, at *1 (S.D. Fla. July 18, 2013) (J. Hunt) (holding that where discovery request can be subdivided without ambiguity, a party may object to a portion of the interrogatory *specifically* while also providing an answer to the non-objectionable portion.).

### E. Objections "To The Extent That"

Parties often object to a discovery request "to the extent that" it seeks irrelevant or privileged evidence. This objection does not address whether, in fact, the request calls for non-discoverable evidence. If a party believes a discovery request seeks irrelevant or privileged evidence, the party must say so.

### F. Privilege Objections — Requests for Production and Interrogatories

Generalized objections asserting attorney-client privilege or work product doctrine do not comply with the Local Rules. Local Rule 26.1(e)(2)(B) requires that objections based upon privilege identify the specific nature of the privilege being asserted, as well as, *inter alia*, the nature and subject matter of the communication at issue and the identities of the parties to the communication. S.D. Fla. L.R. 26.1(e)(2)(B). Local Rule 26.1(e)(2)(C) requires a privilege log. S.D. Fla. L.R. 26.1(e)(2)(C). If a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived. The production of non-privileged materials should not be delayed while a party is preparing a privilege log.

**G.** Objections Based upon Privilege – Depositions

In general, it is improper for a party to object to a noticed deposition with a blanket assertion of privilege. *See S.E.C. v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla. 2012) (J. Goodman), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012) (J. Graham). Rather, assertions of privilege during a deposition should be raised on a question-by-question basis, thus providing the Court with a record from which it can determine whether each assertion of privilege was proper.

**H.** Objections to Rule 30(b)(6) Deposition Topics

The Court typically will decline to rule on objections made in advance of a Rule 30(b)(6) deposition of a corporate representative. "In situations where a particular [Rule 30(b)(6)] noticed topic is alleged to be outside the scope of Rule 26 discovery . . . the remedy . . . does *not* involve this Court preemptively reviewing arguments on relevance or overbreadth." *Balu v. Costa Crociere S.P.A.*, No. 11-60031-CIV, 2011 WL 3359681, at *3 (S.D. Fla. Aug. 3, 2011) (J. Torres) (emphasis in original) (quoting *New World Network Ltd. v. M/V Norwegian Sea*, 2007 WL 1068124, at *2–3 (S.D. Fla. Apr. 6, 2007)) (noting that "'the Rule is intended to be self-executing and must operate extrajudicially'"). Often, the precise phrasing or context of a question will affect whether it is legally proper. To "give the Court a factual record with which to judge whether a particular topic or question asked should be compelled or not," the corporate deponent should object to a topic as the questions are being posed, and the opposing party should move to compel additional answers, if necessary, after the deposition. *Balu*, 2011 WL 3359681, at *4. In sum**, the corporate deponent's lawyer is authorized to object to a deposition question and instruct the**

**witness not to answer on relevance grounds, but if the Court overrules the objection, the Court will assess fees and costs for reconvening the 30(b)(6) deposition.**

IV. PROCEDURES FOR DISCOVERY DISPUTES

A. Pre-Hearing Communication

If a discovery dispute arises, counsel must actually speak to one another (in person or via telephone) and engage in reasonable compromise in a genuine effort to resolve their discovery disputes before seeking Court intervention.

B. Hearing Procedures

If, after conferring, the parties are unable to resolve their discovery disputes without Court intervention, Magistrate Judge Reinhart will set the matter for a hearing using the following procedures. No discovery motions shall be filed until after the parties have engaged in this process. If the dispute is not resolved at the discovery hearing, the Court will consider authorizing the filing of an appropriate discovery motion, which will then implicate the sanctions provisions of Federal Rule of Civil Procedure 37(a)(5).

The moving party may request a discovery hearing by sending an email to reinhart@flsd.uscourts.gov. The subject line of the email shall be "Request for Discovery Hearing." The email shall provide the Court with two afternoons in the following seven business days when all parties are available. The email shall state the amount of time that the parties anticipate needing for the hearing. The email shall be copied to all counsel, and shall certify that the moving party has conferred with opposing counsel and confirmed opposing counsel's availability on the proposed

dates. The Court will enter an order setting the hearing. Counsel are required to appear in person at the discovery hearing unless otherwise excused by the Court.

At least 48 hours prior to the scheduled hearing, the parties shall file a joint discovery memorandum of five pages or less (1) specifying the substance of the discovery matter to be heard, (2) certifying that the parties have complied with the pre-hearing communication requirement set forth above, and (3) attaching a copy of all source materials relevant to the discovery dispute (e.g., if the dispute concerns interrogatories, the interrogatories at issue and any responses thereto shall be provided to Chambers). A sample format for the joint discovery memorandum is attached as Appendix 1 to this Order. This procedure does not apply when non-parties object to subpoenas served upon them.

**C.** Encouraging Participation by Less-Experienced Lawyers

Ordinarily, only one lawyer for each party may argue at the discovery hearing. Nevertheless, the Court has a strong commitment to supporting the development of our next generation of lawyers. The Court encourages parties and senior attorneys to allow less-experienced practitioners the opportunity to argue in court. A party should advise the Court prior to the beginning of the hearing if a lawyer of 5 or fewer years of experience will be arguing the matter. In that event, the Court will allow multiple lawyers to argue on behalf of that party.

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, on

January 5, 2024.

_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

**APPENDIX 1**

The parties certify they have complied with the requirements for pre-hearing consultation contained in the Court's Standing Discovery Order. Despite good faith efforts to resolve their differences, the following issues require resolution by the Court

1. The parties dispute the appropriate time frame for Plaintiff's Interrogatory Nos. 1, 5, 6-9. Plaintiff asserts that the time frame should be limited to _____ because [legal basis for position, such as relevance, undue burden, disproportionate]. Defendant believes the proper time frame is _____.

2. Defendant objects to Request for Production 3. Defendant has produced _____ in response to the Request, believes that additional documents exist, but objects to the production of those documents because _____. Plaintiff believes that all the materials sought by the Requests are [relevant/proportional/not unduly burdensome] because _____.

3. Plaintiff objects to Request for Production 9, which calls for production of voluminous documents/electronic communications. Plaintiff asserts that it will be unduly burdensome and costly to conduct searches to identify if responsive documents exist. Defendant asserts that, to minimize cost and burden, it has proposed to limit the time frame of the request and has offered search terms as follows:_____.

4. Plaintiff objects to Interrogatory 7 because it would require disclosure of communications and materials protected by the attorney-client/work product privilege. Defendant asserts that no privilege exists because _____.

Copies of the relevant discovery requests and related pleadings are attached, as follows:

1. Plaintiff's First Interrogatories and Defendant's Response and Objections

2. Defendant's Request for Production and Plaintiff's Objections

2022 WL 21295776
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Fort Myers Division.

UNITED STATES of America, Plaintiff,
v.
Joseph B. WILLIAMS, III, and Meredith
Lee Smith-Williams, Defendants.

Case No. 2:21-cv-538-JES-NPM
|
Signed November 9, 2022

**Attorneys and Law Firms**

Forrest T. Young, Samuel Gene Fuller, United States Department of Justice, Tax Division, Civil Trial, Washington, DC, for Plaintiff.

David Harold Dickieson, Pro Hac Vice, Schertler & Onorato, LLP, Washington, DC, for Defendants.

**ORDER**

NICHOLAS P. MIZELL, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the court are plaintiff's motions to compel (Docs. 33, 39) and defendants' motion for protective order (Doc. 35). These related motions concern the discoverability of financial information related to a Florida home the government alleges defendant Meredith Lee Smith-Williams purchased in her name with funds from her husband and convicted tax evader, defendant Joseph B. Williams, III, allegedly to avoid IRS collection action against the real property for his unpaid income tax liability. Williams disputes that he owes the tax, claiming that the IRS has not properly credited his past payments against his taxes.

The government seeks to compel defendants to produce promised documents, supplement certain interrogatory responses, and provide signed responses to certain interrogatories. (Doc. 33 at 4, 20; Doc. 39 at 8-13). Relatedly, defendants seek a protective order from the court "containing terms typical of an agreed or court-ordered confidentiality order." (Doc. 35 at 1). This is to avoid IRS collection efforts during this litigation. (*Id.* at 5-6, 9).

**I. Background**
The government sues to recover over $6 million in allegedly unpaid income tax liabilities defendant Joseph Williams owes for the years 1996-1999. Williams deposited earnings into a Swiss bank account and failed to report it on tax returns he filed throughout most of the 90s. Eventually, the government caught wind of Williams's actions—in 2003, the Department of Justice charged Williams with one count of conspiracy to defraud the United States and the IRS and one count of tax evasion for the period from 1993 through 2000. (Doc. 1 ¶¶ 6-14). Williams pleaded guilty to both counts, allocuted, and received a sentence of 46 months of incarceration. (*Id.* at ¶¶ 15-16).

During his incarceration, the IRS examined Williams's returns for years 1993 through 2000. In 2007, the IRS subsequently issued a Notice of Deficiency, which the Tax Court and Fourth Circuit Court of Appeals upheld. (*Id.* at ¶¶ 17-20). But Williams has yet to pay the more than $6 million deficiency owed. (*Id.* at ¶¶ 21-23). The government has been trying to collect for years, apparently without much success. (*Id.* at ¶¶ 23-28).

Despite owing millions in unpaid taxes, the government alleges that in May 2016, Williams transferred approximately $300,000 to his wife, Meredith Lee Smith-Williams, and to Superior Title Services of Sanibel, Inc. to buy a residence in Sanibel, Florida. (*Id.* at ¶¶ 29-37). The government further alleges Williams and his wife manipulated the transaction so the residence was purchased in Smith-Williams's name alone and only her name is on the deed. In essence, the government claims Williams is continuing to evade taxes with the help of his wife. So now the government wants the court to declare the Sanibel residence belongs to Williams and that the tax liens against Williams attach to the Sanibel residence. (*See id.* (prayer for relief)).

**II. Defendants are not entitled to a protective order**
The motion for protective order seeks to compel the government to enter into a confidentiality agreement whereby the DOJ will not disclose defendants' financial information from this case to the IRS. Defendants allege the IRS has taken abusive collection action against Williams and would misuse such financial information for tax collection purposes. This, defendants claim, would deny them the ability to litigate this case. (*Id.* at 5-6).

United States v. Williams, Not Reported in Fed. Supp. (2022)
2022 WL 21295776

**\*2** Several reasons warrant denial of defendants' request. First, the Civil Action Order expressly provides that the court cannot (and will not) compel the parties to enter into a confidentiality agreement. (Doc. 5 at 4 n.8). And "the Court does not adopt or endorse confidentiality or other discovery agreements as protective orders, but the Court will enforce reasonable provisions of such agreements." (Doc. 5 at 4). Second, defendants' argument is based on "unfounded speculation" as to what defendants think the IRS will do without any substantiation. Third, even if defendants' speculation comes to fruition, they have not shown that the IRS is prohibited from collecting during this litigation. If so, there would likely be no need for a protective order.

Fourth, the government explained that the IRS entered a "freeze" code (Code 520 "Bankruptcy or other legal action filed") on July 16, 2021, as to each tax year at issue in this case per the IRS's procedures in referring a matter to the Department of Justice. (Doc. 33-14 at 6, 9, 12, 15). These codes provide "awareness of the litigation and prevents inappropriate actions by other IRS functions." *See* I.R.M. § 25.3.6.3.2 (12-07-2010); (Doc. 33-15 at 1-2 (providing this information to defendants)). The IRS won't typically engage in collection once a matter has been referred to DOJ for litigation. And unless there is a concern that assets are being dissipated or subject to waste, DOJ is unlikely to seek pre-judgment collection. (Doc. 38 at 11).

And finally, the relief defendants request may violate the Anti-Injunction Act of the Internal Revenue Code, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed," unless an enumerated exception applies. 26 U.S.C. § 7421(a).[1] The Anti-Injunction Act generally forbids courts from restraining the IRS in assessing or collecting a tax. *See United States v. Meyer*, No. 18-cv-60704, 2021 WL 2905304, \*3 (S.D. Fla. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 2410341 (S.D. Fla. June 14, 2021) (citing *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 5, 7 (1962); *Hempel v. United States*, 14 F.3d 572, 573 (11th Cir. 1994)). Hence, "the United States is assured of prompt collection of its lawful revenue." *Id.* The Anti-Injunction Act applies not only to "suits," but also to motions for protective orders having the same effect as an injunction. *Id.*[2] So defendants' attempt to prevent the IRS from using information to facilitate collections violates the very purpose of the Anti-Injunction Act. *Id.*

While defendants may not preemptively restrain IRS collections, they are not without a remedy. Defendants' recourse is to pay the tax and seek a refund. *Id.* at \*4. Or prove they are not liable for the tax in a collection suit such as this

**III. The government may compel responses concerning defendants' financial information**
At the heart of this discovery dispute is financial information relating to the purchase of the Sanibel residence. The government claims it has confirmed that a large amount of the funds used to purchase the residence stemmed from a transfer of funds from Williams to Smith-Williams a few days before the closing on the residence. (Doc. 33 at 5). But defendants allege the government has it wrong, because the "[t]he Government's purported tracing of funds from Mr. Williams' account to Ms. Smith Williams' account fails to consider transactions and loans between Mr. Williams and his wife. In sum, the Government's tracing does not go to the source of the funds, but instead starts midway through the chain of transfers." (Doc. 33-7 at 6-8; Doc. 33-10 at 2).

**\*3** In its first motion, the government seeks to compel defendants to:

> (i) produce documents responsive to Request Nos. 1-5, 7-10 and 12 from its First Set of Requests (*see* Doc. 33-6);

> (ii) provide signed answers to Interrogatory Nos. 1-12 (as to Williams) and Nos. 3, 5-6 (as to Smith-Williams) from its First Set of Interrogatories (*see* Doc. 33-7); and

> (ii) supplement their answers to Interrogatory Nos. 8 and 10 (as to Williams) and Nos. 1 and 3 (as to Smith-Williams) from its First Set of Interrogatories (*see* Doc. 33-7).

(Doc. 33 at 4, 20).[3]

In its second motion, the government piggybacks on its first motion to compel and seeks to compel defendants to:

> (i) produce documents responsive to Request No. 13, 14, and 15 from its Second Set of Requests (*see* Doc. 39-2);

> (ii) provide signed answers to Interrogatory Nos. 13 and 14 (as to Smith-Williams) from its Second Set of Interrogatories (*see* Doc. 39-1) and Nos. 15 and 16 (as to both defendants) from its Third Set of Interrogatories (*see* Doc. 39-6); and

United States v. Williams, Not Reported in Fed. Supp. (2022)

2022 WL 21295776

(ii) supplement their answers to Interrogatory Nos. 2 and 4 (as to Smith-Williams) from its First Set of Interrogatories (*see* Doc. 39-4) and Nos. 15 and 16 (as to both defendants) from its Third Set of Interrogatories (*see* Doc. 39-6).

(Doc. 39 at 8-13).

As for the document requests, defendants initially claimed they could not produce responsive documents because the documents were in Florida and were inaccessible to them while they were in Virginia. By not providing any time frame for production, defendants violated Rule 34. FED. R. CIV. P. 34(b)(2)(B) (requiring production of documents no later than the time specified in the request or another reasonable time specified in the response.); *see also* MIDDLE DISTRICT DISCOVERY § III-A-5-d (2021). And according to the government's second motion to compel, defendants refused to produce *any* documents in the absence of a protective order. But, as the court's civil discovery handbook expressly states: "The mere filing of a motion for a protective order does not, absent an order of the Court granting the motion, excuse the moving party from complying with the requested or scheduled discovery." MIDDLE DISTRICT DISCOVERY § VII-A (2021). To the extent any document requests remain outstanding, defendants must produce all responsive non-privileged documents and a privilege log, if any, by **November 23, 2022**.

As for the interrogatory answers discussed in the first motion to compel, defendants implicitly concede that their answers were insufficient. Interrogatory No. 8 as to Williams and No. 1 as to Smith-Williams provides:

Identify all your financial accounts for the years 2011 through 2016, including any account that you owned, had an interest in, or for which you had signature authority during that time, including the account number, the name in which each account was held, the financial institution where it was held, and the type of the account (e.g., checking, saving, credit, loan, investment, brokerage, etc.), further including the date on which the account was opened, and a list of the persons or entities with signature authority for the account.

**\*4** (Doc. 33-3 ¶ 8; Doc. 33-4 ¶ 1) (First Set of Interrogatories).

And Interrogatory No. 10 as to Williams and No. 3 as to Smith-Williams provides:

Identify the source of funds that you contend were used for the purchase of the Williams Residence, including the direct and indirect source of the funds, including an identification of all documents that show the direct and indirect source of funds and an identification of any witnesses with knowledge of the direct and indirect source of funds.

(Doc. 33-3 ¶ 10; Doc. 33-4 ¶ 3).

Defendants responded that they were assembling information and would provide further information and financial documents when they return to Florida. But their responses were insufficient, and defendants have not shown otherwise. Instead, they claim the government's dissatisfaction is not a sufficient basis for seeking to compel defendants to change their answers. And they add: "Rather, if the Government has follow-up questions, the Government may ask them via **interrogatory** or at deposition." (Doc. 34 at 2) (emphasis added). This is wholly circular.

As for the second motion to compel, defendants seek to moot it by producing the requested documents and supplementing their interrogatory answers. (Doc. 40 at 2, 9-11). The only issue outstanding appears to be supplementing the answer to Interrogatory No. 4 directed to Smith-Williams from the first set. (Doc. 40 at 10-11). This interrogatory asks Smith-Williams to identify the source of funds used to pay for expenses for the Sanibel residence and to identify documents showing the source of funds. She responded that she does not keep detailed records but explained: "Mr. Williams pays more than his share of the expenses, as he lives in the Smith-Williams [Sanibel] Residence, incurs expenses by living there, and has greater sources of income." She further responded, "that her social security income and her husband's social security income are more than sufficient to pay expenses for the Smith-Williams [Sanibel] Residence." (Doc. 39-4 at 2-3). And defendants argue that their social security income has already been fully disclosed and there is no additional information available. (Doc. 40 at 11). Ms. Smith-Williams has provided a sufficient answer to this interrogatory.

If defendants have not already done so (Doc. 34 at 2; Doc. 39 at 10), they must serve signed interrogatory answers under oath. *See* FED. R. CIV. P. 33(b). Due to the multiple sets of interrogatories, the service of a template verification page may not suffice. If plaintiff insists, defendants must serve by **November 23, 2022**, separate verification pages

United States V. Williams, Not Reported in Fed. Supp. (2022)

2022 WL 21295776

that explicitly identify which set of interrogatories are being answered under oath.

## IV. Conclusion

In sum, plaintiff's motions to compel (Docs. 33, 39) are **GRANTED in part**. If not already done, defendants must produce responsive documents and supplemented interrogatory answers by **November 23, 2022**, as outlined in this order. And defendants' motion for protective order (Doc. 35) is **DENIED**.

Finally, the court finds that none of the three motions warrants any expense-of-motion awards.

## All Citations

Not Reported in Fed. Supp., 2022 WL 21295776

---

### Footnotes

1   Defendants have not discussed the Anti-Injunction Act, nor have they shown an exception would apply.

2   *Meyer* concluded that a protective order precluding the IRS from using Rule 36 admissions from an already-settled civil action to assess a tax penalty would violate the Anti-Injunction Act. 2021 WL 2905304, ^3-4.

3   Interrogatory numbers 8 and 10 served on Williams are identical to Interrogatory numbers 1 and 3, respectively, served on Smith-Williams. (Doc. 33, p. 20). *Compare* (Doc. 33-3 ¶¶ 8, 10), *with* (Doc. 33-4 ¶¶ 1, 3).

---

**End of Document**                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-25893-BB Document 94-4 Entered on FLSD Docket 05/19/2026 Page 46 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

**Federal Practice and Procedure (Wright & Miller)** | April 2026 Update

**Federal Rules of Civil Procedure**

**Chapter 6. Depositions And Discovery**
Author: Richard L. Marcus

**Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes**

# § 2213 Response to Request

> **Primary Authority**
>
> • **Fed. R. Civ. P. 34**

> **Forms**
>
> • West's Federal Forms §§ 3551 to 3600

A party served with a request for inspection must serve a written response to that request. Failure to do so, even though the discovery sought may be wholly objectionable, exposes the party served with the request to the sanctions of Rule 37(d) unless it has applied for a protective order.[1] The response must be served on all the parties to the action, unless the court otherwise orders, rather than only on the requesting party.[2]

The response should ordinarily be served within 30 days after service of the request, but the court may allow a shorter or longer time for the response, or the requesting party may so agree, providing that any extension does not go beyond the discovery cutoff.[3]

The simplest response is one saying that the discovery sought by the request will be allowed at the time and place and in the manner specified by the request.[4] Or it may be that the responding party will say in its request that it is willing to permit the discovery but at a different time or place or in a different manner than that requested. Unless the difference in time, place, or manner is of unusual importance this is likely to be satisfactory to the requesting party and the discovery will be had without court intervention.

Before 1970, there were cases requiring a rather formal showing if a party claimed that documents or things sought to be inspected were not in existence[5] or not in the possession, custody, or control of the party from whom they were sought.[6] But those cases were in the context of opposing a motion for discovery. There is no need for such formality under the extrajudicial

procedure now provided and it should be enough for the party to respond by saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control. [7] The responding party, of course, may elaborate on this if it wishes and the more fully it demonstrates that it does not have the document the more likely it is that the discovering party will be content with the response and will not take the matter to the court.

The responding party may object to some or all of the discovery sought. If it does, it must state, with respect to each item or category to which objection is made, the reason for the objection. One who objects to part of an item or category should specify to which the objection is directed.

Objection can be made to inspection of some or all of the items sought on the ground that they are not relevant to the subject matter of the action or that they are privileged, are trial preparation materials or the work of an expert. If any of these conditions exists, the items are not within the scope of discovery permitted by Rule 26(b) and thus by Rule 34. [8] But if the ground for objection is privilege, the courts long ago began to require that the objection specify the basis for that objection, on pain of waiving the privilege. [9] The 1993 amendments added Rule 26(b)(5)(A), which explicitly requires particulars regarding documents withheld from production based on a claim of privilege. Even before this amendment, courts had often required indices of documents withheld on grounds of privilege. [10] Although courts should avoid hair–trigger findings of waiver, the party relying on privilege needs to provide significant backup information. Objection also may be made on any ground that would support an application for a protective order under Rule 26(c). [11] Thus the responding party may object that to allow inspection would be unduly expensive or oppressive or would disclose confidential commercial information or would be otherwise objectionable. [12] In this connection, it is worth noting that under Rule 26(g)(1)(B)(iii), counsel who sign a discovery request certify that it is "neither unreasonable nor unduly burdensome."

Amendments adopted in 2015 added requirements for responding parties who object to Rule 34 requests. As amended, Rule 34(b)(1)(B) requires that objections be stated "with specificity." This requirement is parallel with an existing requirement for responses to interrogatories. [12.10] In addition, Rule 34(b)(1)(C) was amended to require that a responding party who objects to all or part of a request specify whether any responsive materials are actually being withheld on the basis of the objection. These two amendments may work together. [12.20]

The requirement of specificity in objections should be interpreted in a realistic sense. The Committee Note offered an example:

> An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. When there such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection. [12.30]

The requirement to specify materials withheld on the basis of an objection should also be interpreted in a realistic manner, as explained by the Committee Note:

> The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld." [12.40]

The 2015 amendments also endorse a common practice in production of requested materials—producing copies of documents or electronically stored information rather than permitting inspection of original materials. In addition, they require the responding party to produce in accordance with the schedule prescribed in the request or to propose another reasonable time for production

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 48 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

in the response to the request. If production must be done in stages, the response should state the beginning and end times for the staged production. [12.50]

Ultimately, the actual inspection is usually held at a time and place agreed upon by the parties. The responding party can propose inspection guidelines in the response to the request. [13] The responding party does not have an entirely free hand in orchestrating the production, however. Before 1980, there were concerns that responding parties might in effect hide critical documents by inserting them among less interesting materials in hopes that they would be overlooked. [14] In 1980, Rule 34 was amended to address this problem; Rule 34(b)(2)(E)(i) now requires that a party producing documents for inspection, whether in response to a request or in compliance with a court order, "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." [15]

Whether this provision should be viewed as giving the responding party the option to produce in the manner it prefers has been the subject of some debate. In the view of some commentators, a party may choose to produce materials as kept in the ordinary course of business only if the discovering party would be able to understand them if produced in that fashion. [16] Although this argument was based in part on supposedly existing practice, [17] it is ultimately unpersuasive if it means that the producing party does not have the initial choice to select between the two modes of production authorized by Rule 34(b).

To begin with, the problem addressed in the 1980 amendment was the shifting of materials from the sequence in which they were ordinarily kept to somewhere else, perhaps intended to make them hard to find. For instance, a critical internal memorandum might be taken from the memoranda file and buried among mounds of invoices. The amendment forbids the producing party from thus making it harder to find such items. Similarly, the producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34. [18] But production calls for production of entire documents; the producing party has no unilateral right to withhold the portions of documents it concludes are not "relevant." [18.50] Requiring further that these requested materials be segregated according to the requests would impose a difficult and usually unnecessary additional burden on the producing party. The categories are devised by the propounding party and often overlap or are elastic, so that the producing party might be compelled to decide which best suits each item in order to consign it to the proper batch. Such an undertaking would usually not serve any substantial purpose, and it could become quite burdensome if considerable numbers of documents were involved. Moreover, by requiring rearrangement, and the disassembling of the producing party's files, insisting on this manner of production invites claims of the very sort of "hiding" of materials that gave rise to the 1980 amendment. Accordingly, in the first instance the producing party should retain the right to choose between the production formats authorized by Rule 34(b) (but not others), and the court should have the authority where necessary to direct some disclosure of the manner of organization of the producing party's files. [19]

These issues should be distinguished from use of technology-assisted review of electronically stored information to identify responsive materials within a large collection of such information. As volumes of such information have grown, the burden of locating responsive items has increased also. Accordingly, parties initially resorted to search terms to locate responsive items. But search terms could prove somewhat unwieldy in identifying genuinely responsive items. More refined techniques, using algorithms designed to improve the quality of the search, have been used with some success. The parties are expected to discuss those techniques, and discovery may even be allowed about use of them. [19.30] The handling of discovery regarding electronically stored information is specifically addressed in later sections. [19.50]

However the documents are organized for production, the party who has made them available for inspection need not itself make copies for the use of the discovering party. [20]

With electronically stored information, an additional issue is the form for production, addressed in another section. [21] Rule 34(b)(2)(E)(iii) provides that a responding party need not produce the same electronically stored information in more than one form.

Westlaw. © 2026 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 49 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

## Footnotes

1.  **Rule 37(d)**
    See § 2291.

    Party served with a document request has four options: respond to document request by agreeing to produce documents as requested, respond to document request by objecting, move for a protective order, or ignore request; if party chooses last option, he is subject to sanctions but if party responds to document request, even if he responds by objecting, sanctions are not available. Badalamenti v. Dunham's, Inc., 896 F.2d 1359 (Fed. Cir. 1990), cert. denied, 498 U.S. 851, 111 S. Ct. 142, 112 L. Ed. 2d 109 (1990).

    Although it may be possible for the court to find good cause for failure of a party to timely object to a Rule 34 request, an objection that a request is "vague, overly broad and unduly burdensome" is the type of objection that is waived by a party's failure to timely object to the document request. Brenford Environmental System, L.P. v. Pipeliners of Puerto Rico, Inc., 269 F.R.D. 143 (D.P.R. 2010).

2.  **All parties**
    Rule 5(a). See § 1143.

    A party who waived any objection to inspection by defendant, who had requested inspection, also waived any objection he might have had to inspection by third–party defendant, who had not made a request. American President Lines v. Hartford Fire Ins. Co., 55 F.R.D. 61 (E.D. Pa. 1971).

3.  **Agreed extension**
    See §§ 2091 to 2092.

4.  **Simplest response**
    Although the procedure for responding to a request for production of documents is simple, many parties do not follow it. Instead of agreeing to produce at the place and time requested or proposing a reasonable alternative, they say that they will produce at a "mutually agreeable time and place." This practice ensures wrangling, and is incomplete. Jayne H. Lee, Inc. v. Flagstaff Industries Corp., 173 F.R.D. 651 (D. Md. 1997), **quoting Wright, Miller & Marcus.**

    **But see**
    Plaintiff's response to defendant's discovery requests was inadequate. Plaintiff said that it would make responsive documents available for copying at a mutually convenient time. But it did not state that inspection and related activities would be permitted as requested. Unless the requests were actually objected to, such a response delayed disclosure. It misled defendants because it did not say what, if any, responsive documents there might be and when, if ever, they would be identified and produced. Branhaven, LLC v. BeefTek, Inc., 288 F.R.D. 386 (D. Md. 2013).

5.  **Not in existence**
    When logs of drivers of the trucks of defendant were available only from the defendant and they contained relevant information, they would be ordered produced on plaintiff's motion, and if the logs in fact had been destroyed with no copies in existence, an affidavit from the officer or employee of the defendant responsible for such destruction should be submitted. Cairns v. Chicago Exp., Inc., 25 F.R.D. 169 (N.D. Ohio 1960).

    Plaintiffs' motion for leave to permit inspection and copying of certain documents would be denied when defendant presented an affidavit, which was uncontradicted by plaintiffs by way of counter affidavit or otherwise, to the effect that defendant had no communications or other writings of the nature sought by plaintiffs. Patrick v. Esso Standard Oil Co., 156 F. Supp. 336 (D.N.J. 1957).

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 50 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

If documents sought by motion for production of documents were not in existence, it was incumbent on the objecting parties to so state under oath and not by way of a general unverified allegation. Jensen v. Boston Ins. Co., 20 F.R.D. 619 (N.D. Cal. 1957).

**Compare**

When a party claims that requested documents have already been produced, it must support that assertion under oath in response to the request. If the party fails to make a clear and specific statement of such compliance under oath, the court may order it to produce the documents. Napolitano v. Synthes USA, LLC, 297 F.R.D. 194 (D. Conn. 2014).

**Possession, custody, or control**

Railroad's motion, in action against it by the U.S., for an order of inspection and permission to take copies of all documents relating to movement of cars described in complaint on lines of any connecting carriers, was required to be overruled, where Interstate Commerce Commission's letter stated that it did not have any such documents or information. U. S. v. New York, C. & St. L. R. Co., 8 F.R.D. 258 (N.D. Ohio 1948).

In action for death of corporate defendant's employee, defendant by discovery before trial would not be required to produce for plaintiff's inspection a report of a specified person, when defendant's vice president by affidavit swore that defendant did not have such report and had no information as to the existence of such document. Stark v. American Dredging Co., 3 F.R.D. 300 (E.D. Pa. 1943).

When defendant sought an order directing plaintiff to produce certain books and records, plaintiff's statement under oath that such records were not in plaintiff's possession but, if in existence were in Hungary was a sufficient answer. Blumenthal v. Lukacs, 2 F.R.D. 427 (S.D. N.Y. 1942).

**Not in possession**

Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co., 106 F.R.D. 59, 66 (D. Mass. 1985), **quoting Wright & Miller**.

Where party averred that it had produced all documents in its possession, custody or control relating to request for production no compulsion order would be entered. La Chemise Lacoste v. Alligator Co., Inc., 60 F.R.D. 164 (D. Del. 1973).

Where plaintiff seeking to compel production of documents for inspection and copying did not controvert in reply brief defendant's denial of existence of documents sought, production would not be required. Pope v. Ungerer & Co., 49 F.R.D. 300 (N.D. Ga. 1969).

**Compare**

After patent holder failed to produce discoverable information, it was required to provide a declaration, under penalty of perjury, setting forth specifically the efforts it had made to locate documents responsive to document requests, and certifying that all documents identified had been produced or explaining why documents had not been produced. Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc., 224 F.R.D. 644 (N.D. Cal. 2004).

If defendant claims that all requested documents have already been produced, it should clearly indicate that fact under oath in response to the request. Briefs from defendant's counsel making such a claim are not sufficient. Rayman v. American Charter Federal Sav. & Loan Ass'n, 148 F.R.D. 647 (D. Neb. 1993).

**See also**

If corporate client attempts to mitigate costs by using in–house legal counsel to assist trial counsel in complying with discovery request, trial counsel must nevertheless exercise oversight over collection of documents to ensure that client's employees are collecting all requested documents. Thus, trial counsel must ensure that all pertinent individuals are contacted about documents, and documents so obtained should be reviewed to determine if other documents should be procured to complete production. Bratka v. Anheuser–Busch Co., Inc., 164 F.R.D. 448 (S.D. Ohio 1995).

**Beyond scope of discovery**

See § 2206.

Case 1:25-cv-25893-BB Document 94-4 Entered on FLSD Docket 05/19/2026 Page 51 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

It was not proper for defendant unilaterally to redact documents before producing them to remove information it regarded as irrelevant. "It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information. Fed. R. Civ. P. 34 concerns the discovery of 'documents'; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences or words within those documents. Thus, courts view 'documents' as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document irrelevant for the purposes of Fed. R. Civ. P. 34." Bartholomew v. Avalon Capital Group, Inc., 278 F.R.D. 441 (D. Minn. 2011).

**But see**

The responding party may not, however, agree to produce only those requested documents she deems relevant. "If plaintiff believed that the request was not reasonably calculated to lead to the discovery of admissible evidence, or was overbroad, she should have objected or sought a protective order. But having asserted no objection, she must produce all the materials in her possession called for by the request. There is no middle ground entitling her to produce some documents and withhold others, depending on her ex parte determination of relevancy." Smith v. Logansport Community School Corp., 139 F.R.D. 637, 648 (N.D. Ind. 1991).

Where order directed plaintiffs to submit to discovery requested by defendants or otherwise object to discovery requested within ten days, plaintiffs could not object to scope of discovery after expiration of ten–day period. Leve v. Schering Corp., 73 F.R.D. 537 (D.N.J. 1975), aff'd without opinion, 556 F.2d 567 (3d Cir. 1977).

**Privilege objection**

Failure to make clear showing that privilege applies to document sought in discovery is not excused by later showing that document would have been privileged if timely showing had been made; applicability of privilege turns on adequacy and timeliness of showing as well as on nature of document. Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984), **citing Wright & Miller.**

Under ordinary circumstances, objection to production of documents on ground of privilege should be made in writing. U. S. v. O'Neill, 619 F.2d 222 (3d Cir. 1980).

United States failed to comply with rule when it stated six grounds for objecting to production without specifying to which part of the request it was objecting. Harris v. U.S., 121 F.R.D. 652 (W.D. N.C. 1988).

Objections to request for production of documents were waived due to failure of party subject to request to make timely objections. Krewson v. City of Quincy, 120 F.R.D. 6 (D. Mass. 1988).

Motion for protective order with respect to plaintiff's request for production of enumerated documents, based on claim of defendants that request would require 2,000 man hours of labor to search 57,000 records, was denied where defendants, despite requirement of this rule, filed no answer, objection, or motion for protective order before court's order for production of documents was entered; counsel should work out a mutually agreeable method to obtain information sought by request, and if no agreement was reached defendants could then make particularized objections. Alexander v. Parsons, 75 F.R.D. 536 (W.D. Mich. 1977).

Defendant in action for alleged infringement of patented process for production of hydrogen rich gas waived any objection it could have made as to any documents it produced in response to plaintiffs' request for production of documents relating to foreign application file and various plant proposals by electing to produce requested documents rather than to object for stated reasons. W. R. Grace & Co. v. Pullman, Inc., 446 F. Supp. 771 (W.D. Okla. 1976).

Defendants' failure to file timely objections to plaintiff's request for production of documents constituted a waiver of objection that documents were irrelevant and privileged; similarly, defendants' protective order motion did not alter the situation since the claim of privilege must be raised by timely objection. Perry v. Golub, 74 F.R.D. 360 (N.D. Ala. 1976).

**Indices of documents**
See § 2016.1.

**Ground for protective order**
See §§ 2036 to 2044.

**Compare**
Defendant former employer could not justify its refusal to produce electronically stored information until the parameters for discovery of such information had been set by agreement. The prospect of an ESI agreement does not supplant the requirement under Rule 34 that an initial and reasonable search for responsive materials be conducted in the first place. The employer admitted it was seeking only responsive materials that was in paper form from witnesses, regardless of whether these items were reasonably accessible. A full search could have been accomplished by asking employees to gather both paper documents and ESI. Albert v. Laboratory Corporation of America, 536 F. Supp. 3d 798 (W.D. Wash. 2020).

**Kinds of objections**
These are illustrated in the discussion of the protective order rule, §§ 2036 to 2044, and in § 2214.

County did not waive objections to requests for production by asserting the objections one day after the deadline. The county's counsel was involved in a motor vehicle accident that resulted in multiple broken bones in her right hand two days before the objections were due. Counsel was hospitalized all day on the date of the deadline, and plaintiff showed no prejudice from the one-day delay. But the county did waive relevancy and proportionality objections by failing to provide specific grounds to support those objections. Rule 34 now requires particularity. James v. Cuyahoga County, 648 F. Supp. 3d 897 (N.D. Ohio 2022).

Former employee who sued employer for breach of compensation agreement was entitled to production of spreadsheets and other accounting documents pertaining to employer's reserves, over employer's objection that the requests were burdensome, oppressive, or overly broad. The documents requested were easily retrievable, the temporal scope of the request was within the relevant time period, and a confidentiality stipulation afforded the employer adequate protection regarding the commercial sensitivity of the documents. Klein v. AIG Trading Group Inc., 228 F.R.D. 418 (D. Conn. 2005), **citing Wright, Miller & Marcus.**

In Title VII action, plaintiff's request for premises inspection was too broad. It sought access to a work area embracing 152,000 square feet of office space and housing 22 departments, most having nothing to do with the present case. In addition, many contained many sensitive and confidential files. Schwab v. Wyndham Intern., Inc., 225 F.R.D. 538 (N.D. Tex. 2005).

**Specificity in objections to interrogatories**
See Rule 33(b)(4), requiring that "[t]he grounds for objecting to an interrogatory must be stated with specificity."

Defendant's objections were improper boilerplate. The rules require that objections be made "with specificity" and these objections must be explained. Moreover, defendant responded to each request "subject to and without waiving the objections," but doing this is improper, as many other judges have made clear for many years. Mahalingam v. Wells Fargo Bank, N.A., 349 F.R.D. 127 (N.D. Tex. 2023).

"The Federal Rules of Civil Procedure take a 'demanding attitude toward objections,' and courts have long interpreted the rules to prohibit general, boilerplate objections. Boiler plate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request. Proper objections must be specific and correspond to specific discovery requests." Goodyear Tire & Rubber Company v. CEVA Logistics Singapore, Ltd., 348 F.R.D. 54 (E.D. La. 2024), **quoting Wright, Miller & Marcus.**

"Discovery response beginning 'with a long recitation of General Objections' that amount to 'global, generalized objections to each request' are no longer permitted under the 2015 amendments to the Federal Rules. The grounds for each objection 'must be stated with specificity,' and '[a]ny ground not stated in

a timely objection unless the court, for good cause, excuses the failure.'" United States v. Veeraswamy, 347 F.R.D. 591 (E.D. N.Y. 2024).

Defendant county waived its relevance and proportionality objections to discovery requests by failing to provide specific grounds to support them. They were general objections that lacked particularity to the facts of the case. James v. Cuyahoga County, 648 F. Supp. 3d 897 (N.D. Ohio 2022).

The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable. It may not rely on boilerplate, generalized, conclusory, or speculative arguments. Instead, the objections must be supported by specific examples. Big City Dynasty v. FP Holdings, L.P., 336 F.R.D. 507 (D. Nev. 2020).

Plaintiffs' boilerplate objections, including "general objections," explanation-less "undue burden" objections and "to the extent that" objections, failed the specificity required in the rule. These objections concealed from opposing counsel and the court the actual problem with each request and failed to explain what was preventing the requested discovery. Smash Technology, LLC v. Smash Solutions, LLC, 335 F.R.D. 438 (D. Utah 2020).

Boilerplate objections are insufficient to present a valid objection. The responding party must present reasoning and specifics for an objection. Simply objecting that discovery requests are overly broad, oppressive, and irrelevant, without showing specifically how each request is not relevant or how each question is overly broad, is inadequate to voice a successful objection. Ceuric v. Tier One, LLC, 325 F.R.D. 558 (W.D. Pa. 2018).

**Two amendments work together**
"The specificity of the objection ties to the new provision in Rule 34(b)(1)(C) directing that an objection state whether any responsive materials are being withheld on the basis of that objection." Committee Note to 2015 amendment.

**Specificity requirement should be interpreted realistically**
Committee Note to 2015 amendment.

**See also**
Merely asserting a boilerplate objection that the discovery sought is vague, ambiguous, overbroad, etc., is not sufficient. It is now required that the objecting party specify how each request is deficient and articulate the particular harm that would accrue to the responding party if it were required to respond. The court concluded the opinion with the following admonition in capital letters: "NO MORE WARNINGS. IN THE FUTURE, USING 'BOILERPLATE' OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR SUBSTANTIAL SANCTIONS." Liguria Foods, Inc. v. Griffith Laboratories, Inc., 320 F.R.D. 168, 192 (N.D. Iowa 2017).

It was not sufficient to respond to a document request by saying that production would be "subject to" and "without waving" objections. The rules require the responding party to describe the portions of the request that are said to be objectionable and specify what will be produced. Heller v. City of Dallas, 303 F.R.D. 466 (N.D. Tex. 2014), **quoting Wright, Miller & Marcus**.

**Requirement to specificity what has been withheld should be interpreted realistically**
Committee Note to 2015 amendment.

**Staged production**
"When it is necessary to make the production in stages the response should specify the beginning and end dates of the production." Committee Note to 2015 amendment.

**Propose guidelines**
Federal Sav. and Loan Ins. Corp. v. Village Creek Joint Venture, 130 F.R.D. 357, 360 (N.D. Tex. 1989). In this case it was held that the responding party is not required to allow all of the inspecting parties to inspect simultaneously, but may allow inspection only on a sequential basis provided the inspection schedule does not prejudice the interests of a party opponent.

Case 1:25-cv-25893-BB  Document 94-4  Entered on FLSD Docket 05/19/2026  Page 54 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

**14**

**Hide documents**

The Advisory Committee noted, in proposing the 1980 amendment described in the text, that it had been advised that "[i]t is apparently not rare for parties deliberately to mix critical documents with others in the hope of obscuring significance." 85 F.R.D. 521, 532.

**15**

**Produced as kept in ordinary course**

FDIC, acting as receiver for a failed bank, is not required to label and organize the bank's records to respond to a request for production in an action under FIRREA against the bank's former directors and officers. There were no allegations that the records would be disorganized. W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico, 293 F.R.D. 68 (D.P.R. 2013).

Even if plaintiff association's records were so disorganized that one could say that its production did provide defendant with its file as kept in its ordinary course, that was not sufficient in this case. Instead, the association's record-keeping was so disorganized that it did not comply with the discovery rule's requirement. Plaintiff produced approximately 100,000 unsegregated and uncategorized documents in banker's boxes. Mizner Grand Condominium Ass'n, Inc. v. Travelers Property Cas. Co. of America, 270 F.R.D. 698 (S.D. Fla. 2010).

A party arguing that it produced documents as they were kept in the usual course of business bears the burden of showing that the documents were so kept. Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc., 262 F.R.D. 365 (D. Vt. 2009).

A party choosing to produce documents as maintained in the ordinary course of business bears the burden of demonstrating that the documents were in fact produced consistent with that mandate. S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403 (S.D. N.Y. 2009).

A party choosing to produce documents as they are maintained in the usual course of business bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate. It is not sufficient merely to represent to the district court that the documents have been so produced. Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331 (N.D. N.Y. 2008).

The party who chooses to produce documents as kept in the ordinary course of business has the burden to show that the documents were so produced. The mere assertion that they were so produced is not sufficient, and in this case plaintiff had not satisfied the burden. Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535 (D. Kan. 2006).

In responding to request for documents, plaintiff was not required to label documents pursuant to categories set forth in defendant's discovery requests. Plaintiff produced documents as they were kept in the usual course of business. Doe v. District of Columbia, 231 F.R.D. 27 (D.D.C. 2005).

Defendant's response to a document request in a products liability suit was inadequate. Defendant invited plaintiffs' attorney to peruse four oversized file cabinets in a discovery repository, there was no index provided, and the documents were not organized by date, subject matter, or in any other way. Wagner v. Dryvit Systems, Inc., 208 F.R.D. 606 (D. Neb. 2001).

Mortgage company, which in response to request for production of documents produced documents in box in no apparent order and not labeled as responsive to any particular request, was not entitled to protective order regarding interrogatory submitted by microfilming service provider in its breach of contract action requesting mortgage company to say which documents were in response to specific, numbered requests for production. Rather, mortgage company would be required to organize produced documents in manner clearly indicating which of documents responded to specific requests for production. T.N. Taube Corp. v. Marine Midland Mortg. Corp., 136 F.R.D. 449 (W.D. N.C. 1991).

Defendants in antitrust class actions would be required to segregate requested documents to correspond to terms of plaintiffs' request for production of those documents. Bd. of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 23 (N.D. Ill. 1984).

**See also**

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 55 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

Even though a new provision in Rule 34(b)(2)(E) was added to the rule in 2006 and applied to production of electronically stored information, the previously existing organizational mandate of the rule continued to apply to information in this form. "Over time, courts began to interpret amended Rule 34(b) to impose affirmative requirements on all massive productions of documents, with the logic being that the enormity of production, alone, could render it useless to the requesting party even without any deliberate mixing on the part of the producing party. The amendment had the effect of requiring the producing party to turn documents over in an organized, comprehensible arrangement — either by specifically indexing each document to the request to which it was responsive, or, failing that, by turning over the documents with the business's filing system or other organizational structure still intact and usable by the requesting party." Anderson Living Trust v. WPX Energy Production, LLC, 298 F.R.D. 514, 522 (D.N.M. 2014).

**Compare**
Although a party is required to produce documents as kept in its usual course of business, it is not thereby required to maintain or retain an old manner of storage that would otherwise be discarded merely to ensure discovery in the same format. In this case, the FDIC had no duty to maintain the filing system of a failed bank that it took over in order to ensure that discovery responses would adhere to that arrangement of the data. F.D.I.C. v. McCaffree, 289 F.R.D. 331 (D. Kan. 2012).

Defendants' initial production of 350 boxes of records of a business whose relevant activities had ceased in 1998 and which had been stored since then in no particular order was not production of documents "as they are kept in the usual course of business." Rather, the documents were produced as kept in the usual course of storage. In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 351 (N.D. Ill. 2005).

**Commentators' view**
"Which party is entitled to select the form (i.e., as kept in the usual course of business or corresponding with categories in the request) in which the documents will be produced? Commentators have generally assumed that the discovered party has that option and thus can ignore a request that the documents be organized according to certain categories. But this is not so obvious. * * * The discovered party should have to show that producing the documents as kept in the usual course of business will not appreciably interfere with the ability of the discovering party to find the documents relevant to those categories. If the filing system is not adequate for finding the relevant documents without undue delay and expense, then the discovered party should not be allowed to produce the documents as kept unless it provides additional resources to aid the discovering party." Sherman & Kinnard, Federal Court Discovery in the 80's—Making the Rules Work, 95 F.R.D. 245, 255; 258 (1981).

**See also**
Production of 7000 pages of documents in no apparent order violated discovery rule requiring party to organize and label documents produced for inspection. Stiller v. Arnold, 167 F.R.D. 68 (N.D. Ind. 1996).

**Existing practice**
The argument is that Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73 (D. Mass. 1976), shows that Rule 34 imposed a "duty to produce documents in a manner in which they can reasonably be used by the opponent." See Sherman & Kinnard, Federal Court Discovery in the 80's—Making the Rules Work, 95 F.R.D. 245, 256 (1981). In the Kozlowski case, plaintiff had been injured by burning pajamas bought from Sears and sought discovery of documents relating to other burning pajamas complaints received by Sears. Although the discovery might be overbroad in that it sought material relating to time periods in the distant past and regarding pajamas sold by Sears but manufactured for it by other companies not involved in production of the pajamas used by plaintiff, a major objection interposed by Sears was that, because it historically had indexed claims alphabetically by name of claimant, too much effort would be required to locate the ones involving burning pajamas. Sears offered to allow plaintiff to sort through the records to try to find the desired items.

The court rejected this argument: "The defendant may not excuse itself from compliance with Rule 34, Fed.R.Civ.P., by utilizing a system of record–keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition. To allow a defendant whose business

Case 1:25-cv-25893-BB Document 94-4 Entered on FLSD Docket 05/19/2026 Page 56 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." 73 F.R.D. at 76.

The result reached in Kozlowski seems right, but it does not show that there was a duty to produce records in a particular manner. Instead, the issue there was whether the defendant would have to search out and produce for plaintiff the items plaintiff requested, or could impose on plaintiff the burden of finding them among a mass of unrequested and irrelevant materials. Rule 34 does not permit a responding party to deluge a party in this manner with materials not requested rather than finding the ones that were sought. True, a party responding to an interrogatory may sometimes, under Rule 33(c) impose such a burden on the discovering party. See § 2178. Except for the power of the court to excuse production because the burden is too great, there is no similar option under Rule 34 for the party responding to discovery.

To say that the responding party is obliged to locate and produce the materials requested does not, however, speak to the manner of production once the requested materials are located. The 1980 amendment to Rule 34(b) precludes the responding party from rearranging the items it has retrieved to hide them among other materials that are also being produced. Whether or not that directive really should have been necessary, since such behavior is so obviously improper, there does not seem to be a basis for saying that litigants formerly had a right to compel producing parties to deliver materials organized in the way they requested. For the reasons set out below in text, this interpretation of amended Rule 34(b) appears unwise.

**But see**
"That the option afforded by Rule 34(b) as amended no longer belongs exclusively to defendants is beyond serious doubt. Otherwise the very purpose of the 1980 amendments would be thwarted." Bd. of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 23, 36 n. 20 (N.D. Ill. 1984).

**Selecting items requested**
Plaintiff would be sanctioned for producing unrelated, non–responsive documents. Rothman v. Emory University, 123 F.3d 446 (7th Cir. 1997).

**Production of entire documents**
"Rule 34 of the Federal Rules of Civil Procedure—which governs the production of documents— provides for the production of entire 'documents,' rather than specific phrases, pictures, paragraphs, sentences, or words contained within a document. See, e.g., Fed. R. Civ. P. 34(a)(1)(A), (b)(2)(E). Thus 'courts view entire documents as either relevant or irrelevant; they do not weigh the relevance of particular provisions.'" Columbus Life Insurance Company v. Wilmington Trust, N.A., 344 F.R.D. 207 (D.N.J. 2023).

**Manner of organization**
Thus, in Bd. of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 23 (N.D. Ill. 1984), the court appeared to adopt this approach in ordering that defendants segregate out requested items in response to one of plaintiffs' requests. The court reasoned: "Because the documents (if they exist) would reflect payoffs, plaintiffs can legitimately fear defendants' unwillingness to segregate the documents masks a hope to obscure. * * * In this case, the burden to a stranger of rummaging through what may be massive job files to find the 'smoking gun,' coupled with the inculpatory nature of the documents covered by the request, justified placing the burden on the discovered rather than the discovering party." Bd. of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 2336 & n. 20 (N.D. Ill. 1984).

Authority for requiring production of such file organization information can be found in cases that require a party producing computerized materials to provide either manuals or other assistance that will permit the requesting party to make use of these items. See Sherman & Kinnard, Federal Court Discovery in the 80's—Making the Rules Work, 95 F.R.D. 245, 256–257 (1982).

**Compare**
The "data dump" response by defendant to plaintiff's Rule 34 request was not an acceptable discovery practice. Defendant produced 93 boxes of irrelevant documents and did not at all detail the documents

Case 1:25-cv-25893-BB Document 94-4 Entered on FLSD Docket 05/19/2026 Page 57 of 102

§ 2213 Response to Request, 8B Fed. Prac. & Proc. Civ. § 2213 (3d ed.)

it produced into topics, categories, or other subjects. Clientron Corp. v. Devon IT, Inc., 310 F.R.D. 262 (E.D. Pa. 2015).

19.30    **Discovery about search techniques**
A query used to retrieve electronically stored information is a "writing" subject to production. The search algorithm was clearly relevant to plaintiffs' understanding of how defendant accurately responded to discovery. Barnes v. District of Columbia, 289 F.R.D. 1 (D.D.C. 2012).

19.50    **Sections addressing electronic discovery**
See §§ 2218; 2219.

20    **Make copies**
Where, in civil–rights action against school district, school district made documents sought by plaintiff in discovery available for inspection and copying by plaintiff in business office of district, district would not be required to make copies for use of plaintiff. Lenard v. Greenville Mun. Separate School Dist., 75 F.R.D. 448 (N.D. Miss. 1977).

21    **Form for producing electronically stored information**
See § 2219.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 50373

2025 WL 50373
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Lexi Leigh ZARFATI, et al., Plaintiffs,
v.
ARTSANA USA, INC., Defendant.

CASE NO. 24-CV-21372-MOORE/Elfenbein
|
Signed January 7, 2025
|
Entered January 8, 2025

**Attorneys and Law Firms**

John Richard Byrne, Rachel Wagner Furst, Maderal Byrne & Furst, PLLC, Coral Gables, FL, Nicole Estrada, Maderal Byrne & Furst, PLLC, Miami, FL, for Plaintiffs.

Andrew M. Kasabian, Pro Hac Vice, Christopher Chorba, Pro Hac Vice, Jeremy S. Smith, Pro Hac Vice, Michael John Holecek, Gibson, Dunn and Crutcher LLP, Los Angeles, CA, Michael M. Polka, Pro Hac Vice, Gibson, Dunn and Crutcher LLP, Palo Alto, CA, for Defendant.

## ORDER GOVERNING ELECTONICALLY STORED INFORMATION PROTOCOL

MARTY FULGUEIRA ELFENBEIN, UNITED STATES MAGISTRATE JUDGE

**\*1  THIS CAUSE** is before the Court on Plaintiffs Lexi Leigh Zarfati, Michelle Williams, Jordana Morris, Maria Angelica Navas, and Grant West's ("Plaintiffs") Motion for Entry of Order Governing ESI Protocol (the "Motion"), ECF No. [38]. Defendant Artsana USA, Inc. ("Defendant") filed a Response in Opposition to the Motion (the "Response"), ECF No. [42], to which Plaintiffs filed a Reply (the "Reply"), ECF No. [45]. After the Parties fully briefed the Motion, Plaintiffs filed an Unopposed Motion for Status Conference, ECF [49], in an apparent effort to expedite the Court's ruling on the Motion. Having reviewed the Parties' filings and the relevant law, the Motion, **ECF No. [38]**, is **GRANTED** and Plaintiffs' Motion for Status Conference, **ECF No. [49]**, is **DENIED AS MOOT**. The Court explains its reasoning below.

In the Motion, Plaintiffs explain that they "need certain discovery from [Defendant] that will take the form of electronically stored information" ("ESI") to "prevail at the class certification stage and at trial[.]" ECF No. [38] at 2. To that end, "Plaintiffs have attempted to negotiate [with Defendant] an ESI protocol that will both efficiently identify relevant custodians, data sources, and search terms to ensure relevant information is produced in a usable format." *Id.* Plaintiffs explain, however, that Defendant "insists on keeping its relevant custodians and data sources to itself (or at least forcing Plaintiffs to try and discover the same through interrogatories and depositions)." *Id.* Plaintiffs argue that "such a process [is] needlessly inefficient, [which] seems [to be] designed to obfuscate and delay the search for relevant information." *Id.*

In the Response, Defendant opposes Plaintiffs' proposed ESI protocol, characterizing it as "highly technical" and one-sided. ECF No. [42] at 1. Defendant explains that it "is a small Pennsylvania-based company" and that the ESI protocol Plaintiffs propose is better suited to "a complex putative class action brought against a Fortune 50 company involving complicated banking and financial information, including detailed provisions about negotiating over appropriate data sources, custodians, and search terms." *Id.* at 2-3. Furthermore, Defendant takes issue with Plaintiffs' proposed ESI protocol because it requires the Parties to "waste time negotiating search terms, which custodians should be searched, and which data sources [Defendant] should collect from." *Id.* at 7.

Finally, in Reply, Plaintiffs argue that Defendant's "proposed ESI protocol appears to purposely hinder the search for potentially damaging documents, mainly by providing zero visibility into — and zero procedures governing — the company's efforts to locate responsive materials." ECF No. [45] at 1. Additionally, Plaintiffs argue that the instant case "is a nationwide class action lawsuit" that requires a "thorough and comprehensive" ESI protocol that accounts for "the significant geographical scope and technical nature of the case[.]" *Id.*

The Court begins its discussion of the issues with Defendant's point that Plaintiffs filed the Motion in contravention of the Court's Order Setting Discovery Procedures, which plainly states that "the parties shall not raise any discovery disputes by filing written discovery motions." ECF No. [6] at 2 (footnote call number omitted). The Parties' dispute over which ESI protocol to implement is a discovery issue the

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)
2025 WL 50373

Court could have resolved more efficiently at a discovery hearing. However, as the Parties fully briefed the instant Motion, the Court will rule on it in this Order.

**\*2** Notwithstanding its procedural posture, the Motion is convincing. Contrary to Defendant's assertions, this is not a run-of-the-mill lawsuit nor is Defendant a mom-and-pop business. To Defendant's first claim, this is a class-action lawsuit that seeks to represent putative class members throughout the United States, involves consumer-protection claims concerning an allegedly known design defect in the braking mechanism of various stroller models, and seeks over $5,000,000 in damages. *See* ECF No. [1] at ¶¶ 14, 114-47. Indeed, recognizing that this is not a standard case, the Parties agreed in their Joint Scheduling Report that this case "is appropriate for a modified *complex* case management track under Local Rule 16.1(a)(2)." *See* ECF No. [22] at 2 (emphasis added). Due to the potential large scale of this case, the Court is inclined to implement a thorough ESI protocol that facilitates the full and efficient disclosure of discoverable ESI. *See Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 08-CV-355, 2018 WL 4381294, at *8 (N.D. Fla. May 29, 2018) ("The management and retrieval of ESI has now become front and center in most complex litigation cases."), *report and recommendation adopted*, No. 08-CV-355, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018). As for Defendant's other point, while it may be true that it only "has 58 employees[,]" ECF No. [42-7] at ¶ 2, the Complaint alleges that Defendant is part of a larger company with a global footprint, selling goods in approximately 120 countries, ECF No. [1] at ¶ 21, meaning it likely possesses voluminous quantities of ESI connected with its business.

Additionally, Defendant's objection — that the ESI protocol Plaintiffs propose is one-sided and, for that reason, should not be entered — is unconvincing. Although it is true that Plaintiffs' proposed ESI protocol only applies to Defendant, the Motion, Response, and Reply make clear that Defendants' ESI will be subject to searches and production during discovery, as further explained below. The same cannot be said of Plaintiffs' document production. Defendant's Response does not provide the Court with any information about any discovery requests propounded on Plaintiffs that involve the production of extensive ESI or otherwise substantiate the notion that Plaintiffs' ESI will be at issue. Thus, as the record currently stands, there is no need for an ESI protocol governing Plaintiffs' document production. With that said, should the discovery landscape change and it becomes clear that Plaintiffs will be required to search for and

produce a significant amount of ESI, the Court encourages the Parties to confer with one another to determine whether an ESI protocol relating to Plaintiffs' document production is necessary and whether the instant ESI protocol should be modified accordingly.

Likewise, the Court is not persuaded by Defendant's argument that it essentially has *carte blanche* to decide the manner in which it searches for and gathers discoverable ESI in this case. To support this position, Defendant quotes the Sedona Principles, which state that "[a] producing party is 'best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.' " ECF No. [42] at 7 (quoting The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, Principle 6, 118 (2018)). However, a producing party's right to set its own protocol for producing ESI is not unconstrained, as the protocol it follows must be reasonable. *See Nichols v. Noom, Inc.*, 2021 WL 948646, at *2 (S.D.N.Y. Mar. 11, 2021) ("[A] producing party is best situated to determine its own search and collection methods *so long as they are reasonable*." (emphasis added)). For instance, the court in *Noom* agreed to allow the producing party to proceed with an ESI protocol of its choosing because it showed that the protocol proposed by the opposing party would "substantially increase its costs and result in a significant number of duplicates in its review population that cannot be culled through deduplication." *Id.* (quotation omitted). Similarly, in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2021 WL 5299847, at *4 (S.D. Fla. Nov. 15, 2021), the court approved the class plaintiffs' proposed protocol for searching their own ESI, but only did so after reviewing the protocol and determining that it was consistent with the requirements of Rule 26(g)(1) that a party conduct a " 'reasonable inquiry to locate materials responsive to a discovery request.' " Here, Defendant's proposed ESI protocol does not address *how* it would conduct a reasonable inquiry when searching its materials.

**\*3** Significantly, "[t]he discovery process, particularly when ESI is involved, is intended to be collaborative." *Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*, No. 19-CV-81320, 2020 WL 3581372, at *3 (S.D. Fla. July 2, 2020) (citing Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary*, https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.). Following that principle, this District's Local Rules encourage parties to collaborate with

2025 WL 50373

one another at the earliest stages of the case to think about and discuss the impact of ESI on the potential discovery. *See* S.D. Fla. L.R. 16.1(b)(2)(K)(iii) (requiring the parties to include a "written report outlining the discovery plan and discussing" "when the parties have agreed to use the ESI Checklist available on the Court's website ..., matters enumerated on the ESI Checklist"). And the District's ESI Checklist contemplates that the parties will informally discuss: (1) "[i]dentification of systems from which discovery will be prioritized (e.g., e-mail, finance, HR systems)"; (2) "[d]escriptions and location of systems in which potentially discoverable information is stored"; (3) "[h]ow potentially discoverable information is stored;" and (4) "[h]ow discoverable information can be collected from systems and media in which it is stored." *See* https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1.pdf (last visited Jan. 7, 2025). Consistent with the foregoing, courts in this District have not just encouraged but have required parties to confer on matters, such as relevant ESI sources, custodians, search terms, and a proposed ESI protocol. *See Equal Emp. Opportunity Comm'n,* 2020 WL 3581372 at *3; *see also Wyndham Vacation Ownership, Inc. v. Totten Franqui Davis & Burk, LLC,* No. 18-81055-CIV, 2019 WL 7905017, at *1 (S.D. Fla. Feb. 19, 2019)* ("The parties shall continue to meet and confer on ESI production issues, including search terms and custodians."); *In re Altisource Portfolio Sols., S.A. Sec. Litig.,* No. 14-81156-CIV, 2016 WL 6917231, at *2 (S.D. Fla. Nov. 10, 2016)* (requiring non-party to provide the lead plaintiff with a list of search terms and custodians used in connection with the discovery production and allowing the lead plaintiff to thereafter file a motion to modify the search terms and custodians, if necessary). Despite this, Defendant seems resistant to sharing with Plaintiff (or the Court) how it intends preserve, search for, and collect the responsive ESI in the case, leaving the Court unable to assess the reasonableness of the proposed methods.

Turning to Defendant's proportionality argument, Defendant claims that the ESI protocol Plaintiffs propose is disproportionate to the needs of the case, but it does very little to substantiate this claim. *See* ECF No. [42] at 7. Instead, Defendant relies on the conclusory assertions that (1) "[m]ost of Plaintiffs' requests for production are 'sufficient to show' requests"; (2) "[t]here is no need to engage in search term and custodian negotiations when material responsive to these requests can be gathered through a directed ask or collection"; (3) "[m]any other requests are focused on 'documents,' not 'communications,' and therefore do not require any search

of emails" and (4) "[r]equiring that the parties engage in custodial and search terms negotiations when a detailed email review is not required for many of these requests is a complete waste of resources and disproportionate to the needs of the case." *Id.* These vague and unsupported assertions standing alone do not dissuade the Court from entering an ESI protocol that requires the Parties to confer and identify search terms, custodians, and sources to be searched to facilitate the disclosure of discoverable ESI, especially when a review of various outstanding discovery requests reveals that electronic communications are at issue. Indeed, in response to Plaintiffs' First Request for Production Numbers 5, 6, and 9 and Plaintiffs' Second Request for Production Numbers 1 and 5, Defendant will be required to search for, collect, and produce e-mail communications and other ESI. *See* ECF No. [42-4], Request No. 5 (agreeing to produce "Documents and Communications regarding ... the development and testing of the Linked Brake Strollers' braking Mechanism, without regard to time period"); Request No. 6 (agreeing to produce "Documents and Communications regarding or discussing any incidents, problems, complaints, or defects regarding the Linked Brake Strollers' braking mechanism, without regard to time period"); Request No. 9 (agreeing to produce "Documents regarding, and Communications sent to or received from, Plaintiffs"); ECF No. [42-5], Request No. 1 (agreeing to produce "Documents and Communications regarding the review by LauraTwinMom on the albeebaby.com website and regarding the representation that 'This product review was collected by the manufacturer,'" without regard to time period); and Request No. 5 (agreeing to produce "Documents and Communications regarding the review by 'ana' on the Target.com website, including Documents sufficient to identify the member of the 'Chicco Brand Experts team' who responded to ana's review) [1] . Thus, contrary to Defendant's conclusory assertions, the Court agrees with Plaintiffs that multiple discovery requests in this case will require preservation, searches, and collection of ESI, making a protocol appropriate and proportional to the needs of the case.

**\*4** In addition to the Parties' general arguments concerning their competing ESI protocols, Plaintiffs specifically object to Defendant's proposed format for producing discoverable ESI on five fronts. *See* ECF No. [38] at 6. However, Defendant made clear in its Response that only two of those five objections remain unresolved. *See* ECF No. [42] at 9. The objections the Court must resolve are: (1) whether the ESI protocol entered by the Court should allow "email threading" and (2) whether the ESI protocol entered by the Court

2025 WL 50373

should include language stating that it is governed in part by Pennsylvania law. *See* ECF No. [38] at 6; ECF No. [42] at 9. The Court sustains both objections.

First, Plaintiffs claim that if the ESI protocol allowed for "email threading," it would be impossible to use "the email fields for discrete searching." ECF No. [38] at 6. Defendant opposes this position, arguing that "[t]hreaded emails are still searchable." ECF No. [42] at 9. Defendant also cites two cases that permitted "email threading," but the Court finds that they provide little support for Defendant's position. The first case Defendant cites is *Rabin v. PricewaterhouseCoopers LLP*, and from that case Defendant relies on the following language: "[w]here multiple emails are part of a single chain or 'thread,' a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages[.]" 2016 WL 5897732, at *1 (N.D. Cal. Oct. 11, 2016). When citing that language from *Rabin*, Defendant leaves out the crucial fact that it takes the quoted language from an agreed ESI protocol. The Court will not rely on language grafted from an agreed ESI protocol to support permittance of "email threading" in the instant case absent factual context that would explain why "email threading" is also appropriate here. The second case Defendant cites is *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131 (N.D. Cal. June 2, 2023). While *Meta* provides better support for Defendant's position, this case alone is insufficient to sway the Court because, in *Meta*, the court in deciding to allow "email threading" relied on a consultant's statements that "production of [ ] metadata is not an industry standard practice [that] would require significant customized work ... and would add time and complexity to the ESI production process[.]" *Id.* at *1. Neither Party has sufficiently explained the practice of "email threading" such that the Court could determine whether the findings in *Meta* are relevant to the instant case. *See generally* ECF No. [38] at 6; ECF No. [42] at 9; ECF No. [45] at 4. The one thing the Court can discern from the Parties' respective explanations of "email threading" is that it could potentially make the review and discovery of relevant information more difficult. Mindful that the "Federal Rules of Civil Procedure strongly favor full discovery whenever possible[,]" the Court will not include a practice in its ESI protocol that makes discovery more difficult absent convincing legal support. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citing Fed. R. Civ. P. 26 (b)(1)).

Second, Plaintiffs object that Defendant's proposed "Clawback Provision" contains language stating that

Pennsylvania law, in part, governs the ESI protocol. *See* ECF No. [38] at 6. Defendant, for its part, argues that "[p]arties can stipulate to particular law[.]" ECF No. [42] at 9. However, Plaintiffs clearly do not agree to such language and this Court has already entered the Stipulated Protective Order in which it lays out the procedure for the inadvertent production of privileged or work-product protected information (i.e. a claw-back provision). *See* ECF No. [40] at ¶16. The Court declines to include a claw-back provision in the ESI protocols that may conflict with a previously entered Order in the case.

**\*5** With these considerations in mind, a robust ESI protocol appears appropriate. A robust ESI protocol will aid the parties in identifying discoverable ESI, thus helping the Parties complete discovery in this case by Judge Moore's discovery deadline. *See* ECF No. [49] at ¶ 5 ("Because discovery in this case closes on April 18, 2025, the Plaintiffs submit that the timing of the Court's resolution of Plaintiffs' Motion for Entry of ESI Protocol is important to the progress of the case."). Furthermore, a comprehensive ESI protocol will help "each party fulfill[ ] its discovery obligations without direction from the court or opposing counsel" by setting forth procedures that dispel ambiguities that might otherwise give rise to discovery disputes between the Parties requiring the Court's intervention. Sedona Principles, 19 Sedona Conf. J. at 118.

As Defendant has not proposed its own alternative protocols for preserving, searching for, and collecting the ESI in the case, the Court will adopt Plaintiff's proposed protocols, with some minor modifications.[2] Further, the Court notes that the ESI protocol Plaintiffs propose more closely aligns with the objectives of the District's ESI Checklist. For example, as discussed above, the section titled "Informal Discovery About Location and Types of Systems" of the checklist directs parties to identify "systems from which discovery will be prioritized[.]" *See* https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1.pdf (last visited Jan. 7, 2025). And in another section, the checklist urges parties to identify "[s]ources of ESI most likely to contain discoverable information" and "search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI[.]" *Id.*

For the foregoing reasons, the Motion, **ECF No. [38]**, is **GRANTED** and Plaintiffs' Motion for Status Conference, **ECF No. [49]**, is **DENIED AS MOOT**. The ESI protocol the Parties will adhere to in this case is as follows:

2025 WL 50373

## A. Definitions

1. "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

2. "**Defendant**" means and refers to the named defendant in the above-captioned matter(s), as well as any later added defendants, as well as their directors, principals, employees, agents, and affiliated companies.

3. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

4. "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), image files (e.g., jpg), and video and voice files.

5. "**Electronically stored information**" or "**ESI**": Any Document stored or transmitted in electronic form, including, but not limited to, email.

6. "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

7. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to."

 **\*6** 8. "**Load files**" means electronic files provided with a production set of documents and images used to load that production set into Plaintiffs' document review platform, and correlate its data within that platform.

9. "**Metadata**" means: (i) structured, i.e., fielded, information embedded in a native file which describes, inter alia, the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production; and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device, the custodian, or non-custodial data source from which it was collected, the date, the subject line, and the author and recipient of the document.

10. "**Media**" means an object or device, real or virtual, including but not limited to a disc, removable storage device, tape, computer, or other device on which data is or was stored.

11. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Defendant in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

12. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing and creating a file containing visible text within an image.

13. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

14. Reference to the singular shall also be deemed to refer to the plural and vice-versa.

15. "**Responsive**," "**Relevant**," and "**Discoverable**" are used interchangeably and each shall be construed to encompasses the broadest possible scope.

16. "**Tagged Image File Format**" or "**TIFF**": The CCITT Group IV graphic file format for storing bit-mapped images of ESI.

17. "**Hash Value**": The unique numerical identifier assigned to a file, a portion of a file, or a group of files based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files

## B. General Agreements

1. Ongoing Cooperation among the Parties. The parties agree to continue to consult and cooperate reasonably as discovery proceeds. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

2025 WL 50373

2. <u>Discovery</u>. The discovery standards set forth in Federal Rules of Civil Procedure shall apply to discovery in this action. The Parties agree to cooperate in identifying appropriate discovery.

3. <u>Scope</u>. This Protocol supplements the Federal Rules of Civil Procedure, the Court's Local Rules, and any other applicable orders or rules. Nothing in this Protocol is intended to alter or affect any party's rights or obligations under any order by the Court, but shall be construed, wherever possible, as consistent with the Court's orders. In addition, nothing in this Protocol establishes any agreement as to either the temporal or subject-matter scope of discovery in this case.

**C. Confidentiality Treatment**

 **\*7** 1. The legend affixed to Documents as defined by, and subject to, the terms of the Stipulated Protective Order entered separately in this case. *See* ECF No. [40].

**D. Preservation**

1. Defendant represents that it has issued litigation hold notices to those custodians with data and persons or entities responsible for maintenance of non-custodial data, which possibly contain discoverable information and have established procedures to ensure that those notices have been received, understood, and appropriately acted upon.

2. All backup, disaster recovery, or archive media which may contain discoverable ESI that is not otherwise available are being preserved.

3. All processes and procedures which would result in the elimination or transfer to a less accessible medium of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced have been suspended.

4. **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigation**, each Defendant will identify all ESI preservation systems, including back-up, archive, and disaster recovery systems as well as all associated policies, processes and procedures, including those related to the deletion, removal or transfer of data from a system or location.

**E. Defendant's Document and Data Sources**

1. **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigation**, each Defendant shall identify and describe all non-custodial data sources which possibly contain discoverable information.

2. Sources of non-custodial documents include, without limitation, databases, file servers, SANs, NASs, email servers, web servers, on line data stores such as Dropbox, Box and Google Drive, on line email systems such as Google Mail, communication or coordination platforms such as Slack, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media, source code repositories, and hard copy document repositories. Information that serves to identify or locate such material, such as file inventories, file folders, indices and metadata, are also included in this definition.

3. **Within twenty-one (21) days** from entry of this Order, or, for a Defendant served after the entry of this Order, **within twenty-one (21) days from entry of an appearance in this litigation**, the Defendant shall identify the names, titles and roles of all custodians, currently employed and formally employed, who possibly have discoverable information.

4. Sources of custodial documents and ESI include, without limitation, network drives, local hard drives, network home or personal file shares, removable storage, email, on-line data storage or online backup services such as Dropbox or Google Drive, messaging applications, phones, tablets, social media, and physical files.

5. Plaintiffs may identify additional custodial or non-custodial data sources for inclusion under this order. Plaintiffs reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources whose relevance was discovered after the initial Defendant and Plaintiffs designations, or for other good cause shown. If the Defendant objects to the inclusion of such non-custodial or custodial sources, the Parties will meet and confer to resolve the matter. If the Parties cannot reach resolution, the Court or its designee will determine the matter.

2025 WL 50373

**\*8** 6. Documents and ESI from identified custodial and non-custodial data sources will be preserved pending identification of data to be produced into this litigation.

7. Defendant has a continuing obligation to identify any other custodial and non-custodial data sources that may contain information relevant to this litigation and preserve them.

8. <u>Disputes Concerning Preservation and Collection</u>. If there is a reasonable dispute concerning the scope of a party's preservation or collection efforts, before discovery about such efforts is initiated, the parties or their counsel shall meet and confer.

9. <u>Potentially Non-Discoverable ESI</u>. Absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be not reasonably accessible and not discoverable:

a. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, but only to the extent that such data is duplicative of data more accessible elsewhere;

b. Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

c. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

d. On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

e. Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

f. Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices saved and discoverable elsewhere (such as, by way of example only, on a server, backup, laptop, desktop computer, or "cloud" storage);

g. Voicemail, including Telephone, VOIP voice, messages, on mobile devices such as cell phones, if otherwise stored in discoverable form, such as email, hard drives, servers, or, on server-based voicemail and if the voicemail is marked

not to be deleted or is saved in any type of media or are attachments to emails;

h. Text messages and instant messages not retained in the ordinary course of business, unless saved in any type of media or as attachments to emails;

i. Server, system, network, or software application logs;

j. As to potentially relevant data remaining from systems no longer in use that is unintelligible and/or unusable on the systems in use, the parties will meet and confer as to the type of systems no longer in use, software available that can read the data, data export potential, the data that is available, including the date range and type of data, type of information, and other relevant topics;

k. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved, by way of example only, as part of a laboratory report, part of or a report relating to statistical analysis or required to be maintained by any government or agency of any government;

**\*9** l. Structural files not material to individual file contents (e.g. .CSS, .XSL,.DTD,.) unless such files contain substantive data (for example, when used for data storage or transmission);

m. Operating System files that do not store substantive content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS);

n. Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (e.g. BAK, BIN, CFG, DBF, DAT, JS, , JAR, LUA, MSB, RES, WINNT, YTR,), and are not user-created programs (for example SAS programs).

10. <u>Designation of Discovery Requests</u>. Productions of hard copy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, shall be cross-referenced by Bates Number(s) as to the categories in the requests to which they are responsive as required by the Federal Rules of Civil Procedure.

11. <u>Redactions</u>. No redactions for relevance may be made within a produced document, data, or ESI item. For redacted items, all agreed-upon metadata fields will be provided and will include all non-redacted data. Redacted documents and

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)

2025 WL 50373

data shall be identified as such in the load file provided with the production. A document's status as redacted does not relieve the Defendant from providing all of the metadata required as agreed upon by the Parties. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive document contains both redacted and non-redacted content, Defendant shall produce the remainder of the non-redacted portions of the document and the text corresponding to the non-redacted portions in native format and Tiff images.

**F. Electronically Stored Information.**

1. <u>Production in Reasonably Usable Form</u>.

   a. Defendant shall produce electronically stored information in a reasonably usable form as set forth in Attachment A.

   b. All documents that contain color and are produced as images will be produced in color.

   c. If electronically stored information discoverable in this proceeding was previously produced in another legal proceeding. Defendant may elect to produce that information in the form in which it was previously produced. However, if the production does not conform with this Order, the Plaintiffs will not be deemed to have received such data in satisfaction of any of their demand.

2. <u>Enterprise Databases, Database Management Systems, Aggregated Data Sources and Other Structured Data ("Structured Data Systems")</u>.

   a. The parties will meet and confer to address what structured data systems the Defendant has which contain potentially relevant documents and/or data. The parties will meet and confer to discuss the documents and data potentially contained therein, the production and production format of discoverable documents and data contained in structured data systems, and/or applications that contain or can access structured or aggregated data.

   b. After assessing the information obtained concerning F(2)(a) above:

 **\*10** (1) if discoverable data from any Structured Data System can be produced in an already existing report, the Defendant may collect and produce the data in that report format. Neither the production of, nor Plaintiffs' acceptance of, such reports will waive Plaintiffs' rights to obtain the data in such reports in a more usable or comprehensive format (including native format), nor be used by Defendant as a factor to oppose Plaintiffs seeking the data in such reports in a more usable or comprehensive format (including native format);

(2) if an existing report form is not reasonably available, Defendant may make reasonable efforts to export from the Structured Data System discoverable information, including audit trails, settings info, data exclusion settings, and other relevant related information, in a format compatible with Microsoft Excel or Microsoft Access and may produce such information in that format. Neither the production of, nor Plaintiffs' acceptance of, such reports will waive Plaintiffs' rights to obtain the information in such reports in a more usable or comprehensive format (including native format), nor be used by Defendant as a factor to oppose Plaintiffs seeking the information in such reports in a more usable or comprehensive format (including native format).

3. <u>Known Responsive Materials Must Be Produced</u>. Documents and ESI known to the Defendant to responsive to a discovery request and/or relevant to the litigation shall be produced without regard to whether it was responsive to a search term, of high "relevance" by a TAR text classification algorithm, otherwise flagged as potentially responsive by another search technique, or otherwise identified unless Counsel specifically identifies the documents on the Privilege Log as being withheld pursuant to a specific permitted objection under the Protective Order.

4. <u>Discrete Document Collections</u>. Identified discrete document collections, by way of example and without limitation, include: substantially relevant folders of ESI segregated by Defendant or Defendant's employees, before or after the commencement of this litigation; documents submitted to and exchanged with domestic or foreign regulatory agencies or government entities such as the Consumer Product Safety Commission or the Federal Trade Commission; documents collected as part of expedited reporting and any post-market safety reports that must be submitted; documents required to be maintained by the U.S. Government or any agency therein as well as any foreign

*Zarfati v. Artsana USA, Inc.,* Not Reported in Fed. Supp. (2025)
2025 WL 50373

government or agency. Discrete Document Collections, shall not be reviewed for responsiveness or privilege and shall be produced in their entirety without regard to whether each document in the collection contains a search term or is classified of high "relevance" by a TAR text classification algorithm or otherwise is identified as potentially responsive by another search technique, unless Counsel specifically identifies the documents on the Privilege Log as being withheld pursuant to a specific permitted objection pursuant to the Stipulated Protective Order.

5. Documents with Insufficient Text. Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, TAR, or other technologies that rely primarily on text.

6. Mobile and Handheld Device Documents and Data. If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device. Pending such meet and confer and agreement, all such data will be preserved.

 **\*11**  7. Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources. Upon request, the Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

8. Use of Other Filtering or Culling Technology or Methodology. Prior to use or further use by Defendant other than those specified within this Protocol, the Parties must meet an confer to disclose and discuss any other proposed or use of technologies not as specified herein to identify or reduce the sources or number of potentially responsive documents identified for classification, or to be reviewed and/or produced (including but not limited to file type culling, email thread suppression, keyword or Boolean searching, de-duplication, filtering, clustering, or concept

searching). Use of such technologies to reduce the reviewable collection, production, or volume of materials to be collected or reviewed, other than as described within this protocol, requires the consent of the opposing party and will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties. The Defendant will also timely disclose any prior use of such filtering or culling.

9. Identification, Search and Filtering of ESI and Documents.

a. The parties will meet and confer for the purposes of identifying all sources of relevant documents and ESI for collection, review, and production, including but limited to the use of technology, technology assisted review, predictive coding, keywords and phrases, and other possible technology to reduce the volume size of the collection being considered for production. In any such discussion,

(1) If, after the Defendant has first disclosed the proposed technology and methodology to be used to reduce the volume size of the documents and ESI being considered for collection, review or production, any other party believes in good faith that use of the disclosed technology and methodology could result in deficiencies in production, the Parties will work collaboratively on any revisions to such technology and methodology. Any proposed technology and methodology shall be tailored to particular claims and defenses.

(2) Nothing in this section shall limit a Party's right reasonably to seek agreement from the other Party or a court ruling to modify previously agreed-upon uses of technologies and methodologies for the identification, search, and filtering of ESI and documents.

10. Email Threading. No email may be withheld because it is included in whole or in part in a more inclusive email.

11. Avoidance of Duplicate Production

a. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Defendant need produce only a single copy of responsive Duplicate ESI. A Defendant shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files, across all custodians and non-custodial sources). Entire document families may constitute Duplicate ESI. De-duplication

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 67 of 102

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)
2025 WL 50373

shall not break apart families; document families shall be de-duplicated only against other document families. Standalone documents shall only be de-duplicated against standalone documents. When the same Duplicate ESI exists in the files of multiple custodians, each custodian shall be individually listed in the OTHER_CUSTODIANS field identified in Paragraph A.14(c) of Attachment A.

**\*12** b. Defendant shall disclose the details of their methodology used or to be used to calculate the hash values of emails and email families.

c. The original file paths of each duplicate document prior to de-duplication shall be populated in a metadata field called OTHER_FILEPATHS.

d. The original filenames of each duplicate document prior to de-duplication shall be populated in a metadata field called OTHER_FILENAMES.

e. If the Defendant makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Plaintiffs to update the OTHER_CUSTODIANS, OTHER_FILEPATHS, and OTHER_FILENAMES fields. The overlay file shall include both all custodians, filepaths and file names listed in the OTHER_CUSTODIANS, OTHER_FILEPATHS and OTHER_FILENAMES fields in prior productions, and any custodians, filepaths and file name newly identified in the current supplemental production.

## G. Information Not Addressed in This Order

To expedite discovery of relevant evidence, the parties will discuss and attempt in good faith to resolve all issues involving information not addressed in this Order before bringing to these issues to the Court.

## H. No Waiver

By complying with this Order, Defendant waives no objection to the production of the documents, tangible items or things and ESI that is preserved, except to the extent the parties have agreed to the production or the court orders otherwise.

## I. Stipulated Protective Order

The terms of the Stipulated Protective Order governing inadvertent production of privileged information of ESI is subject to the Parties' rights under the Stipulated Protective

Order, ECF No. [40], the practices of the Court, and the rules to request the return of inadvertently produced documents.

**DONE and ORDERED** in Chambers in Miami, Florida on January 7, 2025.

Attachment A

A. Format and Processing Specifications for Defendant's Productions

A.1. Native Files. Any document produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include also be produced as Tiffs, indicating the production number of the native file and the confidentiality designation and stating "File Provided Natively" on the Tiff. The original document text shall be provided in a document-level UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained in the Tiff shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files infeasible, the Parties will confer to determine if there is a reasonable method to produce the file as a redacted native.

**\*13** a. Spreadsheets. All spreadsheets (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file and the redacted native file will be produced as provided herein with TIFF placeholder images. If spreadsheet files are produced as images, such images will display all content and data visible in any view in the native application.

b. Word Processing, Presentation, Image & PDFs. All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), image (e.g., .jpg, .gif), and PDF files shall be produced as native files with TIFF images. If redactions are required, the files may be produced as redacted TIFFs or as native files with TIFF placeholder images. If these file-types are produced as images, such images will display all content and data visible in any view in the native application.

c. Media Files. All media files, such as audio and video files and digital photographs, shall be produced as native files with TIFF placeholder images.

2025 WL 50373

d. <u>Digital Photos</u>. Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

e. <u>Emails</u>. Emails shall be produced as TIFF images with extracted text and the metadata as the parties have agreed.

f. <u>Less-Commonly Used File Types</u>. The Parties will meet and confer on the production format of less-commonly used file types.

A.2. Hard Copy documents, will be scanned to TIFF image format. In scanning, documents are to be produced as they were kept. For documents found in folders or other containers with labels, tabs, indexes or other identifying information, such indexes, labels, and tabs shall be scanned. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It. Defendant will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and maintain document relationship (i.e., attachment status). Original document orientation (*i.e.*, portrait v. landscape) should be maintained. Defendant's hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. OCR software must be set to the highest quality setting for any previously-unscanned paper documents and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language (*e.g.*, OCR of German documents must use settings that properly capture umlauts). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

A.3. <u>Image ("TIFF") Files</u>. Files produced in *.tif format will be single page black and white (or color in accordance with section F.1.(b)) *.tif images at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Image file names will be identical to the corresponding bates numbered images, with a ".tif" file extension. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file

from splitting across folders. If a file, *e.g.*, a PDF file, exceeds 500 *.tif images, the Defendant may produce the file natively rather than in *.tif format. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

**\*14**  (i) be consistent across the production;

(ii) contain no special characters or spaces; and

(iii) be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. All images of documents which contain comments, deletions, Post-Its, and/or revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user, will be processed such that all that data is visible in the image.

A.4. <u>Confidentiality</u>. The confidentiality treatment level for any item will be provided with the created data for that item in the field entitled "CONFIDENTIALITY TREATMENT." For items with no confidentiality requirements, the field will be left blank. Defendant will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

A.5. <u>File Text</u>. Except where a file's full text cannot be extracted (*e.g.*, when a file has been redacted under assertion of privilege or other protection from disclosure), full text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that cannot be extracted, the available *.tif image will be OCR'd or, if available, the redacted native file will have its text re-extracted, and file-level text will be provided. Extracted text is always preferred and should be produced where possible. Extracted text shall include all comments, revisions, tracked changes, redlines, speakers' notes, and text from documents with comments or tracked changes and all hidden and very hidden data, worksheets, slides, columns, and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to

Case 1:25-cv-25893-BB  Document 94-4  Entered on FLSD Docket 05/19/2026  Page 69 of 102

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)
2025 WL 50373

whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments. The extracted full text and/or OCR text shall be provided in separate, document level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files. The full path of the text file must be provided in the *.dat data load file.

A.6. Parent-Child Relationships. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

**\*15** A.7. Date Fields Time Zone. All documents shall be processed so as to show fielded dates and times in the Eastern time zone.

A.8. Family Groups. A document and all other documents in its attachment range and emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

A.9. Dynamic Fields. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.10. Embedded Objects. OLE embedded objects (embedded MS Office files, etc.), except for images embedded in emails, shall be extracted as separate files and treated as attachments to the parent document. Images embedded in emails shall not be produced separately. However, in the case of emails, if the embedded objects are images contained in a signature block, the embedded image file shall not be produced as a separate file, Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

A.11. Foreign Languages. To the extent any data exists in more than one language, the data will be produced in all such languages. All existing translations of non-English

documents to English will be produced, subject to claims of attorney-client privilege or work-product. If no English version of a file is available, the Defendant shall not have an obligation to produce an English translation of the data. Documents containing foreign language text must be produced with the extracted full text and if not possible, OCR text in separate, document level, UTF-8 with BOM encoded TXT files provided in a separate folder. OCR technology must use the appropriate settings for that language, (*e.g.*, OCR of German documents must use settings that properly capture umlauts).

A.12. Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR..Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.13. Production Numbers. Defendant shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14. Data and Image Load Files.
a. Load Files Required. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b. Load File Formats.

   i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

   **\*16** ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

   iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

2025 WL 50373

c. Fields to be Included in Data Load File. For all documents or electronic files identified as responsive and not privileged, the following metadata fields for each document or electronic file, if available at the time of collection and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product privilege and appropriately placed on the Privilege Log with required data or otherwise prohibited from disclosure by the terms in the Protective Order, will be provided in the data load file pursuant to subparagraph (a). The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced. **[TABLE APPENDED AT END OF ATTACHMENT]**.

A.15. Miscellaneous Provisions
a. Exception Files. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

b. De-NISTing. Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

c. Lost, Destroyed or Irretrievable ESI. If a Defendant learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Defendant shall timely comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

d. Encrypted or Password-Protected ESI. For any ESI that is produced in encrypted format or is password-protected, the

Defendant will provide the propounding party a means to gain access to those native files (for example, by supplying passwords.)

e. Encryption. To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted by Defendant. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption. All production volumes uploaded by Defendant via this file sharing document repository shall remain available for download for **no less than thirty (30) calendar days**. In such cases, the Defendant shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

**\*17** f. Production Media. The Defendant will use the appropriate electronic media (CD, DVD or hard drive) or secure electronic transfer for its ESI production, and, if physical media is being provided, will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. The Defendant will label the physical media with the applicable Defendant, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

A.16. General Rights and Obligations
a. Impact of Order on Other Obligations. Nothing in this agreement shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation. By preserving documents or ESI for the purpose of this litigation, the Defendant is not conceding that such material is discoverable nor are they waiving any claim of privilege.

b. Continuing Obligations. The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and periods set forth in this Order. This Protocol does not address or resolve

2025 WL 50373

any objections to the scope of the Parties' respective discovery requests.

c. Document Storage. During the pendency of this litigation, the Defendant shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the Plaintiffs and to preserve the original native format version of any ESI produced in non-native format.

d. Good Faith Compliance and Conferral Obligation. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties. The Parties shall reasonably cooperate in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and exchange of ESI in these proceedings and to further the exchange of information commenced at the Parties' Rule 26(f) Conference.

e. Proprietary Software. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer **within 30 days** of the parties reaching agreement to this order to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

f. Alternate Formats. Upon reasonable request made by the Plaintiff, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

**\*18** g. Third-Party Data. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

h. Subpoenas and FOIA Requests. If an Issuing Party issues a non-party subpoena or a FOIA request after the date of this Order, the Issuing Party shall include a copy of this Order with the subpoena and request that third parties produce data and documents in accordance with the production specifications set forth in this Order. Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena or FOIA request to the other Party **within fourteen (14) days** of receipt of those documents. If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to the other Party.

**Table Reference in Paragraph A.14(c):**

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last |

2025 WL 50373

| | | | | attachment in a family |
|---|---|---|---|---|
| CUSTODIAN | Smith, John | Yes | Yes | Custodian who possessed the document or electronic file |
| OTHER_CUSTODIANS | Doe, Jane; Jones, James | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| NATIVEFILE | Natives \001\001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents \Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived |

2025 WL 50373

| | | | | from the properties of the document. |
|---|---|---|---|---|
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)

2025 WL 50373

| Field | Value | Col3 | Col4 | Description |
|---|---|---|---|---|
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| ALL_PARTICIPANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails only; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text \001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCED_IN_NATIVE_AND_TIFF | Yes | N/A | YES | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f...... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| Hard Copy | Y/N | YES | N/A | |
| OTHER FILEPATHS | \My Documents \Document1.doc | N/A | YES | Folder/filepath information for deduplicated copies |
| OTHER FILENAMES | Document1.doc | N/A | YES | File name information for deduplicated copies |

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)

2025 WL 50373

| | | | | |
|---|---|---|---|---|
| DUPELOCATIONS | \My Documents \Document1.doc; \Desktop \Document1.doc | N/A | Yes | Filepaths including filenames of all duplicates |
| ATTACHMENT COUNT | 1 | N/A | Yes | Number of documents attached to a document |
| ATTACHMENT NAMES | | N/A | Yes | File Name of all attachments |
| LASTMODIFIED BY | John Smith | N/A | Yes | Last user to modify document |
| REDACTED | Y/N | Yes | Yes | Identifies documents with redactions |
| REDACTION REASON | | Yes | Yes | Identifies the type of redaction |
| CONVERSATIONID | | N/A | Yes | |
| HASREVISIONS | | N/A | Yes | |
| HASCOMMENTS | | N/A | Yes | |
| HASHIDDENTEXT | | N/A | Yes | |
| HASHIDDENSLIDES | | N/A | Yes | |
| HASSPEAKERNOTES | | N/A | Yes | |
| HASHIDDENROWS | | N/A | Yes | |
| HASHIDDENCOLUMNS | | N/A | Yes | |
| HASHIDDENWORKSHEETS | | N/A | Yes | |
| HASVERYHIDDENWORKSHEETS | | N/A | Yes | |

Zarfati v. Artsana USA, Inc., Not Reported in Fed. Supp. (2025)

2025 WL 50373

**All Citations**

Not Reported in Fed. Supp., 2025 WL 50373

---

## Footnotes

1    According to Defendant's discovery responses, these all contain a "to the extent they exist" caveat. *See generally* ECF Nos. [42-4] and [42-5].

2    The Court agrees with Defendant that it is unnecessary for the ESI protocol to require Defendant to state each custodian's last known address, date of birth, and dates of employment. It is sufficient for Defendant to provide the name and title of each custodian. The Court has also removed all references to any "stipulation" in the proposed ESI protocols as the Parties did not stipulate to any of its terms.

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 77 of 102

Rogers v. B&B Entertainment, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 12289600
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Angelica ROGERS, Plaintiff,

v.

B&B ENTERTAINMENT, LLC d/
b/a the Playhouse, a Florida for-
profit corporation, Andrew Behm a/k/a
Andrew Behn, an individual, Defendants.

CASE NO. 18-61478-CIV-DIMITROULEAS/SNOW
|
Signed 06/17/2019
|
Entered 06/18/2019

**Attorneys and Law Firms**

Rose Hinda Robbins, Boca Raton, FL, for Plaintiff.

Chris Kleppin, Glasser & Kleppin, P.A., Plantation, FL, for Defendants.

**ORDER**

LURANA S. SNOW, UNITED STATES MAGISTRATE JUDGE

**\*1** THIS CAUSE is before the Court on the Plaintiff's Motion to Compel (ECF No. 29), the Defendants' Motion to Compel (ECF No. 37), the Plaintiff's Motion for Protective Order (ECF No. 41) and the Defendants' Motion for Protective Order (ECF No. 44), all of which were referred to United States Magistrate Judge Lurana S. Snow by the Honorable William P. Dimitrouleas, United States District Judge.

**I. BACKGROUND**

The Plaintiff filed this case on July 1, 2018, alleging that the Defendants, an adult nightclub and its manager, failed to pay the Plaintiff properly and, thus, violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Florida Minimum Wage Amendment, Fla. Const. Art. X, § 24, and the Florida Minimum Wage Act, Fla. Stat. § 448.110. According to the Amended Complaint, the Defendant B&B Entertainment, LLC, does business under the fictitious name The Playhouse, and that Andrew Behm (a/k/a Andrew Behn) was the supervisor and manager of The Playhouse, and was responsible for the supervision of the Plaintiff. Am. Compl. (ECF No. 9), at ¶¶ 17, 21.

The Plaintiff alleges that she was employed as the "house mom" at the nightclub from April 7, 2010, to May 26, 2018. Id., at ¶ 12. The Defendants "did not pay the Plaintiff any wages for her work as a house mom." Id., at ¶ 30. The Plaintiff complained on many occasions to her employer that she was not being paid properly, and was "terminated abruptly" after her most recent complaint. Id., at ¶¶ 51-52.

The Defendants filed a Motion to Dismiss, which was denied on October 5, 2018. (ECF No. 19) According to the Defendants' Amended Answer and Affirmative Defenses, the Defendants were not engaged in interstate commerce (and, thus, the FLSA does not apply), the Plaintiff was not an employee, or she was an exempt employee under the FLSA, the Plaintiff had only an oral contract for employment which is not enforceable, and other defenses apply to relieve them of liability. (ECF No. 23)

Pursuant to the scheduling Order entered by the Court on October 2, 2018, discovery was scheduled to conclude on May 1, 2019. (ECF No. 17) On May 7, 2019, the Court granted the Plaintiff's request to reschedule the trial and pretrial deadlines. The discovery deadline was extended to July 24, 2019, and the deadline for filing substantive motions is now August 23, 2019. (ECF No. 46)

**II. DISCUSSION**

**A. General principles governing discovery**

According to Rule 26(b)(1) of the Federal Rules of Civil Procedure:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**\*2** Relevance under Rule 26(b)(1) is construed broadly, but is not without limits. Discovery must not only be relevant to the claims and defenses in the case, but also must be proportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1). The determination of what is relevant for discovery purposes depends on the parties' claims and defenses.

An interrogatory must be answered fully and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(4); S.D. Fla. L.R. 26.1(e)(2)(A). Similarly, objections to requests for production of documents must be stated with specificity, including the reasons for the objection, and must state whether any responsive materials are being withheld on the basis of that objection and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2); S.D. Fla. L.R. 26.1(e)(2)(A).[1]

The discovery respondent bears the burden of establishing a lack of relevancy or some other basis for resisting production. See, e.g., Adelman v. Boy Scouts of Am., 276 F.R.D. 681 (S.D. Fla. 2011) (noting that court could grant motion to compel "solely based on [discovery respondent's] procedurally inadequate objections"). After a properly stated objection is presented, the proponent of a motion to compel seeking to overrule the objection must prove relevance of the requested discovery. See, e.g., Diamond State Ins. Co. v. His House, Inc., No. 10-20029-CV, 2011 WL 146837 (S.D. Fla. Jan. 18, 2011) (finding that proponent of discovery had not shown relevance of requested deposition).

**B. The Plaintiff's Motion to Compel**

The Plaintiff's Motion to Compel was filed as to the Plaintiff's First Set of Interrogatories and First Request for Production. (ECF No. 29) The Plaintiff argues that the Defendants' responses to the following were insufficient: Interrogatories Nos. 1, 3, 4, 7, 8, 10, 12, 13, 15, 16, 17, 20, 21, 24, and Requests for Production Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 19, 24, 33. The Court has reviewed the requests and the responses of the Defendants (ECF Nos. 29-1, 29-2), and finds that the Plaintiff's requests all seek information relevant to the claims and defenses in this case.[2]

**\*3** In Interrogatories Nos. 1, 10, 12 and 16, the Plaintiff seeks information about Defendant Andrew Behm and his role with the Defendant B&B Entertainment, including his management of the entity's operations and his alleged

supervision of the Plaintiff, and information about anyone else who had management responsibility, all of which are topics directly relevant to the Plaintiff's claims. The Defendants' responses generally are incomplete, or evasive.

As an example of the Defendants' deficient responses, in response to a question seeking the name of anyone "who exercised day-to-day control and management of B&B club(s) and, for such individual(s), describe, in detail, the dates employed and duties performed," the Defendants responded: "Andrew Behm, and he is represented by counsel, and he is the sole managing member of B&B, and he looks after the financing and operations." Even after supplementing their answer, the Defendants only provided Mr. Behm's cell phone number and stated: "No other person has ever been a managing member of the LLC." (ECF No. 29-1, at Interrogatory No. 12) In response to a question about "management responsibility of B&B's payroll and time record keeping practices," the Defendants stated that "no one has ever managed B&B's payroll and timekeeping records because it has no employees." Id., at Interrogatory No. 16. While the response might be accurate strictly as to "B&B Entertainment, LLC," the Plaintiff has sued "B&B Entertainment, LLC d/b/a The Playhouse," and alleged that B&B Entertainment, LLC, does business under the fictitious name "The Playhouse." Am. Compl. (ECF No. 9), at ¶ 17. And the Plaintiff's Interrogatories specifically refer to "B&B Entertainment, LLC d/b/a THE PLAYHOUSE GENTLEMEN'S CLUB and d/b/a THE PLAYHOUSE, (hereinafter 'B&B')." (ECF No. 29-1, at Interrogatory No. 1). Presumably someone was keeping track of the payroll and timekeeping records of The Playhouse, and the Defendants have failed to raise a proper objection to providing that information.

For similar reasons, the Court finds that Plaintiff's Interrogatories Nos. 15 and 17 seek relevant information and the Defendants have failed to raise a proper objection thereto, and, thus, the Defendants must respond more completely to those Interrogatories. In Interrogatory No. 15, the Plaintiff asks for "the manner in which contact information is kept on all employees and/or independent contractors of B&B," to which the Defendants answered: "None, because B&B has no employees or independent contractors." (ECF No. 29-1) In Interrogatory No. 17, the Plaintiff sought the name of the individual responsible for assigning, scheduling or supervising "all work provided at B&B's work premises by exotic dancers/entertainers," to which the Defendants responded: "No one." Id. The Defendants must answer

these Interrogatories as to the operations/business of The Playhouse.

The Plaintiff also seeks information relating to the Defendants' financial status and information regarding the types of goods used in the Defendants' business, which is directly relevant to the Defendants' affirmative defense that they were not engaged in interstate commerce (and, thus, that they are not covered by the FLSA). Accordingly, the requests for the bank account information of the Defendant entity, in Interrogatory No. 8, and the Defendant entity's federal income tax returns, gross receipts and documents supporting the total gross receipts (including credit card payment records and financial statements) sought in Requests for Production Nos. 5, 6, and 7, and the requests related to what goods or products the Defendants used in their business, in Requests Nos. 8, 9, 10, 11, 12 and 13, all seek discoverable information and the Defendants' objections, to the extent that any were stated, are overruled.[3] (The Court notes that the Plaintiff has reported that the tax returns for Defendant B & B Entertainment for the years 2016 and 2017 finally were provided on April 30, 2019. (ECF No. 45, at 3) The Defendants had agreed to provide redacted tax returns for 2013-2017 and are ordered to do so. (ECF No. 29-2, at Request No. 5))[4]

**\*4** The Defendants have alleged that the Plaintiff was not an employee, or that she was an exempt employee under the FLSA. Therefore, the Plaintiff's requests, in Interrogatories Nos. 3, 7, 13, 20 and 21, and Request for Production No. 33, for information about the Defendants' view of the tasks or duties the Plaintiff performed, the hours she allegedly worked (from July 1, 2013, to May 26, 2018), tape or video recordings or notes regarding the Plaintiff's "tenure as a 'house mom' at the premises," the Defendants' policies regarding whether entertainers performing at the nightclub had to pay a share of their tips to a "house mom," any communications of the Defendants regarding the Plaintiff's alleged work, and information supporting the Defendants' contention that the Plaintiff was an exempt employee all seek information relevant to the parties' claims and defenses.[5]

Although the Defendants have alleged that the Plaintiff was not employed by the Defendants, they apparently do not dispute that the Plaintiff was "present at her business premises" at the Defendants' location, and have analogized the Plaintiff to "a hot dog vendor at Home Depot ... [who later turns] around and su[es] Home Depot for minimum wages and overtime." (ECF No. 29-1).[6] The Defendants

raised no objections to Interrogatories Nos. 13, 20 and 24, and Request for Production No. 33, which sought information about the hours Plaintiff worked, her "work time," or "that she was present at the business premises," and facts supporting the Defendants' contention that the Plaintiff was an exempt employee or an independent contractor. At a minimum, the Defendants must provide all information or records, including videos, regarding how many hours the Plaintiff was "present at the business premises" of the Defendants during the relevant time period, regardless of whether they believe that she was their employee or contractor. In Interrogatory No. 24, the Plaintiff sought the names and phone numbers of all current and prior employees or exotic entertainers who worked during the same shifts as the Plaintiff and who may have knowledge regarding the Plaintiff's work time. The Defendants shall answer this Interrogatory as to the hours during which the Plaintiff was "present at the business premises" of the Defendants. Similarly, as to the Plaintiff's Request for Production No. 19 seeking payroll and record keeping guidelines, and policies or practices of the Defendants with regard to maintaining records of hours worked by their employees and independent contractors, this Request seeks relevant information and the Defendant has failed to state a proper objection.[7]

In Request No. 24, the Plaintiff sought information about lawsuits filed against the Defendants by any current or former employees "relating to the payment of minimum wage and/or overtime compensation." The Defendants objected, arguing that the request "seeks irrelevant information, is harassing, and is overly broad because it does not have any subject matter limitation, and could conceivably encompass breach of contract lawsuits [and] premises liability ..." actions. (ECF No. 29-2) The Defendants' objection as to overbreadth and relevancy is overruled as the Request was limited to lawsuits "relating to the payment of minimum wage and/or overtime compensation."[8] In Interrogatory No. 4, the Plaintiff asked the broader question, as to whether the Defendants have ever been a plaintiff or a defendant in a lawsuit since July 1, 2011, and asked for the caption of the lawsuit, its nature, the date and court in which it was filed, the case number and the final disposition of the case. The Defendants objected, with the same language as cited above as to the Defendants' objection to Request No. 24. The Court finds that the request seeks information relevant to the parties' claims and defenses because, as argued by the Defendants in their supplemental answer to this Interrogatory, the Defendants claim that the Plaintiff was operating as "essentially a sublease" or tenant of space leased by the Defendants. Accordingly, whether

the Defendants have been involved in litigation regarding subleases or tenants of leased space is at least arguably relevant to the claims and defenses in this case.[9]

## C. The Defendants' Motion to Compel

 **\*5**  The Defendants seek an order compelling production of the Plaintiff's "federal income tax returns for the years 2015 through the present." (ECF No. 37-1, Request No. 5) The Plaintiff has agreed to supply the "joint income tax returns filed with her husband for the years 2015 to the present." Response (ECF No. 38), at 2.[10] As the Plaintiff has agreed to provide the sole item(s) which was the subject of the Defendants' Motion to Compel, *i.e.*, the Plaintiff's federal income tax returns for the years 2015 to the present, the Defendants' Motion to Compel (ECF No. 37) is DENIED.[11]

## III. CONCLUSION

For the reasons stated above, it is

ORDERED and ADJUDGED that:

1. The Plaintiff's Motion to Compel (ECF No. 29) is GRANTED. Within ten days of the date of this Order the Defendants must provide complete responses to the Plaintiff's Interrogatories Nos. 1, 3, 4, 7, 8, 10, 12, 13, 15, 16, 17, 20, 21, 24, and Requests for Production Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 19, 24, 33. As to Interrogatory No.

3, the Defendants need not provide a further answer to this Interrogatory unless there are current or former employees or independent contractors with job duties *similar to those claimed by the Plaintiff to have been her duties.* As to Interrogatories Nos. 13, 20 and 24, and Request No. 33, the Defendants shall respond as to the times that Plaintiff was "present at the premises," as discussed above. As to Interrogatory No. 21, the Defendants need not respond further if their answer means that they have (and had, during the relevant time period) no such policies, practices, or procedures. As to Requests for Production Nos. 8 and 13, the Defendants need not respond further unless they had documents at one time which were destroyed and, if so, they should so state.

2. The Defendants' Motion to Compel (ECF No. 37) is DENIED, based on the Plaintiff's agreement to provide the requested federal income tax returns for the years 2015 to the present.

3. The Plaintiff's Motion for Protective Order (ECF No. 41) and the Defendants' Motion for Protective Order (ECF No. 44) are DENIED, as moot, as the depositions which were the subject of those Motions have already taken place.

 **\*6**  DONE and ORDERED at Fort Lauderdale, Florida this 17th day of June, 2019.

## All Citations

Not Reported in Fed. Supp., 2019 WL 12289600

Footnotes

1      Plaintiff complains that Defendant's responses include boilerplate objections followed by answers, and otherwise violate this Court's procedures, as described in the General Order on Discovery Objections and Procedures (ECF No. 14). The Court has reviewed Defendant's responses and while some do not comply, the Court finds that Defendant's objections generally have been stated sufficiently specifically to allow Plaintiff's counsel to determine the reason for the objection and to determine whether any responsive materials are being withheld.

2      The Defendants filed a response to the Plaintiff's Motion to Compel which was eight pages long. (ECF No. 32) The Court's General Order on Discovery Objections and Procedures provides that a party responding to a discovery motion shall file a response that is "no more than 3 pages in length." (ECF No. 18) As stated in that General Order, "**THE COURT MAY DECLINE TO CONSIDER A MOTION OR RESPONSE WHICH DOES NOT COMPLY WITH THESE PROCEDURES.**" Id. (emphasis in original). The Plaintiff also ignored this Court's General Order, as the Plaintiff filed a reply that is seven pages long, and the General Order provides that if a reply is filed, "it shall be no more than 3 pages in length." Id.

3      As another example of the Defendants' incomplete or deficient answers to the Plaintiff's discovery requests, in response to Interrogatory No. 8 seeking the bank account number of the Defendants, they first provided a response which did not mention the bank account, and then supplemented their answer to state: "B&B objects to the provision of a bank account number." (ECF No. 29-1, at Interrogatory No. 8) No reason for the objection was provided.

4      In response to Requests Nos. 8 and 13, seeking documents or "documents and/or electronic data" as to "any supplies, goods, materials, equipment, or any tangible items ordered by or for Defendant" or that were "used in Defendant's business" and the out-of-state origin of such items, the Defendants responded: "None." (ECF No. 29-2) These two Requests seek relevant information and no objection was raised by the Defendants; however, the Defendants need not respond further to these Requests unless they had documents at one time which were destroyed at some time and, if so, they should so state.

5      Interrogatory No. 3 requests information about any current or former employees or independent contractors with job duties "similar to those of Plaintiff." The Defendants answered: "None." (ECF No. 29-1) The Defendants dispute that the Plaintiff was an employee or an independent contractor and, thus, they need not provide a further answer to this Interrogatory unless there are current or former employees or independent contractors with job duties *similar to those claimed by the Plaintiff to have been her duties.*

6      The Defendants also have described the Plaintiff has having run her own business "inside commercial space that Defendant leased from a third party." (ECF No. 29-1, response to Interrogatory No. 4)

7      As to Interrogatory No. 21, the Defendants need not respond further if their answer means that they have (and had, during the relevant time period) no policies, practices, or procedures related to the payment of a portion of the entertainers' tips to the persons described in the Interrogatory.

8      As stated by the Court in its General Order on Discovery Objections and Procedures, "[a]n objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why the request lacks relevance and why the information sought will not reasonably lead to admissible evidence." (ECF No. 18)

9      The Defendants need not provide information, however, that is otherwise unavailable to the public, *i.e.*, the Defendants need not disclose the terms of confidential agreements to resolve any prior litigation.

10     The Court understands the Plaintiff to have agreed to produce *all* federal income tax returns she filed for the years 2015 to the present, and that there are no other such returns than the joint returns she filed with her husband. The parties are reminded that income tax returns are not subject to a general privilege from production, nor are they protected from disclosure by any other theory when they are deemed relevant to a dispute. Despite the lack of general protection over the production of tax returns, there are some older decisions which required that a request to compel production of tax returns be supported by a "compelling need [based on the fact that] the information contained in such documents is not readily available from other sources." Dunkin' Donuts, Inc. v. Mary's Donuts, Inc., No. 01-0392-CIV, 2001 WL 34079319 (S.D. Fla. Nov. 1, 2001). The Eleventh Circuit explicitly has declined to impose such a standard. See, e.g., Erenstein v. S.E.C., 316 F. App'x 865, 869-70 (11th Cir. 2008). "[I]n civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in discovery, but instead have determined that such information need be only arguably relevant." Id., citing Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997) (noting lack of in-circuit caselaw on whether tax returns must be produced when relevant).

11     The Defendant filed a "reply" more than one month after the Plaintiff filed her response to the Defendants' Motion to Compel and the untimely "reply" (ECF No. 40) is disregarded.

---

**End of Document** | © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 82 of 102

Itamar Medical Ltd. v. Ectosense nv, Not Reported in Fed. Supp. (2021)

2021 WL 12095086
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

ITAMAR MEDICAL LTD., Plaintiff,

v.

ECTOSENSE NV, and

VirtuOx, Inc., Defendants.

CASE NO. 20-60719-CIV-DIMITROULEAS/SNOW
|
Signed August 31, 2021

**Attorneys and Law Firms**

Ana Romes, Laura Ganoza, Yelan Escalona, Foley, Lardner LLP, Miami, FL, Anna Adamsky, Pro Hac Vice, Gene Kleinhendler, Pro Hac Vice, GK Advisory, Israel, Jessica N. Walker, Pro Hac Vice, Foley & Lardner LLP, Los Angeles, CA, for Plaintiff.

Paul Bernard Ranis, Greenberg Traurig, Fort Lauderdale, FL, Seth J. Donahoe, B. George Walker, Paul Octavio Lopez, Tripp Scott, P.A., Fort Lauderdale, FL, for Defendant Ectosense nv.

**ORDER ON MOTIONS TO COMPEL**

LURANA S. SNOW, UNITED STATES MAGISTRATE JUDGE

**\*1** THIS CAUSE is before the Court on Defendant Ectosense *nv*'s ("Ectosense") Motion to Compel Plaintiff to Provide Complete Interrogatory Answers and to Overrule Objections to Ectosense's Interrogatories (ECF No. 149), and Defendant Ectosense's Motion to Compel Plaintiff to Immediately Supplement its Production and to Overrule Plaintiff's Objections to Ectosense's Requests for Production (ECF No. 152). The Honorable William P. Dimitrouleas referred all pretrial discovery matters to United States Magistrate Judge Lurana S. Snow for appropriate resolution pursuant to 28 U.S.C. § 636. (ECF No. 56) This Court ordered consolidated and expedited briefing on the issues. (ECF No. 154) The Motions are now ripe for review.

**I. BACKGROUND**

On July 6, 2021, Plaintiff Itamar Medical Ltd. filed its Third Amended Complaint (ECF No. 121) against Defendants Ectosense *nv* and VirtuOx, Inc. asserting trademark infringement, unfair competition/false designation of origin, and false advertising under the Lanham Act, and unfair competition, deceptive trade practices, and trademark infringement under Florida law. (ECF No. 121 at 1) According to the Third Amended Complaint, Plaintiff develops, manufactures, and sells home sleep apnea tests that use its own proprietary peripheral arterial tone, or "PAT", technology. (ECF No. 121 at ¶ 1) Defendant Ectosense is a digital health and medical device company that, like Plaintiff, focuses much of its attention on sleep disorders. (ECF No. 121 at ¶ 26) Plaintiff seeks damages, as well as other relief (ECF No. 121 at 35-38), for Ectosense's alleged continued use of, and association of its products with, the PAT name and proprietary PAT marks, even though Ectosense's products are not PAT devices and do not provide a PAT measurement. (ECF No. 121 at ¶ 32)

On August 6, 2021, Ectosense filed a series of Motions to Compel and a Motion to File Documents Under Seal. (ECF Nos. 148, 149, 151, and 152) The parties resolved ECF No. 148 and ECF No. 151 without the Court's intervention. (ECF Nos. 157 and 159) Ectosense's Motion to Compel Plaintiff to Provide Complete Interrogatory Answers and to Overrule Objections to Ectosense's Interrogatories (ECF No. 149), and Ectosense's Motion to Compel Plaintiff to Immediately Supplement its Production and to Overrule Plaintiff's Objections to Ectosense's Requests for Production (ECF No. 152) remain at issue. On August 9, 2021, the Court ordered consolidated and expedited briefing on the instant Motions to Compel.

**II. DISCUSSION**

**A. Conferral**

Initially, Plaintiff argues that both Motions to Compel should be denied pursuant to S.D. Fla. Local Rule 7.1(a)(3) because Defendant Ectosense failed to confer with Plaintiff on these specific issues prior to raising them in the Motions. (ECF No. 156 at 4) Ectosense asserts that the parties made repeated attempts to confer but Plaintiff's counsel failed to obtain the information necessary to meaningfully confer. (ECF No. 165 at 2) The undersigned cautions the parties that conferral

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 83 of 102

Itamar Medical Ltd. v. Ectosense nv, Not Reported in Fed. Supp. (2021)

on the specific issues presented in any motion must be meaningful and made in the manner consistent with ECF No. 67. Therefore, the Court will strike any future motions that do not clearly establish that the proper procedures were followed, and that the relevant issues were discussed. However, at this time there is insufficient documentation of conferral on the relevant issues to decide these Motions solely on this procedural ground. Therefore, the undersigned chooses to decide the merits of the Motions, rather than the adequacy of the conferral.

### B. Defendant Ectosense's Motion to Compel Plaintiff to Provide Complete Interrogatory Answers and to Overrule Plaintiff's Objections to Ectosense's Interrogatories

**\*2** Defendant Ectosense initially moved to compel complete responses to, and to overrule objections to, Ectosense's Interrogatories Nos. 1, 2, 6, 9, 10, 11, 12, and 13. (ECF No. 149) However, on August 13, 2021, Plaintiff withdrew all objections to Interrogatories Nos. 1-6, 8-9, and 13-14, and accordingly indicated that it will be amending these Interrogatory responses. (ECF No. 164 at 1) Therefore, the undersigned finds that the disputes over Interrogatories Nos. 1, 2, 6, 9, and 13 are adequately resolved. Interrogatories Nos. 10, 11, and 12 are still in dispute.

For Interrogatory No. 10, Ectosense requests that Plaintiff identify all third party uses of the PAT name or mark "to which Itamar has objected," whether formally or informally. (ECF No. 149 at 3) Plaintiff objects to this request as unduly burdensome, overbroad, oppressive, and disproportional to the needs of the case. (ECF No. 149 at 3) Ectosense in turn argues that Plaintiff's objection is boilerplate, and fails to explain how the request is overbroad or burdensome. (ECF No. 149 at 4) In contrast to Ectosense's characterization, Plaintiff specifically objects to the lack of a temporal limitation and the use of the word "all" in the request. (ECF No. 149 at 3-4) Plaintiff argues that Interrogatory No. 10, by using the word "all" encompasses both formal and informal objections to the use of the PAT name or mark. Further, it asserts that a request for all informal objections would include undocumented discussions such as phone calls and letters, spanning the entirety of Plaintiff's existence. It states that these informal objections would be both difficult to track down and irrelevant to the case. The undersigned finds that Plaintiff's objections to Interrogatory No. 10, as drafted, are proper.

Next, for Interrogatory No. 11, Defendant Ectosense asks Plaintiff for an explanation of why the Ectosense product, NightOwl, is not considered PAT-based according to AASM guidelines. (ECF No. 149 at 4) In response, Plaintiff states, "[b]ecause the NightOwl is not capable of measuring and reporting the PAT signal, it is not 'PAT-based' under the AASM guidelines." (ECF No. 149 at 4) Although Ectosense argues this response is inadequate and in need of greater scientific explanation, the undersigned finds that Plaintiff's response simply and effectively answers the question posed by Interrogatory No. 11. While the Court denies Defendant Ectosense's motion to compel a more complete answer to Interrogatory No. 11, the Court notes that if Ectosense is not satisfied with the detail of the explanation given by Plaintiff, it can, if it chooses, submit additional, narrowly focused interrogatory questions or conduct other discovery pertaining to the scientific elements of PAT.

Finally, for Interrogatory No. 12, Ectosense requests that Plaintiff describe any communication it had with the FDA during NightOwl's 501(k) clearance process relating to NightOwl. (ECF No. 149 at 5) Plaintiff objects based on the attorney-client privilege, the work product doctrine, and any other applicable protection or privilege. (ECF No. 149 at 5) Plaintiff provides no insight into why the attorney-client privilege would apply to communications it had with the FDA concerning NightOwl's 501(k) clearance. Any such communications would seem to lack the element of rendering legal services required for the attorney-client privilege to apply. See generally, Maplewood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550 (S.D. Fla. 2013). Additionally, Defendant argues that "[t]here is no attorney-client relationship between the FDA and [Plaintiff] Itamar," (ECF No. 149 at 5) The Court finds that Plaintiff's attorney-client privilege objection is overruled as presented.

**\*3** Moreover, generalized objections asserting a privilege or work product doctrine do not comply with the applicable Federal Rule or this Court's Local Rule. As the Court noted in its General Order on Discovery Objections and Procedures, S.D. Fla. Local Rule 26.1(e)(2)(B) requires that objections based upon privilege identify the specific nature of the privilege being asserted, as well as, *inter alia*, the nature and subject matter of the communication at issue and the sender and receiver of the communication and their relationship to each other. (ECF No. 67) While Plaintiff indicates that it is ready, willing, and able to produce a privilege log (ECF No. 156 at 4), Plaintiff has not produced one indicating the specific nature of the privilege being asserted, nor has it

presented any case law in support of the proposition that its communications with the FDA are privileged or protected by the work product doctrine.

However, Defendant Ectosense has not cited any case law supporting its contention that the work product doctrine and privilege do not apply to Plaintiff's communications with the FDA. Therefore, the undersigned finds that any ruling on the work product doctrine or privilege generally would be premature. Accordingly, Plaintiff must provide a more detailed response to Interrogatory No. 12. Additionally, Plaintiff must provide a privilege log pursuant to Fed. R. Civ. P. 26(b)(5) and S.D. Fla. Local Rule 26.1(e) for all information sought by Defendant that Plaintiff withholds as privileged, allowing Defendant Ectosense the ability to assess such claims. Future disputes, if any, over whether these are privileged communications must be appropriately briefed to the Court, with citations to case law that is on point.

Defendant also requests 30 days to review the amended Interrogatory answers, confer and present any remaining issues to Plaintiff's amended Interrogatory responses. (ECF No. 165 at 5) S.D. Fla. Local Rule 26.1(g)(1) requires that all discovery disputes be presented to the Court within 30 days. Owing to Plaintiff's withdrawals and amended responses, Ectosense argues it may not be able to meet this deadline. (ECF No. 165 at 5) The undersigned will allow Ectosense 30 days from receipt of Plaintiff's amended Interrogatory responses to present any remaining issues, if any, after a meaningful attempt to resolve them without Court intervention.

Accordingly, the undersigned finds that Ectosense's Motion to Compel is denied with respect to Interrogatories Nos. 1, 2, 6, 9, 10, 11, and 13. Further, the undersigned finds that Ectosense's Motion to Compel is denied in part and granted in part with respect to Interrogatory No. 12. Plaintiff shall amend its answer to this interrogatory.

### C. Defendant Ectosense's Motion to Compel Plaintiff to Immediately Supplement its Production and to Overrule Plaintiff's Objections to Ectosense's Requests for Production

Defendant initially moved to overrule Plaintiff's objections to Ectosense's First Set of Requests for Production as overbroad, boilerplate, or improper. (ECF No. 152 at 3-4) Specifically, Ectosense took issue with Plaintiff's objections to Definitions, (ECF No. 152 at 4), its inclusion of "subject to" objections language in its responses (ECF No. 152 at 5), and its

broad privilege assertions. (ECF No. 152 at 5) Plaintiff has since provided Amended Responses to the First Set of Requests for Production, withdrawn its objections to the Definitions, withdrawn the "subject to" language from its responses, and narrowed its privilege objections. (ECF No. 156 at 4) Therefore, the undersigned finds that the disputes over Ectosense's First Set of Requests for Production are adequately resolved.

Next, Defendant moves to compel Plaintiff to supplement its production of about 40 pdfs containing approximately three emails, and about 36 documents that are available on the USPTO website. (ECF No. 152 at 2) Plaintiff has since collected email data from its 5 remaining custodians, and the data is being transferred, processed, and analyzed to permit the running of ESI search terms. (ECF No. 156 at FN 1) As discussed above, Plaintiff has also filed Amended Responses to the First Set of Requests for Production. (ECF No. 156 at 4) Accordingly, the undersigned finds that the dispute over supplementing production likewise is adequately resolved.

**\*4** However, Ectosense also requests 30 days to review the additional production and confer regarding Plaintiff's Amended Responses to the First Set of Requests for Production. (ECF No. 165 at 5) The undersigned will allow Ectosense 30 days from receipt of Plaintiff's Amended Responses to review them and confer, and to present any remaining issues. Additionally, the Court notes that the parties have a duty to supplement discovery for any disclosure or responsive documents that are incomplete or incorrect pursuant to Fed. R. Civ. P. 26(e).

### D. Attorneys' Fees

Finally, Defendant requests an award of attorneys' fees pursuant to Fed. R. Civ. P. 37(5). (ECF No. 165 at 4) The Court concurs with Ectosense that attorneys' fees may generally be granted if the disclosure or requested discovery is provided after the motion was filed. (ECF No. 165 at 4-5) However, attorneys' fees may not be granted when a movant files a motion before attempting to meaningfully confer and resolve the issue without court action. See Fed. R. Civ. P. 37(5)(A)(i). The record does not clearly establish that the parties meaningfully conferred on the relevant discovery issues before the Motions were filed. Therefore, the undersigned finds that an award of attorneys' fees would not be proper and denies Ectosense's request.

### III. CONCLUSION

After careful review of the Motions, the Consolidated Response, and the Consolidated Reply thereto, the court file, and applicable law, it is hereby

ORDERED AND ADJUDGED as follows:

(1) Defendant Ectosense's Motion to Compel Complete Interrogatory Answers and to Overrule Objections to Ectosense's Interrogatories (ECF No. 149) is DENIED IN PART and GRANTED IN PART. The Motion is denied to the extent that Interrogatories Nos. 1, 2, 6, 9, 10, 11, and 13 are either deemed appropriate by the Court or resolved to the satisfaction of the Court in light of Plaintiff's objection withdrawals. The Motion is granted as to Interrogatory No. 12 which lacks the specificity necessary to identify the nature of the privilege alleged. As such, it will be amended to provide a more detailed response as required by the applicable rules.

(2) Defendant's Motion to Compel Plaintiff to Immediately Supplement its Production and to Overrule Plaintiff's Objections to Ectosense's Request for Production (ECF No. 152) is DENIED as moot in light of Plaintiff's withdrawals of its objections and Amended Responses.

(3) Defendant's request for 30 days from the date of receipt to review the discovery and confer regarding Plaintiff's Amended Responses to the First Set of Requests for Production and Plaintiff's Amended Interrogatory Responses to present any remaining issues (ECF No. 165) is GRANTED.

(4) Defendant's request for attorneys' fees is DENIED.

(5) All responsive documents and amended interrogatories resolved by the parties in their filings by representations made to the Court and in their conferrals, as well as the discovery ordered herein will be produced by Plaintiff no later than September 3, 2021, unless the parties mutually agree to a different date for production.

(6) Plaintiff shall also produce a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure and S.D. Fla. Local Rule 26.1(e) on the same date as above for any documents withheld on the basis of privilege.

DONE AND ORDERED at Fort Lauderdale, Florida, this 31st day of August 2021.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 12095086

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4785457
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

UNITEDHEALTHCARE OF FLORIDA, INC.,
and All Savers Insurance Company, Plaintiffs,

v.

AMERICAN RENAL ASSOCIATES
LLC, et al., Defendants.

Civil No. 16-cv-81180-Marra/Matthewman
|
Signed 10/20/2017

**Attorneys and Law Firms**

Jamie R. Kurtz, Martin R. Lueck, Randall Tietjen, Thomas C. Mahlum, William Bornstein, Anne M. Lockner, Jeffrey S. Gleason, Robins Kaplan LLP, Minneapolis, MN, Michael Ross Whitt, Robins Kaplan, Naples, FL, for Plaintiffs.

Clinton J. Dockery, Joseph W. Slaughter, Andrew C. Lourie, Kobre & Kim LLP, New York, NY, Danielle S. Rosborough, Kobre & Kim LLP, Washington, DC, Matthew I. Menchel, Adriana Riviere-Badell, Laura Maria Gonzalez-Marques, Kobre & Kim, LLP, Miami, FL, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR RECONSIDERATON [DE 291]**

WILLIAM MATTHEWMAN, UNITED STATES MAGISTRATE JUDGE

**\*1** THIS CAUSE is before the Court upon Plaintiffs, UnitedHealthcare, Inc., and All Savers Insurance Company's (collectively, "Plaintiffs") Motion for Reconsideration or Modification of Omnibus Discovery Order Dated August 30, 2017 ("Motion") [DE 291]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 62. Defendants, American Renal Associates LLC, and American Renal Management LLC (collectively, "Defendants"), filed a response [DEs 296, 297] to Plaintiffs' Motion, Plaintiffs filed a reply [DEs 303, 304], and Defendants filed a sur-reply [DEs 314, 315]. The matter is now ripe for review.

**I. BACKGROUND**

In the Court's August 30, 2017 Order [DE 290], the Court granted in part and denied in part Defendants' Omnibus Motion to Compel [DEs 254, 255] and granted in part and denied in part Plaintiffs' Motion to Compel [DEs 251, 252]. More specifically, the Court permitted Defendants to select an additional 16 custodians and an additional 12 search terms and to request more at a later date if Defendants have a good-faith basis to do so. The Court also ruled that

> As to Plaintiffs' Second Set of Document Requests #2 and 3, the Court finds that Defendants have not waived any privilege and that Local Rule 26.1(3)(2)(C) shall not be modified by the undersigned to require a privilege log of documents that involve post-lawsuit privileged communications. Based upon the representation of Defendants' counsel in their response and at the August 11, 2017 hearing that all non-privileged responsive documents have been produced, the Court denies any further relief as to Requests #2 and 3.

[DE 290, p. 2]. The Court made additional rulings, which are not relevant to Plaintiffs' Motion.

**II. MOTION, RESPONSE, REPLY, AND SUR-REPLY**

In the Motion, Plaintiffs first argue that the Court should reconsider or modify its Order because the Court never made a finding that Plaintiffs' production was deficient, there is no evidence that would support such a conclusion, the Court did not tailor the additional custodians or search terms to "any purported inadequacy nor to any proportionality limits", the Court did not "provide any mechanism for ensuring that ARA's custodians and search terms do not capture an overwhelmingly, burdensome, disproportionate amount of information", and the Court's Order is "patently unfair." [DE 291, pp. 1-3]. Plaintiffs' second argument is that the Court should reconsider its decision not to compel Defendants to provide a privilege log because it held the parties to different standards regarding privileged materials, Defendants wrongfully withheld a responsive, non-privileged document, and the Court should not rely on Defendants' counsel's representations that they have no additional non-privileged responsive documents. *Id.* at pp. 3-4.

In response, Defendants argue that the Motion should be denied because the Court's Order is based on the parties'

lengthy submissions and two hours of oral argument. [DE 297, p. 1]. Defendants also contend that the alleged "patent unfairness" is not a "permissible ground for granting a reconsideration motion in this Circuit." *Id.* Next, Defendants argue that the Motion should be denied because Plaintiffs have not presented new evidence or authority and have not demonstrated a manifest error by the Court. *Id.* at p. 2. Finally, Defendants maintain that Plaintiffs have misstated the current state of discovery in the case. *Id.* Defendants are requesting a date certain by which Plaintiffs must complete their entire production and suggest the date of October 14, 2017. *Id.* at p. 3.

 **\*2**  In reply, Plaintiffs re-state the arguments from the Motion. [DE 304, p. 2]. Plaintiffs also contend that the Court's Order "inexplicably and without any stated basis grants discovery rights to ARA that the Court has denied to Plaintiffs in this case." *Id.* at p. 3. Plaintiffs argue that the Order "will impose burdens on Plaintiffs' that are disproportionate to any benefit that will flow to Defendants" and that Defendants' have already provided Plaintiffs a list of custodians and search terms that are "unrestricted and unfocused." *Id.* Plaintiffs assert that some of the proposed search terms attempt to circumvent other Court rulings and are therefore improper. *Id.* at p. 4. Finally, Plaintiffs argue that the Court should require Defendants to submit a privilege log because that will "minimize ARA's ability to withhold responsive documents." *Id.* at p. 6. Plaintiffs attach to their reply a sealed Declaration to support their argument that the Court-ordered discovery would be burdensome. [DE 303-4].

In Defendants' sur-reply, they argue that the new custodians and search terms are supported by the evidence, are relevant, and are proportional to the needs of the case. [DE 315, p. 3]. Defendants next contend that the declaration filed by Plaintiffs should be disregarded by the Court as it is irrelevant and has never been filed before in this case. *Id.* at p. 4.

### III. <u>ANALYSIS AND DISCUSSION</u>

In order to prevail on a motion for reconsideration, the moving party "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. A motion for reconsideration should raise new issues, not merely address issues litigated previously." *Instituto de Prevision Militar v. Lehman Bros.,* 485 F.Supp.2d 1340, 1343 (S.D. Fla. 2007) (quoting *Socialist Workers Party*

*v. Leahy,* 957 F.Supp. 1262, 1263 (S.D. Fla. 1997)). The three grounds warranting reconsideration that courts have articulated are: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice. *Id.*

Upon careful review of the Motion, Defendants' response, Plaintiffs' reply, Defendants' sur-reply, the Court's prior Orders, and the entire docket in this case, the Court finds that the Motion is due to be granted in part and denied in part as fully explained in this Order.

First, there has been no intervening change in controlling law. Plaintiffs do not argue to the contrary. Therefore, reconsideration is not appropriate on that basis.

Second, the only asserted new evidence submitted by Plaintiffs consists of Docket Entries 303-1 through 303-4. Docket Entry 303-1 is email correspondence; Docket Entry 303-2 is a list of the additional 16 custodians; Docket Entry 303-3 is a list of additional 12 search terms; and Docket Entry 303-4 is a Declaration from the Director of e-Discovery at UnitedHealth Group. Even though Plaintiffs could have—and should have—filed the Declaration at a much earlier date, and certainly no later than the lengthy discovery hearing held in this case on August 11, 2017, the Court has nonetheless considered this asserted new evidence in an effort to be fair to all parties involved in this case. Although the Declaration [DE 303-4] addresses e-discovery in general and is not sufficiently specific to the discovery at issue, the Court will reconsider its prior Order in light of the Declaration because it sheds light on precisely what the parties have not done in this case regarding their e-discovery obligations.

Specifically, the very last paragraph of the Declaration states precisely what this Court has been asking the parties in this case to do—and which they have failed to do—throughout the many discovery disputes which have unfortunately arisen in this case. Specifically, paragraph 12 states as follows:

> In my opinion and based on my experience, if additional time is taken to reexamine the search terms to minimize some of the more obvious deficiencies and then, after the search terms are run, allow for the parties to evaluate which terms hit on an excessive number of documents and narrow them accordingly, the process could be sped up significantly as the volume of documents for the steps after collection and indexing will likely be greatly reduced.

 **\*3**  [DE 303-4, para. 12]. Ironically, this type of cooperation is exactly what this Court has been expecting from the

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 88 of 102

UnitedHealthcare of Florida, Inc. v. American Renal..., Not Reported in Fed....

parties and their counsel throughout this case—to work together to arrive at reasonable search terms, to run those search terms and engage in sampling to see if the search terms are producing responsive documents or excessive irrelevant hits, and then to continue to refine the search terms in a cooperative, professional effort until the search terms are appropriately refined and produce relevant documents without including an excessive number of irrelevant documents. However, despite what paragraph 12 of the Declaration suggests, and despite this Court's suggestions to the parties and their counsel as to the cooperative and professional manner in which the parties should engage in the e-discovery process in this case, there has instead been an apparent lack of cooperation and constant bickering over discovery, especially e-discovery. The alleged new evidence submitted by Plaintiffs, that is, the list of additional search terms and custodians and the Declaration, clearly show that, where, as here, parties in a large civil case do not cooperatively engage in the e-discovery process, the collection and indexing of documents and the production of relevant documents, become much more difficult.

There is no need to correct clear error or manifest injustice as the Court has not committed clear error or caused any party manifest injustice. Rather, if anyone is to blame for the belabored and excessive discovery process in this case, the Court suggests that it is the parties themselves. As the Court noted above, the parties in this case seemingly are unable to cooperate regarding discovery disputes, as required by Federal Rules of Civil Procedure 1 and 26 and the Local Rules.[1] Although the parties and their counsel should be the most familiar with the particular issues and discovery needs of this case, to date, they have provided very little assistance to the Court during the discovery process. The parties and their counsel have been of virtually no help to the Court on e-discovery issues and have themselves caused the difficulties of which Plaintiffs now complain.

Unfortunately, the parties and their counsel, through their many discovery disputes and their litigiousness, have unnecessarily turned this case into what can best be termed as a "discovery slugfest." Rather than the parties working together to come up with reasonable search terms, then working together to refine those search terms, and then cooperatively engaging in sampling and further refinement of those search terms so that relevant documents are uncovered and produced, or cooperatively engaging in any of the numerous other e-discovery techniques that could lessen the discovery burdens on both parties, they have instead sought

to turn the discovery process in this case into a legal variety of hand-to-hand combat. If any of the parties to this case are unhappy with the Court's discovery rulings, and, specifically as to the pending motion, if Plaintiffs or their counsel are unhappy with the Court's discovery rulings, they have only themselves to blame. The parties' lack of cooperation and insistence upon producing as little discovery as possible to the other side, while concurrently seeking as much discovery as possible from the other side, is at the root of the discovery problems in this case.

This case was filed by Plaintiffs on July 1, 2016. Since that time, the parties have filed well over 50 discovery motions, responses, replies, notices, and declarations, many of which have been filed under seal. The Court has held at least six discovery hearings in 2017, most of which were lengthy and contentious. *See* DEs 89, 107, 109, 171, 228, 284. The Court has entered countless Orders relating to the parties' numerous discovery disputes. It appears to the Court that, rather than be cooperative in the discovery process, the parties and their counsel intend to make the discovery process in this case as expensive, time-consuming and difficult as possible. This flies in the face of what is expected from civil litigants and their counsel. For example, a very recent publication from the well-respected Sedona Conference Institute states the following:

> **\*4** The ability to reach an agreement on topics or search terms is dependant [sic] upon the level of cooperation of the parties, and whether it is practical at the early stages in the case to identify the potentially relevant records. Search terms also have to be carefully crafted and multiple levels of searches may be required to identify truly relevant ESI. For example, a string search of 200 terms may recall so many records that even if the parties were able to agree on those terms the results of the search are so massive that use of search terms in that context may not reduce or eliminate the burden. With that said, search terms may be a fruitful way to limit the scope of discovery and reduce costs. Our point is that it will take time and effort on both parties' side to reach an agreement on a workable set of search terms.

John Rosenthal and Moze Cowper, *A Practitioner's Guide to Rule 26(f) Meet and Confer: A Year After the Amendments,* The Sedona Conference Institute, 2008, at 11.

Further, as noted in the recently published *Federal Judges' Guide to Discovery:*

> Courts expect that counsel will endeavor to cooperate and reach agreements early in litigation regarding the scope

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 89 of 102

UnitedHealthcare of Florida, Inc. v. American Renal..., Not Reported in Fed....

of preservation; the scope of search efforts (custodians, date ranges, sources); the method of search (keyword, TAR, combination); the form (or forms) of production (including what metadata will be produced and how ESI from structured databases may be produced); and privilege and privacy issues, etc., and to revisit issues, if necessary, as more facts are discovered or legal theories are refined.

*The Federal Judges' Guide to Discovery, Edition 3.0,* The Electronic Discovery Institute (2017), at 50.

And no less of an expert than United States Supreme Court Chief Justice John Roberts commented in the 2015 Year-End Report on the Federal Judiciary that, pursuant to the December 1, 2015 Amendments to Federal Rules of Civil Procedure 1 and 26, it is now the duty and obligations of the lawyers in a civil case to cooperate in discovery, size and shape their discovery to the needs of the case, and attempt to lessen, rather than exacerbate, discovery disputes and the expense of the discovery process. In this regard, Chief Justice Roberts stated:

> As for the lawyers, most will readily agree—in the abstract—that they have an obligation to their clients, and to the justice system, to avoid antagonistic tactics, wasteful procedural maneuvers, and teetering brinksmanship. I cannot believe that many members of the bar went to law school because of a burning desire to spend their professional life wearing down opponents with creatively burdensome discovery requests or evading legitimate requests through dilatory tactics. The test for plaintiffs' and defendants' counsel alike is whether they will affirmatively search out cooperative solutions, chart a cost-effective course of litigation, and assume shared responsibility with opposing counsel to achieve just results.

Chief Justice's 2015 Year-End Report on the Federal Judiciary[2], at p. 11.

With the above pronouncements in mind, the Court will now turn to the specifics of Plaintiffs' Motion. Plaintiffs' first primary argument as to clear error or manifest injustice is that the Court's ruling permitting additional custodians and search terms is not based on the evidence, is unfair, and is overly broad. The Court does not believe that its ruling is unfair and, in fact, the ruling is based upon the arguments made to the Court in the many filings by the parties and is based on the arguments made at the lengthy discovery hearing.

Further, while the Court opted to permit additional search terms and custodians, Defendants are obviously still constrained to abide by the Court's prior discovery Orders in this case. That is, Defendants may not use the additional search terms or custodians to circumvent any of the prior limitations that the Court has placed upon discovery in this case in its discovery Orders. The additional search terms and custodians must stay within the parameters the Court has placed upon discovery in this case via its prior Orders. Should Defendants fail to do so, and should Defendants seek e-discovery beyond the parameters previously imposed by the Court, Plaintiffs can file an additional motion with the Court explaining exactly how Defendants have failed to adhere to the letter or spirit of the Court's prior discovery Orders.

**\*5** In this regard, however, the Court strongly advises counsel for all parties in this case to read the above authorities[3], comply with what is ethically expected of them as professionals and members of the Bar, and work together to refine the search terms and arrive at the production of relevant and proportional discovery in this case. The Court also advises the parties and their counsel that it will strictly utilize cost-shifting and attorney's fees and costs sanctions from this point forward against any party or attorney in this case who violates the Court's discovery Orders, fails to cooperate in good faith, seeks excessive discovery, or fails to produce relevant and proportional discovery.

Plaintiffs' second main argument regarding clear error or manifest injustice is that the Court should have required Defendants to draft and serve a privilege log because Defendants allegedly failed to produce a non-privileged document that was responsive to one of Plaintiffs' discovery requests in the past.[4] Plaintiffs have no legitimate basis for assuming, and encouraging the Court to infer or find, that there are more such withheld documents by Defendants. Defendants' counsel, who are officers of the court, have represented that no additional non-privileged, responsive documents are being withheld. In effect, and to be blunt, Plaintiffs' counsel are effectively accusing Defendants' counsel of lying to the Court; that is, Plaintiffs' counsel are asserting that Defendants' counsel are purposely withholding documents and then making knowing misrepresentations to this Court that they have not withheld documents. These are strong allegations, and, from what the Court has seen to date, there is no factual basis or support for such allegations. If Plaintiffs' counsel have evidence (not innuendo, assumptions or beliefs) to support such a bold accusation, then they should produce it; if not, then they must refrain from making such representations or assertions for which the Court has seen no evidence to date. These types of allegations are surely one of

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 90 of 102

UnitedHealthcare of Florida, Inc. v. American Renal..., Not Reported in Fed....

the reasons the discovery process in this case has become so litigious and acrimonious.

Furthermore, Plaintiffs acknowledge that a privilege log would not normally be required under Local Rule 26.1(3)(2)(C), but they then argue that Defendants "lost the protection that the local rule would otherwise provide by wrongfully withholding an indisputably non-privileged documents that was directly responsive to Plaintiffs' document requests." [DE 291, p. 4]. This argument is nonsense. Plaintiffs have never provided any case law to support their contention that the Court must disregard the Local Rules because one party alleges another party has withheld documents.

**\*6** Finally, Plaintiffs argue that the Court has been unfair in requiring Plaintiffs to produce more discovery than Defendants. The Court notes that it granted in part and denied in part both Plaintiffs' and Defendants' most recent discovery motions. The Court has endeavored to be fair to both parties in this case, and, merely because Plaintiffs do not like some of the Court's rulings, does not mean that the Court has been unfair. Moreover, Plaintiffs are the ones who filed the lawsuit in this case and invoked the jurisdiction of this Court—they should not be resistant to producing discovery as required by the rules and ordered by the Court.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion for Reconsideration or Modification of Omnibus Discovery Order Dated August 30, 2017 [DE 291] is **GRANTED IN PART AND DENIED IN PART.**

2. Plaintiffs' motion is GRANTED to the extent that the Court's prior Order is clarified so as to advise the parties that the additional custodians and search terms permitted Defendants by the Court must not go beyond

the limits and parameters previously placed on the scope of discovery by this Court in its numerous prior discovery Orders, and as noted previously in this Order. That is, by allowing Defendants additional search terms and custodians, the Court did not give Defendants carte blanche to seek irrelevant, disproportionate discovery or discovery beyond the parameters previously set by the Court. Rather, the Court wanted to ensure that the search for relevant and proportional documents would be sufficiently thorough without causing undue burden or expense to Plaintiffs. Further, the prior Order is hereby supplemented and modified to the extent that the Court orders that both Plaintiffs and Defendants and the parties' counsel confer on the search terms for the additional custodians and endeavor to refine those search terms if they hit on an excessive number of documents, and then narrow them accordingly in a collaborative process. In this regard, the parties and their counsel are ordered to collaborate and refine the search terms as necessary to ensure that relevant discovery is being uncovered and produced. Defendants are still permitted the additional search terms and custodians previously permitted by the Court, but the Court wants to ensure and direct that the parties confer and cooperate with each other to obtain the relevant documents Defendants are seeking while minimizing any burden on Plaintiffs.

3. The balance of Plaintiffs' Motion is DENIED.

**DONE and ORDERED** in Chambers this 20th day of October, 2017, at West Palm Beach, Palm Beach County in the Southern District of Florida.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4785457

Footnotes

1   The Introductory Statement of the Local Rules states that attorneys in this District are to be "governed at all times by a spirit of cooperation, professionalism, and civility. For example, and without limiting the foregoing, it remains the Court's expectation that counsel will work to eliminate disputes by reasonable agreement to the fullest extent permitted by the bounds of zealous representation and ethical practice."

2   www.suprernecourt.gov/publicinfo/year-end/2015year-endreport.pdf

3   The Court also directs the parties to review *L-3 Commc'ns Corp. v. Sparton Corp.,* 313 F.R.D. 661, 666-68 (M.D. Fla. 2015), which addresses search terms, e-discovery, and the necessity for cooperation between the parties.

4      The Court notes that, in large civil cases like this case, it is not entirely unexpected that a party will either inadvertently produce privileged documents or inadvertently and initially fail to produce relevant documents. This can happen despite the best efforts and intentions of counsel and parties. The Rules provide for supplementation of discovery when errors such as failure to disclose a relevant document are discovered by a party. Plaintiffs' argument that, because an email was allegedly not timely produced by Defendants, the Court should, therefore, assume that Defendants are purposely withholding documents in the discovery process is wholly without merit. In fact, Plaintiffs themselves, by their own admission, have erroneously produced documents subject to privilege in this case and have had to produce documents which they previously withheld and erroneously listed on their privilege log. *See* DE 301 at p. 2.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 11408720
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Antonio HERNANDEZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

IGE U.S., LLC., a Delaware corporation, Defendant.

CASE NO. 07-21403-CIV-COHN/SELTZER
|
Signed 08/11/2008

**Attorneys and Law Firms**

C. Richard Newsome, Newsome Law Firm, Orlando, FL, Donald E. Haviland, Jr., Haviland Law Firm, Philadelphia, PA, for Plaintiff.

Samuel Swain Heywood, Akerman Senterfitt, Miami, FL.

James Michael Miller, Akerman LLP, for Defendant.

ORDER

BARRY S. SELTZER, United States Magistrate Judge

**\*1**  THIS CAUSE is before the Court on Plaintiff's Motion to Compel Answers to Plaintiff's Request for Production of Documents and Interrogatories, and for Extension of Discovery Limits (DE 58) and was referred to the undersigned pursuant to 28 U.S.C. § 636 (DE 2 and 12).

This is an consumer fraud action in which Plaintiff alleges that Defendant has "reap[ed] substantial profits by knowingly interfering with, and substantially impairing and diminishing the intended use and enjoyment associated with consumer agreements between Blizzard Entertainment and subscribers to its virtual world called *World of Warcraft*®." Amended Class Action[1] Complaint (DE 5).[2] Plaintiff served Defendant with Interrogatories and Document Requests to which Defendant has responded. See Declaration of Plaintiff's counsel ("Haviland Decl.") at Ex. B-F (DE 60) (describing and attaching propounded discovery requests and responses/objections);[3] see also Declaration of Defendant's counsel ("Heywood Decl.") (DE 70) (describing discovery produced).

On July 3, 2008, Plaintiff filed the instant Motion, challenging Defendant's responses, seeking production of the previously requested information and requesting "extension of discovery limits." See Motion and Memorandum (DE 58-59). The Court having considered the Motion (DE 58-60), Defendant's Response (DE 69-71), the absence of any Reply,[4] and being otherwise sufficiently advised, it is hereby ORDERED that the Motion is DENIED as MOOT and DENIED as follows:

1. To the extent that Plaintiff's Motion seeks a determination that the relevant time period for Plaintiff's discovery requests extend from November 27, 2004 to the present, it is DENIED as MOOT. See July 25, 2008 Joint Status Report (DE 67) (agreeing that "the relevant time period based upon the allegations in this case is November 27, 2004 to the Present.").[5]

**\*2**  2. To the extent that Plaintiff's Motion seeks to compel better responses to Document Requests Nos. 1-4, 6-10, 12, and 14 of Plaintiff's Second Request of Production of Documents, it is DENIED. In this request, Plaintiff seeks to compel Defendant to produce organizational charts, documents relating to IGE Ltd. of Hong Kong, financial reports and profit information, and agreements with current or former competitors. In response, Defendant has represented that it has already produced all non-privileged[6] documents responsive to these document requests. See Response at 6-8 (DE 69) and Heywood Decl. (DE 70) (detailing production of responsive documents with corresponding bate numbers); see also Pierce Decl. at ¶ 6 (DE 71-2) ("I have turned over all documents in my possession that are ... responsive to the document requests served on behalf of Plaintiff in this case, or ... relevant to the allegations in the Amended Complaint ...").[7] Plaintiff fails to address the insufficiency, if any, of Defendant's response and/or the represented production. Accordingly, there is nothing to be ordered produced with respect to these Requests.

3. To the extent that Plaintiff's Motion seeks to compel responses to Interrogatory Nos. 3-5, 7-9, and 12 of Plaintiff's Second Set of Interrogatories, it is DENIED. "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). In propounding this Second Set of Interrogatories, Plaintiff has clearly exceeded this statutory limit. See Haviland Decl. at Exs. D and F (DE 60-5 and 60-7) (identifying Plaintiff's April 3, 2008 First Set of Interrogatories and Plaintiff's April 8,

**Hernandez v. IGE U.S., LLC., Not Reported in Fed. Supp. (2008)**

2008 Second Set of Interrogatories); see also Defendant's Response at 8 (DE 69) ("Those interrogatories number 36, not counting discrete subparts."). And although Plaintiff requests that the Court extend this discovery limit, Plaintiff fails to "set forth a particularized showing of need" to warrant the requested relief. New River Dry Dock, Inc., Case No. 08-60216-CIV, 2008 WL 2620727, at *5 (S.D. Fla. June 30, 2008) (noting that the party who seeks to propound interrogatories in excess of the statutory limit "need[s] to make a particularized showing of the need for each proposed interrogatory."); see e.g., Powell v. The Home Depot USA, Inc., Case No. 07-80435, 2008 WL 2473748, at *6 (S.D. Fla. June 16, 2008) (denying leave to propound additional interrogatories finding that the requesting party "has failed to show that the benefits of the additional interrogatories outweigh the burden to be imposed."); see also Fed. R. Civ. P. 33 Advisory Committee Notes, 1993 Amendment (imposing this maximum to "reduce the frequency and increase the efficiency of interrogatory practice."). Accordingly, the Court declines to compel Defendant to respond to the interrogatories at issue.

4. In all other respects, Plaintiff's Motion is DENIED. Local Rule 26.1.H.2 requires that a motion to compel quote verbatim each document or interrogatory request followed by the specific objection thereto, the grounds assigned for the objection, and the reasons assigned as supporting the motion. See S.D. Fla. L.R. 26.1.H.2. Here, Plaintiff moves the Court for an order compelling Defendant to "produce all documents called for by plaintiff's document request[s] and to respond fully to plaintiff's Interrogatories." Memorandum at 16 (DE 59); see also Memorandum at 1, and 4 - 5 (DE 59) and Haviland Decl. (DE 60) (alleging Defendant's "wholesale failure to provide meaningful discovery" and referring to Plaintiff's First Request for Production of Documents, Plaintiff's Second Request for Production of Documents, Plaintiff's Third Request for Production of Documents, Plaintiff's First Set of Interrogatories, and Plaintiff's Second Set of Interrogatories). Yet, Plaintiff, admittedly, only provides the Court with "illustrative examples" and "select requests" – all which have been addressed by the undersigned – for the relief sought.[8] Memorandum at 2 and 10 (DE 59) ("[T]his memorandum provides only illustrative examples of the many outstanding document requests and interrogatories that IGE has refused to respond to fully ..." and "For the Court's convenience, select requests are discussed below to illustrate IGE's discovery deficiencies" and "Interrogatories like Nos. 3-5,7-9, and 12 of the Second Set should be answered.") (emphasis added). Plaintiff's Motion, therefore, runs afoul of Local Rule 26.1.H.2. Accordingly, the Court declines to compel the (blanket) relief requested.

**\*3** DONE AND ORDERED in Fort Lauderdale, Florida, this 11th day of August 2008.

## All Citations

Not Reported in Fed. Supp., 2008 WL 11408720

## Footnotes

1   Plaintiff has filed a Motion for Class Certification (DE 47).

2   Specifically, Plaintiff contends that Defendant has "engaged in the deliberate selling of *World of Warcraft®* virtual property or currency" and that this practice – known as "gold farming," "real money trade," or "RMT" – is expressly prohibited by Blizzard Entertainment's End User Licence Agreement ("EULA") and Terms of Use Agreement ("TOU") "to which all *World of Warcraft®* Subscribers agree." Plaintiff's Memorandum in Support of Motion for Class Action at 1 and 5 (DE 48). For these alleged wrongs, Plaintiff is seeking declaratory and injunctive relief and monetary damages. See id.

3   Specifically, Plaintiff has served on Defendant the following: (1) a First Request for Production of Documents; (2) a Second Request for Production of Documents; (3) a Third Request for Production of Documents; (4) a First Set of Interrogatories (totaling 24 interrogatories many with multiple subparts); and (5) a Second Set of Interrogatories (totaling 12 interrogatories many with multiple subparts).

4   The Court ordered Plaintiff to serve and file his Reply to Defendant's Response on or before 3:00 p.m. on July 30, 2008. See Order (DE 65); see also Order (DE 63) (granting extension of time to file Response and Reply). CM/ECF shows that no such Reply has been timely filed.

5   The parties (as ordered) conferred in a good faith attempt to resolve the issues raised by the instant motion. <u>See</u> Joint Status Report (DE 67). Although the parties agreed as to the relevant time period for discovery, all other positions remained unchanged. <u>See</u> Joint Status Report (DE 67).

6   On July 8, 2008, Defendant provided Plaintiff with a privilege log. <u>See</u> Response at 2 n.2 (DE 69).

7   It is undisputed that to date, "Defendant has made five separate productions to [Plaintiff], comprising over 15,000 pages of documents." Response at 2 (DE 69).

8   Plaintiff offers to provide "a more detailed discussion ... in a reply brief or at a hearing." Memorandum at 2 and 3 (DE 58). Significantly, Plaintiff has elected to forgo filing any Reply to Defendant's Response.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 13225150
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Jill KAPLAN, Plaintiff,

v.

Robert LAPPIN, and the Palm
Beach Pops, Inc., Defendants,

CASE NO. 10-80227-CIV-MARRA/JOHNSON
|
Signed 02/22/2011
|
Entered 02/23/2011

**Attorneys and Law Firms**

Dana Lynn Spader, Reid Burman, West Palm Beach, FL, Craig Randall Zobel, Law Offices of Craig R. Zobel, P.A., Palm Beach Gardens, FL, for Plaintiff.

Gerard Joseph Curley, Jr., Joseph Gregory Santoro, Keith E. Sonderling, Gunster Yoakley & Stewart, West Palm Beach, FL, for Defendants.

## ORDER

LINNEA R. JOHNSON, UNITED STATES MAGISTRATE JUDGE

**\*1  THIS CAUSE** is before the Court on Plaintiff's Motion to Compel Production of All Phone Records (D.E. #86). For the following reasons said Motion is granted in part and denied in part. In summary, to the extent Plaintiff seeks an order compelling phone records which Plaintiff claims should have been, but were not produced by Lappin, said Motion is denied. To the extent Plaintiff seeks an order compelling Lappin to produce those phone records received from Verizon pursuant to Lappin's subpoena upon receipt of same, said Motion is granted.

## BACKGROUND

This is a lawsuit brought by Plaintiff, Jill Kaplan ("Kaplan") against The Palm Beach Pops, Inc. ("The Pops") and its managing agent and Maestro Robert Lappin ("Lappin") alleging state law claims for assault, battery and intentional

infliction of emotional distress against Lappin and alleging Florida and Federal Civil Rights violations under Title VII and Florida's equivalent against The Pops. Relevant to the instant Motion to Compel, the Amended Complaint (D.E. #5) alleges that while Plaintiff was employed by The Pops as Vice President and General Manager, she was subjected to "sexual harassment, forced sexual relationship, quid pro quo sexual harassment, and a hostile work environment created by her supervisor, the managing agent of the Palm Beach Pops, Bob Lappin." *Id.* at ¶ 4. The Amended Complaint goes on to allege that Lappin "made unwelcome sexual advances and disturbing sexual demands both in and out of the office" and "demanded that Plaintiff accompany him to sex clubs in Fort Lauderdale and New York." *Id.* at ¶¶ 9-10.

## ANALYSIS

By way of summary, Plaintiff seeks an order compelling Lappin to produce phone records Plaintiff claims Lappin has had in his possession, but has failed to produce. Lappin, for his part, argues there are no such records in his possession and never have been; that he produced all phone records requested of him; and, to the extent Plaintiff wishes more detailed information than the "Quick Bill Summary" he received from Verizon and produced to Plaintiff, same would appear on a "Detailed Billing Option" Verizon would have, which Plaintiff could have subpoenaed from Verizon, but didn't. Finally, Lappin represents that notwithstanding Plaintiff's decision not to subpoena the records in the detailed format desired directly from Verizon, Lappin has himself, since the filing of the Plaintiff's Motion, subpoenaed said documents from Verizon and will produce same to Plaintiff upon receipt.

In a word, the dispute at issue is ludicrous and could easily have been avoided had Plaintiff's counsel conferred with Defendants' counsel in an attempt to resolve by agreement the issues raised, as required by Local Rule Local Rule 7.1A3, L.R. S.D. Fla.[1] Local Rule 7.1 A3. The law in this District is well established that if a party fails to confer pursuant to LR 7.1 A3, the Court may deny the motion and impose appropriate sanctions, including reasonable attorney's fees. *Id.*; *see also Williams v. Ocean Title* Co., No. 07-80252, 2007 WL 1805792, at \*1, 2007 U.S. Dist. LEXIS 48175, at \*3 (S.D. Fla. 2007)(explaining failure to comply with Local Rule 7.1 "is sufficient cause for the denial of the motion as well as imposition of an appropriate sanction," including reasonable attorney's fees); *Williams Island Synagogue, Inc. V. City of Aventura,* 329 F.Supp.2d 1319, 1327-1328 (S.D. Fla. 2004)(denying defendant's motion where defendant failed to

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 96 of 102

Kaplan v. Lappin, Not Reported in Fed. Supp. (2011)

confer prior to filing its motion). This rule was intended to encourage parties to cooperate in matters of discovery and resolve potential disputes without unnecessarily involving the court. *See Taylor v. Florida Atlantic University,* 132 F.R.D. 304,305 (S.D. Fla. 1990)(explaining "[i]t is the letter and spirit of the discovery rules of the Federal Rules of Civil Procedure and the Local Rules of this Court that counsel work together on discovery matters. Counsel should be in touch *personally* to resolve discovery disputes and it should be a *rare* occasion when the court is called upon to resolve such disputes.")(emphasis in original); *H2Ocean, Inc. V. Schmitt*, No. 05-387, 2006 WL 3837411, 2006 U.S. Dist. LEXIS 92783 (N.D. Fla. 2006)(denying plaintiff's motion when plaintiffs "needlessly involved" the court and did not wait even one day for defendant to respond to their demand).

 **\*2**  That this matter could easily have been resolved with only a phone call is made evident in Lappin's Response Brief (D.E. #90), which after wasting thirteen pages of ink to enumerate all the reasons Plaintiff's Motion should be denied, concludes by stating that the records sought in the format desired by Plaintiff ("Detailed Billing Option" verses "Quick Bill Summary") have been requested and will be produced immediately upon receipt. Why the parties feel the illogical need to turn every minor dispute into a long, drawn-out "battle to the death" is, quite simply, as incomprehensible as it is wasteful.

The Court concludes by once again stating the obvious, namely, that the instant dispute could easily have been resolved between the parties by a simple phone call and without the need for court intervention. All counsel involved in this case are highly skilled practitioners with substantial experience in the area of civil litigation. There is no reason these counsel cannot conduct themselves throughout the remainder of this litigation in a responsible and professional manner mindful of the ethical obligations imposed upon all members of the Bar. It bears repeating that the Court can ill afford to waste its resources supervising the discovery process, a process that is intended to operate without judicial intervention. *Nevin v. CSX Transp.,* 2003 WL

22005030, \*2 (M.D. Fla. 2003) ("discovery is intended to operate with minimal judicial supervision...."); U.S. v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 696 (S.D. Fla. 1990)(reminding the parties that "discovery should be conducted extrajudicially"); Knight v. Docu-Fax, Inc., 838 F.Supp. 1579, 1581 (N.D. Ga. 1993)("[the Federal Rules of Civil Procedure] contemplate that discovery be conducted with a minimum of judicial intervention"). See also Mawulawde v. Bd. of Regents of University System of Georgia, 2007 WL 2460774, \*7 (S.D. Ga. 2007)(citing Fed.R.Civ.P. 26(c) & 37(a)(2) and noting that the Rules not only encourage, but require parties to attempt to resolve discovery disputes without court intervention.) The Court will, of course, issue appropriate rulings with regard to discovery disputes that cannot, after ardent good faith efforts, be resolved by the parties themselves. With the same ease, the Court will not hesitate to award costs or other sanctions against either party or their attorney if these disputes are being used to gain a tactical advantage or for other improper purpose. In accordance with the above and foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Production of All Phone Records (D.E. #86) is **GRANTED IN PART AND DENIED IN PART.** To the extent Plaintiff seeks an order compelling phone records which Plaintiff claims should have been, but were not produced by Lappin, said Motion is denied. To the extent Plaintiff seeks an order compelling Lappin to produce those phone records received from Verizon pursuant to Lappin's subpoena immediately upon receipt of same, said Motion is granted. Lappin shall have two (2) days from the date of receipt of such subpoenaed documents to produce same to Plaintiff.

**DONE AND ORDERED** this February 22, 2011, in Chambers, at West Palm Beach, Florida.

**All Citations**

Not Reported in Fed. Supp., 2011 WL 13225150

---

Footnotes

1    Among the numerous arguments contained in Lappin's Response in Opposition to the Motion is one premised on Plaintiff's counsel's alleged failure to comply with Local Rule 7.1 A3, which, with certain limited exceptions not applicable here, requires that before a discovery motion is filed, counsel for the moving party confer with opposing counsel in a good faith effort to amicably resolve the matter without court intervention. Plaintiff fails to address this argument in her Reply

Memorandum leaving this Court to assume the accuracy of Lappin's representation that Plaintiff failed to confer with opposing counsel prior to the filing of her Motion as required by Local Rule 7.1 A3.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 98 of 102

Equal Employment Opportunity Commission v. M1 5100 Corp., Not Reported in Fed....

2020 WL 3581372
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, Plaintiff,

v.

M1 5100 CORP., d/b/a JUMBO
Supermarket, Inc., Defendant.

Civil No. 19-cv-81320-
DIMITROULEAS/MATTHEWMAN
|
Signed 07/02/2020

**Attorneys and Law Firms**

Beatriz Biscardi Andre, Carmen Maria Manrara Cartaya, Robert Elliot Weisberg, U.S. Equal Employment Opportunity Commission, Miami, FL, Gwendolyn Y. Reams, James L. Lee, Sharon Fast Gustafson, Equal Employment Opportunity Commission, Washington, DC, for Plaintiff.

Adi Amit, Brenda Mattar Bretas, Dallan Thomas Vecchio, Adi Amit, P.A., Fort Lauderdale, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [DE 35]

WILLIAM MATTHEWMAN, United States Magistrate Judge

 **\*1  THIS CAUSE** is before the Court upon Plaintiff, Equal Employment Opportunity Commission's ("Plaintiff") Motion to Compel a Privilege Log, Better Discovery Responses, and Fees ("Motion") [DE 35]. The Motion was referred to the undersigned by the Honorable William P. Dimitrouleas, United States District Judge. *See* DE 19. Defendant, M1 5100 Corp., d/b/a JUMBO Supermarket, Inc. ("Defendant") has filed a response [DE 37], and Plaintiff has filed a reply [DE 38]. The parties also filed a Joint Notice [DE 39]. The Court held a hearing on the Motion via Zoom video teleconference (VTC) on June 29, 2020. The matter is now ripe for review.

## I. BACKGROUND

Plaintiff filed its Complaint [DE 1] under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(a) (the "ADEA"). Plaintiff alleges that Defendant discriminated against Charging Party Angela Araujo Guerrero (a cook manager) when it reduced her pay and fired her because of her age in violation of Section 4(a) of the ADEA, 29 U.S.C. § 623(a).

In its Motion, Plaintiff originally sought responsive documents to several of its requests for production, supplemental responses to several of its interrogatories, the production of a privilege log, inspection of Defendant's electronically stored information ("ESI"), and sanctions against Defendant. However, Defendant eventually provided Plaintiff with supplemental discovery responses after the Motion was filed, and, as ordered by the Court [DE 36], the parties also further conferred about the discovery disputes. After further conferral, the issue regarding the privilege log has been resolved as have the disputes regarding Interrogatories No. 6 and 10.

Thus, at this point, Plaintiff only seeks better responses to two discovery requests—Interrogatory No. 9 and Request for Production No. 18. [DE 39, pp. 3-5]. Plaintiff is also seeking attorney's fees and costs incurred in filing the Motion. *Id.* at p. 5. Finally, Plaintiff still seeks the opportunity to inspect Defendant's ESI because, by Defendant's counsel's own admission, Defendant "self-collected" responsive documents and information to the discovery requests without the oversight of its counsel. *Id.* pp. 1-2.

As stated in open court and as further specified below, the Court finds that the Motion should be granted in part as to Interrogatory No. 9 and Request for Production No. 18. The Court will also address the "self-collection" issue regarding Defendant, order further conferral on the ESI issue, and reserve jurisdiction on Plaintiff's requests for costs and attorney's fees.

## II. THE PERILS OF SELF-COLLECTION OF ESI BY A PARTY OR INTERESTED PERSON WITHOUT THE PROPER SUPERVISION, KNOWLEDGE, OR ASSISTANCE OF ITS COUNSEL

With regard to Plaintiff's request to inspect Defendant's ESI, the Court finds as follows. Defendant's counsel, Dallan Vecchio, Esq., signed Defendant's original discovery responses dated April 20, 2020. [DEs 35-1, 35-2]. However,

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 99 of 102

Equal Employment Opportunity Commission v. M1 5100 Corp., Not Reported in Fed....

Defendant stated in its response to the Motion that, "[d]uring conferral, Plaintiff requested Defendant's specific search efforts regarding ESI. At that time, undersigned counsel was not aware of all the specific efforts made." [DE 37, p. 4]. Defendant's counsel also represented at the June 29, 2020 hearing that he did not supervise his client's ESI collection efforts. Plaintiff's counsel stated at the hearing that the two individuals who searched for documents and information responsive to Plaintiff's discovery requests on Defendant's behalf are self-interested parties and are employees of the Defendant.

**\*2** This issue of "self-collection" of discovery documents, and especially of ESI, by Defendant in this case, without adequate knowledge, supervision, or participation by counsel, greatly troubles and concerns the Court. The Court will first address the law regarding this issue.

Federal Rule of Civil Procedure 26(g)(1) states in relevant part that

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name.... By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to a disclosure, it is complete and correct as of the time it is made; and (B) with respect to a discovery request, response, or objection, it is (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26. "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." *See* Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 26(g). "An attorney is entitled to rely on the assertions of the client, provided that 'the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.' " *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 626 (D. Colo. 2007) (quoting Advisory

Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 26(g)). A party's

> discovery obligations also include the duty to use reasonable efforts to locate and produce ESI responsive to the opposing party's requests and within the scope of discovery. To enforce these responsibilities, the attorney's signature on a discovery response "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information ... responsive to the discovery demand' and has made 'reasonable inquiry into the factual basis of his response."

The Sedona Conference Working Group on Electronic Document Production, *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* ("*The Sedona Principles*") p. 119 (3d. ed 2018)[1] (quoting Advisory Comm. Note to Rule 26(g)).

The relevant rules and case law establish that an attorney has a duty and obligation to have knowledge of, supervise, or counsel the client's discovery search, collection, and production. It is clear to the Court that an attorney cannot abandon his professional and ethical duties imposed by the applicable rules and case law and permit an interested party or person to "self-collect" discovery without any attorney advice, supervision, or knowledge of the process utilized. There is simply no responsible way that an attorney can effectively make the representations required under Rule 26(g)(1) and yet have no involvement in, or close knowledge of, the party's search, collection and production of discovery. In this case, it appears that Defendant's counsel left it to the client and the client's employees to determine the appropriate custodians, the necessary search terms, the relevant ESI sources, and what documents should be collected and produced. When combined with Plaintiff's assertion that only 22 pages of documents have been produced by Defendant in this complicated age discrimination case, the Court seriously questions the efficacy of Defendant's search, collection and document production. The Court will not permit an inadequate discovery search, collection and production of discovery, especially ESI, by any party in this case.

**\*3** Here, Defendant's counsel seemingly failed to properly supervise his client's ESI collection process, but then he signed off on the completeness and correctness of his client's discovery responses. An attorney's signature on a discovery response is not a mere formality; rather, it is a representation to the Court that the discovery is complete and correct at the time it is made. An attorney cannot properly make

this representation without having some participatory or supervisory role in the search, collection, and production of discovery by a client or interested person, or at least having sufficient knowledge of the efficacy of the process utilized by the client. Abdicating completely the discovery search, collection and production to a layperson or interested client without the client's attorney having sufficient knowledge of the process, or without the attorney providing necessary advice and assistance, does not meet an attorney's obligation under our discovery rules and case law. Such conduct is improper and contrary to the Federal Rules of Civil Procedure.

Attorneys have a duty to oversee their clients' collection of information and documents, especially when ESI is involved, during the discovery process. Although clients can certainly be tasked with searching for, collecting, and producing discovery, it must be accomplished under the advice and supervision of counsel, or at least with counsel possessing sufficient knowledge of the process utilized by the client. Parties and clients, who are often lay persons, do not normally have the knowledge and expertise to understand their discovery obligations, to conduct appropriate searches, to collect responsive discovery, and then to fully produce it, especially when dealing with ESI, without counsel's guiding hand.

Applicable case law informs that "self collection by a layperson of information on an electronic device is highly problematic and raises a real risk that data could be destroyed or corrupted." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 9249652, at \*3 (N.D. Fla. Dec. 7, 2017). In the case at hand, it is very clear that Defendant's employees self-collected ESI in order to respond to Plaintiff's document requests without sufficient attorney knowledge, participation, and counsel. This is improper and a practice that can lead to incomplete discovery production or even inadvertent destruction of responsive information and/or documents. The Court is especially concerned that Defendant has only produced 22 pages of documents total in this case and that two self-interested employees allegedly collected the responsive documents and information.

Defendant and Defendant's counsel clearly did not employ the proper practices in responding to Plaintiff's discovery requests. And, the Court is not impressed by the repeated delays in production that have occurred in this case by Defendant. This has caused the Court to seriously consider Plaintiff's request that it be permitted to inspect how

Defendant's ESI was searched, collected and produced. However, "[i]nspection of an opposing party's computer system under Rule 34 and state equivalents is the exception and not the rule for discovery of ESI." *The Sedona Principles* at p. 128. "Special issues may arise with any request for direct access to ESI or to computer devices or systems on which it resides. Protective orders should be in place to guard against any release of proprietary, confidential, or personally identifiable ESI accessible to the adversary or its expert." *Id.* at p. 152. The Court agrees with these propositions and normally only permits inspection of an opposing party's ESI collection and production procedures, computer system, cellular phone, or other platforms when all other reasonable solutions have been exhausted or when the Court suspects bad faith or other discovery misconduct.

Therefore, in light of the fact that the discovery cut-off date in this case is approximately five months ahead, the Court will give Defendant one last chance to comply with its discovery search, collection and production obligations. The Court will not permit Plaintiff to inspect Defendant's ESI at this time and will withhold ruling on that issue until the parties have had the opportunity to further confer. The discovery process, particularly when ESI is involved, is intended to be collaborative. *See* Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary,* https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf. Thus, the Court will require the parties to further confer on or before July 9, 2020, to try to agree on relevant ESI sources, custodians, and search terms, as well as on a proposed ESI protocol. The parties can submit any proposed orders or agreements to the Court.

 **\*4** On or before July 10, 2020, the parties shall file a joint notice regarding the ESI search, collection and production issue, the inspection issue, whether they wish for the Court to enter any further order(s), and whether the Court needs to set another hearing and resolve any outstanding issues. The conferral process again ordered by the Court must be robust, completed in good faith, and must take as long as necessary to fully address all discovery search, collection, and production issues. Failure to comply shall result in sanctions on the offending attorney and party.

The Court once again warns Defendant and Defendant's counsel that counsel must take a role in assisting Defendant with the search, collection, and production of discovery and must ensure that Defendant's production is complete and

Case 1:25-cv-25893-BB Document 94-4 Entered on FLSD Docket 05/19/2026 Page 101 of 102

Equal Employment Opportunity Commission v. M1 5100 Corp., Not Reported in Fed....

correct at the time it is made. Fed. R. Civ. P. 26(g)(1). Counsel or Defendant may also consider retaining an ESI vendor to assist with the process if they deem it necessary. But, however it is accomplished, full discovery must be promptly provided by Defendant. Both Defendant and Defendant's counsel may be sanctioned for failing to fully and completely respond to all discovery requests.

The Court notes that it is not finding at this time that Defendant's counsel has acted in bad faith or has committed any discovery misconduct whatsoever; rather, the Court will give Defendant's counsel the benefit of the doubt and suspects that, during these difficult times of the COVID-19 pandemic, counsel's involvement in the discovery process with his client has been unusually difficult. However, the Court does not want to see these problems continue. The Court also directs Defendant's counsel to impress upon Defendant that it must promptly respond to discovery or it will be subject to sanctions. The Court expects to see no more discovery delays.

The Court reserves jurisdiction as to Plaintiff's request for an ESI inspection and for an award of costs and attorney's fees in favor of Plaintiff and against Defendant and/or its counsel. The Court will re-address these issues after the court-mandated further conferral occurs and the Court hears further from the parties.

Based on the forgoing, and as stated in open court, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Compel a Privilege Log, Better Discovery Responses, and Fees [DE 35] is **GRANT IN PART AND DENIED IN PART.**

2. The parties shall fully confer in good faith on or before **July 9, 2020**, and attempt to agree on relevant ESI sources, custodians, and search terms, as well as on a proposed ESI protocol and all other related discovery issues. The parties can submit any proposed orders or agreements or joint motions to the Court for its consideration. Assuming that the parties do reach an agreement, Defendant's attorneys shall counsel and supervise Defendant and Defendant's employees during the discovery search, collection, and production process and become knowledgeable of that process. If any disputes remain, the parties can list them in the joint notice, and the Court will promptly set a further hearing or rule on the papers.

3. On or before **July 10, 2020**, the parties shall file a joint notice regarding the ESI inspection issue, any search, collection and production issues of discovery by Defendant, and any other related discovery issues. The parties shall **concisely** describe the issues they have resolved, the issues in dispute (if any), the parties' respective positions, whether they wish for the Court to enter any further order, and whether the Court needs to set another hearing to resolve any outstanding issues. The Court advises the parties that it intends to closely supervise the discovery process in this case to ensure that both parties and their counsel comply with all discovery obligations.

**\*5** 4. The Motion is GRANTED IN PART as to Interrogatory No. 9. On or before **July 9, 2020**, Defendant shall fully and completely respond to Interrogatory No. 9 as narrowed by Plaintiff in the Joint Notice [DE 39, p. 3] and also as limited by the Court to the two locations where the Charging Party worked. This ruling is without prejudice to Plaintiff's ability to later seek additional information about Defendant's other two locations if Plaintiff subsequently believes that it has a good faith basis to do so.

5. The Motion is GRANTED IN PART as to Request for Production No. 18. On or before **July 9, 2020**, Defendant shall fully and completely respond to Request for Production No. 18 as narrowed by Plaintiff in the Joint Notice [DE 39, p. 4], and as limited by the Court to the time period of May 1, 2016, through March 31, 2017, and also limited in scope to the two locations where the Charging Party worked. The Court is not ordering Defendant to prepare a list that is not already in its possession, custody or control, although it may do so if it chooses to do so, but the Court is ordering Defendant to produce any responsive documents to the narrowed interrogatory as required by the applicable rules or as agreed to by the parties. This ruling is without prejudice to Plaintiff's ability to later seek additional information about Defendant's other two locations and/or a broader time period if Plaintiff subsequently believes that it has a good faith basis to do so.

6. The Court reserves ruling on Plaintiff's request for an award of attorney's fees and costs incurred in filing Plaintiff's Motion until after the parties have filed their joint notice and Defendant has responded to Interrogatory No. 9 and Request for Production No. 18.

Case 1:25-cv-25893-BB   Document 94-4   Entered on FLSD Docket 05/19/2026   Page 102 of 102

7. The Motion is DENIED to the extent that certain issues are moot. The Court need not rule on the privilege log issue as that issue was resolved by the parties' counsel. The parties shall abide by their agreements as described in the Joint Notice as to Interrogatory No. 6 and 10. [DE 39, p. 6].

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 2nd day of July, 2020.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3581372

---

Footnotes

1    Available for download at https://thessedonaconference.org/download-publication?fid=3575.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.